UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| IN RE: AMAZON RETURN POLICY LITIGATION | CASE NO. 2:23-cv-1372<br><br>ORDER APPOINTING INTERIM LEAD COUNSEL |
|---|---|

## 1. INTRODUCTION

This matter comes before the Court on dueling motions for the role of interim class counsel in this putative class action against Defendant Amazon.com, Inc. In one corner are the attorneys representing Plaintiff Sumeet K. Srivastava—they are Terrell Marshall Law Group PLLC ("Terrell Marshall") and George Feldman McDonald PLLC ("GFM") (collectively, "TM/GFM Team"). In the other corner are the law firms Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and

ORDER APPOINTING INTERIM LEAD COUNSEL - 1

Zigler Law Group, LLC ("ZLG") (collectively, "QE Team"), representing Plaintiffs Laura Abbott, Sima Hernandez, Melissa Urbancic, and Jill Cappel.[1]

All counsel are highly qualified and capable of leading a class action against Amazon, but having reviewed the parties' briefing and the relevant record, the Court finds that the QE Team is best suited to represent the interest of the class members here. For the reasons explained more fully below, the *Abbott* Plaintiffs' motion for appointment of interim co-lead counsel is GRANTED. Dkt. No. 44.

## 2.  BACKGROUND

The Court previously consolidated three putative class actions against Amazon regarding its return policies. Dkt. No. 32. Generally, the plaintiffs allege that Amazon disregarded its refund and exchange policies by failing to refund its customers for purchases that had been timely returned.

The *Abbott* case is the first-filed action. The plaintiffs are represented by the QE Team, which claims to have "unmatched experience prosecuting consumer protection class actions—including in this district against Amazon." Dkt. No. 44 at 4. Abbott proposes a nationwide class defined thusly:

> All persons in the United States, who, according to the Defendant's records, were charged by Defendant for failing to return a product that was timely returned in its original condition during the six years prior to the filing of this action.

Dkt. No. 1 at ¶ 86.

---

[1] The GrantFirm and BORDE LAW PLLC represent a third plaintiff—Holly Jones Clark—but they do not vie to be appointed co-lead counsel. Dkt. No. 39 at 5. Instead, they seek appointment to an Executive Committee, which the Court addresses below in Section 3.3.

ORDER APPOINTING INTERIM LEAD COUNSEL - 2

The *Srivastava* and *Clark* lawsuits are the second and third-filed actions respectively. The TM/GFM Team represents Srivastava while the GrantFirm and BORDE represent Clark. Together, they claim to have "extensive experience, and have achieved great success, in litigating consumer class actions like this one, including cases against Amazon and cases in this District." Dkt. No. 39 at 5. Srivastava and Clark propose the following nationwide class:

> All persons in the United States who (1) timely returned a purchase to Amazon or a Designated Location; (2) were provided confirmation from Amazon and/or its affiliates that the returned purchase was timely received; and (3) were either provided a refund by Amazon for the purchase and then were later re-charged by Amazon, or were never provided a refund, solely on the ground that Amazon and/or its affiliates had purportedly not timely received the returned purchase.

*Srivastava v. Amazon.com, Inc.*, No. 23-cv-1545, Dkt. No. 1 at 10 (Oct. 5, 2023); *see also* Dkt. No. 42 at ¶ 4. They also propose a "Nationwide Amazon Drop-Off Subclass" that would capture those customers who returned their purchases in person, rather than mailing them back to Amazon.

The three consolidated matters all assert the same causes of action: (1) breach of contract, (2) violation of the Washington Consumer Protection Act, (3) money had and received, (4) unjust enrichment, and (5) conversion.

### 3.  DISCUSSION

**3.1  Legal standard.**

District courts "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). While the civil rules do not provide a standard for the appointment of interim counsel, courts in this district typically rely on the same factors considered

when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *see Pecznick v. Amazon.com, Inc.*, No. 2:22-CV-00743-TL, 2022 WL 4483123, at *4–5 (W.D. Wash. Sept. 27, 2022) (considering factors set forth at Rule 23(g)(1)(A) for the appointment of interim class counsel); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *3 (W.D. Wash. May 28, 2014) (same).

Appointment of interim class counsel is especially appropriate when there are "multiple complaints" and a "gaggle of law firms jockeying to be appointed class counsel." *Parrish v. Nat'l Football League Players Inc.*, No. C 07-00943 WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007). Doing so "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litig., § 21.11 (4th ed. 2004). In such cases, "the court must appoint the applicant [who is] best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

**3.2    The Court appoints the QE Team as interim co-lead counsel**.

The Court has reviewed the competing motions for the appointment of interim class counsel. The papers make clear that both the TM/GFM Team and the Quinn Emanuel Team would "fairly and adequately represent the interests of the

class." Fed. R. Civ. P. 23(g)(1)(B). Indeed, both teams have extensive experience litigating consumer class action cases with great success, including against Amazon. The Court has no concern about whether either team would devote the necessary resources to pursue the case to the fullest extent possible—this much is evident from the considerable time both teams have already expended diligently identifying and investigating potential claims against Amazon. And both teams feature attorneys from diverse backgrounds of all sorts, including gender, age, race, and ethnicities, a factor both teams urge the Court to consider. *See* Dkt. Nos. 39 at 6; 44 at 14. In other words, both teams have done "this" many times before and can spend the money it takes to litigate against a trillion-dollar company, doing so with a team that represents the diversity of the class members.

Most things being equal, there are two distinguishing factors that give the QE Team the edge here: (1) they have spent substantially more time and resources advancing the interests of the class, and (2) they filed the *Abbott* case first. On the first point, the TM/GFM Team holds against the QE Team the time they've billed so far, arguing their hours "demonstrate[ ] that they are likely to overbill in this action." Dkt. No. 54 at 5. This is one view, but another reasonable view is that the QE Team has done an exceedingly thorough job working up the case, raising a presumption that they are the most knowledgeable about the policies and practices at issue and best prepared to advance the litigation. The *Abbott* case is the first filed case, even if only by a month, which bears out the QE Team's preparation and commitment to prosecuting the case. *See Ekin*, 2014 WL 12028588, at *4

(considering who filed the first complaint, among other factors, when selecting interim class counsel among competing applicants).

The Court will not comment on the QE Team's billing to date save to say that duplicative work product, unnecessary billing, and an outrageous lodestar are grounds to reduce an award of attorneys' fees. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, … courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable….").

Accordingly, the Court GRANTS the *Abbott* Plaintiffs' motion to appoint the QE Team as interim lead co-counsel and DENIES the *Srivastava* and *Clark* Plaintiffs' motion requesting the same.

**3.3    Obligations of interim lead co-counsel and the Executive Committee.**

"The added demands and burdens of complex litigation place a premium on attorney professionalism…." Manual Complex Lit. § 10.21 (4th ed.). As always, the Court expects the various plaintiffs' groups to exhibit the highest degree of professionalism, with an eye toward resolving issues among the group with courtesy and communication. Clarifying the role of interim lead counsel will promote this end.

In general, Interim Co-Lead Counsel are responsible for coordinating the activities of the plaintiffs during the pretrial proceedings. Manual Complex Lit. §

40.22 (4th ed.). More specifically, lead counsel is responsible for the undertakings below:

    a. Determine and present (in briefs, oral argument, or any other fashion as may be appropriate, personally or by a designee) to the Court and Amazon the position of the plaintiffs on all matters arising during pretrial proceedings;

    b. coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(2), and 26(g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

    c. conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;

    d. delegate specific tasks to other counsel or committees of counsel, as authorized by the Court, in a manner to ensure that pretrial preparation for the plaintiffs is conducted efficiently and effectively;

    e. enter into stipulations with Amazon as necessary for the conduct of the litigation;

    f. prepare and distribute periodic status reports to the Court and the parties;

      g. maintain adequate time and disbursement records covering services as lead counsel;

      h. monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

      i. perform any other duties that may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the court.

*See id; see also* Dkt. No. 32 at 8 (order identifying other duties of interim lead counsel).

Counsel for plaintiffs who disagree with interim lead counsel or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their clients as appropriate, as long as in doing so they do not repeat arguments, questions, or actions of lead counsel.

Finally, the *Srivastava* and *Clark* Plaintiffs suggest, without much explanation, that an Executive Committee should be appointed. As the Manual for Complex Litigation observes, "[c]ommittees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual Complex Lit. § 10.221 (4th ed.). But it also warns that such committees "can sometimes lead to substantially increased costs," as they can result in "unnecessary duplication of efforts." *Id.*

Here, the parties bring identical claims against Amazon, but they define the proposed classes differently. Srivastava and Clark argue their class definitions are superior to Abbott's because they are not solely limited to items returned in "original condition," and therefore represent classes that are "substantially broader than the proposed class in *Abbott*…." Dkt. 39 at 17. The Court is skeptical whether the slightly divergent class definitions render the plaintiffs' claims dissimilar enough to warrant the creation of an executive committee. This is especially true given the parties' agreement that this case is "straightforward," involving the same narrow issues against Amazon. Dkt. Nos. 48 at 13; 53 at 13.

Even so, the Court's primary concern is protecting the interests of the putative class members, and if there's a chance the appointment of an executive committee will best serve the class, the Court will listen. If the *Srivastava* and *Clark* Plaintiffs wish to propose an Executive Committee, they may move separately requesting such relief.

### 4.  CONCLUSION

In sum, the *Abbott* Plaintiffs' motion for appointment of interim class counsel under Rule 23(g) is GRANTED. Dkt. No. 44. The *Clark* and *Srivastava* motion is DENIED. Dkt. No. 39. The Court ORDERS the QE team to file a consolidated complaint within 30 days of this Order. *See* Dkt. No. 32 at 8.

Dated this 22nd day of February, 2024.

Jamal N. Whitehead
United States District Judge