THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON RETURN POLICY LITIGATION

No. 2:23-CV-1372-JNW

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

NOTING DATE: February 18, 2025



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 2

A. Organizational Structure and Custodians (RFPs 57-58) ..... 2

B. Documents Concerning Wrongful Denials of Refunds (RFPs 4-6, 30-31, 45, 48-52, 55, 72-73) ..... 3

C. Data Requests (RFPs 8-19, 20-22, 23-24, 25-26, 29, 30-33, 78) ..... 3

D. Amazon's Conditions of Use (RFP 7) ..... 6

E. Amazon's Statements Regarding Returns (RFP 46) ..... 6

F. Amazon's Knowledge Regarding Returns Issues (RFPs 48-50) ..... 7

G. Differences in Return or Refund Processing (RFP 54) ..... 8

H. Communications With Third Parties Regarding Returns (RFPs 59-60) ..... 8

I. Records Retention (RFPs 61-62) ..... 9

J. Documents Amazon Intends To Rely Upon (RFP 63) ..... 10

K. Fraudulent Return Conduct (RFPs 66-67) ..... 10

L. Relevance Redactions (Global Issue) ..... 11

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Co. v. Aime LLC*,
2022 WL 17176841 (W.D. Wash. Sept. 23, 2022) ........ 7

*Alvarez v. King Cnty.*,
2007 WL 9775554 (W.D. Wash. Feb. 6, 2007) ........ 7

*Beyenhof v. Schwan's Consumer Brands, Inc.*,
2024 WL 1135098 (C.D. Cal. Feb. 14, 2024) ........ 10

*Cruz v. Nike Retail Servs.*,
2023 WL 6967410 (S.D. Cal. Oct. 20, 2023) ........ 5

*Cruz v. Nike Retail Servs.*,
2024 WL 291340 (S.D. Cal. Jan. 25, 2024) ........ 5, 6

*In re Disposable Contact Lens Antitrust Litig.*,
2022 WL 21295818 (M.D. Fla. Dec. 23, 2022) ........ 5

*Doe v. Trump*,
329 F.R.D. 262 (W.D. Wash. 2018) ........ 11

*In re eBay Seller Antitrust Litig.*,
2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) ........ 5

*El Dorado Irrigation Dist. v. Traylor Bros.*,
2005 WL 8176673 (E.D. Cal. Aug. 17, 2005) ........ 10

*Erickson v. Biogen, Inc.*,
2019 WL 3238470 (W.D. Wash. July 18, 2019) ........ 9

*Heredia v. Sunrise Senior Living*,
2022 WL 1589274 (C.D. Cal. Feb. 18, 2022) ........ 5

*McCowen v. Trimac Transp. Servs*,
2015 WL 5184473 (N.D. Cal. Sept. 4, 2015) ........ 6

*McMorrow v. Mondelez Int'l, Inc.*,
2019 WL 3852498 (S.D. Cal. Apr. 19, 2019) ........ 9

*Morita v. S. Cal. Permanente Med. Grp.*,
541 F.2d 217 (9th Cir. 1976) ........ 5


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*,
256 F.R.D. 678 (C.D. Cal. 2009) .......... 10

*Olberg v. Allstate Ins. Co.*,
2019 WL 6033699 (W.D. Wash. Nov. 14, 2019) .......... 11

*PUMA SE v. Brooks Sports, Inc.*,
2024 WL 4476767 (W.D. Wash. Oct. 11, 2024) .......... 9

*Superior Commc'ns v. Earhugger, Inc.*,
257 F.R.D. 215 (C.D. Cal. 2009) .......... 3

*In re Telescopes Antitrust Litig.*,
2023 WL 3957423 (N.D. Cal. June 12, 2023) .......... 6

*Thomas v. Cricket Wireless, LLC*,
2020 WL 7344742 (N.D. Cal. Dec. 14, 2020) .......... 9

*Wolfclan v. Pierce Cnty.*,
2024 WL 4449931 (W.D. Wash. Oct. 9, 2024) .......... 2

*Wortman v. Air New Zealand*,
326 F.R.D. 549 (N.D. Cal. 2018) .......... 5

*Yingling v. eBay, Inc.*,
2010 WL 373868 (N.D. Cal. Jan. 29, 2010) .......... 5

**Other Authorities**

Fed. R. Civ. P. 26 .......... 7, 10


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## INTRODUCTION

Amazon has been slow-walking and obstructing discovery in this now 16-month old case, forcing Plaintiffs to seek this Court's intervention.

Plaintiffs allege that Amazon has violated its agreements with consumers regarding returns and refunds. Dkt. 58 ("Compl.") ¶ 1. Plaintiffs purchased items from Amazon, and complied with Amazon's policies when returning those items, yet were re-charged for those products when Amazon (falsely) claimed the products were not returned. *Id.* ¶¶ 71-142. According to Amazon's own representatives, Amazon's practice of unlawfully re-charging customers who have properly returned products is related to some kind of "system technical issue"; "mix-up"; "error"; "mistake[]"; or "mistake from the carrier end." *Id.* ¶¶ 48, 61, 68, 78, 110, 112. Yet, Amazon is obstructing reasonable discovery into the conduct.

Nine months ago, Plaintiffs served Amazon with 76 requests for production seeking documents and data concerning Amazon's practice of denying refunds by improperly re-charging consumers for returned products, the reasons for that practice, and the scope of the issue. *See* Ex. A.[1] Amazon served boilerplate responses and objections more than two months later,[2] agreeing to produce limited documents in response to only 11 of those 76 requests. *See generally* Ex. C. The parties held numerous meet and confers and exchanged further correspondence, Anderson Decl. ¶¶ 8-21; Exs. D, F, but have not reached agreement on many of the Requests.

In the 16 months since this putative class action was filed, Amazon has produced only 559 documents, many of which are print-outs of Amazon's public-facing web pages, and has produced *no* custodial emails.[3] Plaintiffs request the Court's assistance to get discovery flowing from

---

[1] All citations to "Ex." refer to Exhibits attached to the Declaration of Nolan Anderson.

[2] Amazon took so long to respond to Plaintiffs' RFPs because, while the parties had held a Rule 26(f) conference on October 31, 2023, Amazon refused to participate in discovery until a second 26(f) conference was held after Plaintiffs filed its consolidated complaint, claiming that the first occurred in a different lawsuit. *See* Ex. B.

[3] Plaintiffs, meanwhile, have produced 1,364 documents, and are nearing substantial completion of their productions.

Amazon. This Court should order Amazon to immediately produce documents responsive to the below requests.

**ARGUMENT**

**A. Organizational Structure and Custodians (RFPs 57-58)**

RFPs 57-58 seek information regarding the organizational structure of Amazon business units and personnel responsible for, or involved in, returns processing, and the structure of teams with persons possessing relevant information. Ex. A at 20; Ex. D at 17. Amazon provided boilerplate objections to these requests and initially refused to produce any documents. Ex. C at 63-65. At the parties' July 2024 meet and confers these requests were the *first* that the parties discussed, because such documents are important to the selection of appropriate document custodians, from which discovery flows. Anderson Decl. ¶ 8. Indeed, in its ESI disclosures Amazon identified only six proposed custodians (some of whom only appear to have been in relevant roles for a few months, and others of whom are located outside of the country), and has refused to answer Plaintiffs' follow-up inquiries about them, *id.* ¶¶ 14, 18, Exs. F at 9, H at 1-4, rendering these documents all the more important. Amazon asserted it does not keep "organizational charts," but Plaintiffs' requests are not so limited, and Amazon has never claimed to have *no* responsive documents. Ex. D at 17; *see also* Ex. C at 63-65. To the contrary, Amazon continued for months to claim it was "looking into" what document it could produce, Anderson Decl. ¶¶ 9-11, 15-16, 20; Ex. D at 17, has refused to agree to any specific timeline for production of these documents (apart from agreeing it will do so by the May 2025 deadline for substantial completion that the parties have agreed to), Anderson Decl. ¶ 19, and only now objects to the production because Plaintiffs *later* served interrogatories seeking related information, Ex. E at 9, which interrogatories Amazon has also not fully responded to.

Requests designed to identify potential custodians are foundational, and assist litigants in focusing discovery on the persons and sources likely to have discoverable information. *See Wolfclan v. Pierce Cnty.*, 2024 WL 4449931, at *4 (W.D. Wash. Oct. 9, 2024) (ordering disclosure of individuals based on job description and department). Withholding such documents prevents Plaintiffs from knowledgeably negotiating appropriate custodians. And Amazon's late objections

are improper. Not only are Amazon's interrogatory responses not complete, interrogatories and requests for production "are cumulative, not alternative." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) (citations omitted). Amazon should be ordered to produce responsive documents within 15 days.

### B. Documents Concerning Wrongful Denials of Refunds (RFPs 4-6, 30-31, 45, 48-52, 55, 72-73)

Plaintiffs have alleged that Amazon has denied refunds by re-charging consumers for items that were properly returned. Compl. ¶¶ 48, 61, 68, 78, 110, 112. Plaintiffs therefore seek, *inter alia*, as clarified and narrowed by subsequent correspondence, documents concerning Amazon's policies and procedures for processing returns and refunds (RFPs 4-6, 30-31, 52, 55, 73, Ex. D at 4, 8-9, 15-16, 21), Amazon's knowledge of its wrongful denials of refunds (RFPs 48-52, 72, Ex. D at 14-15, 21), and the frequency of such wrongful denials (RFP 45, Ex. D at 12-13). Such documents go to the heart of Plaintiffs' claims against Amazon.

Amazon states it will produce only documents "related to the denial of refunds *when the expected item is not returned*." *See, e.g.*, Ex. F at 2, 4, 7-8, 11 (emphasis added) (discussing RFPs 4-6, 30-31, 45, 48-52, 55, 72-73). While Amazon should produce such documents, Amazon's unilateral limitation excludes documents related to the circumstances alleged in the complaint: where the customer *does* return an item and is nevertheless denied a refund. Compl. ¶¶ 71-131.

Amazon's attempt to unilaterally limit discovery to only those circumstances that might support Amazon's defenses is not permitted. This Court should order Amazon to produce responsive documents related to denials of refunds on the basis of nonreceipt, including where the item *was* returned.

### C. Data Requests (RFPs 8-19, 20-22, 23-24, 25-26, 29, 30-33, 78)

To allow for Plaintiffs to determine the scope of Amazon's wrongful conduct and present a methodology for calculating classwide damages, Plaintiffs requested: (1) documents (or data) sufficient to identify Amazon customers that have experienced wrongful denials of refunds on the basis of non-receipt (RFPs 8-19, 29); (2) documents (or data) sufficient to identify the monetary sum of refunds wrongfully withheld on the basis of nonreceipt (RFPs 20-22); (3) documents (or

data) sufficient to identify Amazon customers that received return-reminder and refund-recharge emails (which emails are commonly sent by Amazon before Amazon issues a re-charge) (RFPs 25-26); and (4) data regarding transactions where Amazon denied refunds on the basis of nonreceipt (including data captured by Amazon when processing returns and refunds) (RFPs 23-24, 30-33).

The parties began discussing these RFPs in July 2024 over several meet and confers, including the potential for accepting a statistically significant sample of responsive data, and an agreement from Amazon not to challenge class certification on the basis that a sample was used. Anderson Decl. ¶¶ 8-11; Ex. D at 5-9. In subsequent correspondence, Plaintiffs further explained the data they seek, and proposed a detailed process for the potential production of an anonymized statistically-significant sample, whereby Amazon would provide a template of the available universe of data fields, and an initial sample of such data. Ex. D at 5-7. This would allow the parties to reach an understanding of the available data fields and how they work together, and negotiate which fields should be produced, and whether (and what size) of a reasonable data sample would be sufficient for class certification. *Id.* Plaintiffs also requested that Amazon ensure that it would have some means of identifying a given customer's data across transactions and data productions so that the information could be tracked, and then de-anonymized quickly at a later stage of the case. *Id.* Amazon responded that the only "sample" it would provide would be data for the nine named Plaintiffs, and that once those Plaintiffs' data were produced, Amazon would object to making any further data productions on the basis of burden. Anderson Decl. ¶¶ 13-14. Plaintiffs indicated that such a small production would be insufficient, and that in order to understand what sample could be sufficient, Plaintiffs needed to have an understanding of the available data fields and their meaning. *Id.* ¶ 14. When Plaintiffs asked Amazon why Amazon would not provide information regarding the available data fields prior to making the data production, Amazon's counsel instructed Plaintiffs' counsel to "Stop wasting my time." *Id.*

Amazon then produced only the named Plaintiffs' data. Because Amazon refused to provide Plaintiffs information regarding the meaning of the data fields and their contents, *id.*, Plaintiffs served Amazon with an additional request for documents sufficient to show the meaning


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

of the data fields it has produced, Ex. E at 9 (RFP 78). Amazon has agreed to do so *as to the named Plaintiffs' data files specifically*, but again has refused to commit to any specific timelines, despite the time it will take for Plaintiffs to process, understand, and make use of the data. Anderson Decl. ¶ 14; Ex. G at 5-6 (RFP 78).

The Federal Rules expressly contemplate that "[e]lectronically stored information," such as data, "may exist in dynamic databases" and discovery of such "electronically stored information stands on equal footing with discovery of paper documents." *In re eBay Seller Antitrust Litig.*, 2009 WL 3613511, at *2 (N.D. Cal. Oct. 28, 2009). In e-commerce class actions such as this one, courts hold that data is relevant both to "class certification issues," *Yingling v. eBay, Inc.*, 2010 WL 373868, at *4 (N.D. Cal. Jan. 29, 2010), and plaintiffs' "theory of damages because sales and transactional data would tend to show" the mechanism for the plaintiffs' harm and "help the parties access and calculate damages," *In re Disposable Contact Lens Antitrust Litig.*, 2022 WL 21295818, at *8 (M.D. Fla. Dec. 23, 2022); *see also Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018) (relying on transactional data to grant class certification).

A "[p]laintiff's offer to accept a relatively small sample size in exchange for defendant's promise that [the] sample is sufficient for making a class certification determination is patently reasonable; while defendant's refusal to meet plaintiff in the middle is patently not." *Cruz v. Nike Retail Servs.*, 2023 WL 6967410, at *1 (S.D. Cal. Oct. 20, 2023). Where a "defendant does not reach an appropriate compromise with plaintiff about a 'statistically significant' sample size," courts may order production of "information for the entire putative class." *Cruz v. Nike Retail Servs.*, 2024 WL 291340, at *3 (S.D. Cal. Jan. 25, 2024); *see also Heredia v. Sunrise Senior Living*, 2022 WL 1589274, at *3 (C.D. Cal. Feb. 18, 2022) (threatening production of classwide data if defendant would not agree to statistical reliability of sample). Here, over three months after the parties first began discussing production of a statistically significant sample, Amazon announced it believed just the nine Plaintiffs' data was enough of a "sample," and that it would make that production. Anderson Decl. ¶¶ 13-14. That is patently unreasonable and insufficient for class certification purposes. *See Morita v. S. California Permanente Med. Grp.*, 541 F.2d 217, 220 (9th Cir. 1976) (8 data sets deemed insufficient).


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

The data sought is relevant to identifying instances in which Amazon's own records reflect that it received an item for which it improperly re-charged a consumer, assessing the scope of Amazon's conduct, and presenting a methodology for estimating classwide damages for purposes of class certification. This Court should therefore order Amazon to produce responsive data for all its customers that were recharged for an item for which they initiated a return.[4] *Cruz*, 2024 WL 291340, at *3; *McCowen v. Trimac Transp. Servs*, 2015 WL 5184473, at *4 (N.D. Cal. Sept. 4, 2015) (ordering production of classwide information); *In re Telescopes Antitrust Litig.*, 2023 WL 3957423, at *2 (N.D. Cal. June 12, 2023) (same). This Court should also order Amazon to make this production within 30 days of an order on this Motion, which data production should be accompanied on the same timeline by documents sufficient to explain the meaning of each of the fields (and their contents) in data productions Amazon makes to Plaintiffs in this litigation.

**D. Amazon's Conditions of Use (RFP 7)**

RFP 7 seeks documents concerning how Amazon applies its conditions of use to returns and refunds. Ex. A at 12; Ex. D at 4. Amazon states that "[t]he Conditions of Use speak for themselves with respect to returns," and refuses to produce responsive documents. Ex. F at 2.

Plaintiffs allege Amazon breached its own Conditions of Use and return and refund policies by recharging Plaintiffs for items they returned. Compl. ¶¶ 159, 225. Amazon's internal documents concerning how Amazon interprets those Conditions in the context of its returns or refunds will be relevant to assessing whether Amazon has breached its return or refund policies. This Court should order production of documents concerning how Amazon applies its Conditions of Use to returns and refunds.

**E. Amazon's Statements Regarding Returns (RFP 46)**

RFP 46, as narrowed in subsequent correspondence, seeks information regarding Amazon's public statements related to refund and return policies. Ex. A at 18; Ex. D at 13.

---

[4] Plaintiffs are willing, for purposes of class certification, to accept anonymized data, provided there are customer identifiers that can be used to identify a given customer within and across data sets, and with the expectation that if a class is certified Amazon will timely provide customer identification information.

Amazon has refused to produce responsive documents because "Plaintiffs have not articulated why they are not able to access and obtain these documents themselves, given they seek public statements." Ex. F at 7.

Plaintiffs allege that Amazon unlawfully misleads its customers with public promises of "easy, hassle-free returns." Compl. ¶¶ 21, 183, 249. Accordingly, Amazon's public statements related to its refund and return policies are directly relevant to this litigation. The fact that documents are (or were at one time) publicly available does not excuse a party from producing them. *See*, *e.g.*, *3M Co. v. Aime LLC*, 2022 WL 17176841 (W.D. Wash. Sept. 23, 2022) ("Federal Rule of Civil Procedure 34 does not excuse defendants from providing documents in their possession or control, solely because the information is also publicly available.") (citing cases). Moreover, discovery must account for "the parties' *relative* access to relevant information." Fed. R. Civ. P. 26(b)(1) (emphasis added). Amazon is in the best position to access its historical public statements. *Cf. Alvarez v. King Cnty.*, 2007 WL 9775554, at *2 (W.D. Wash. Feb. 6, 2007) (A "party's own records are clearly the more convenient, less burdensome, or less expensive source to obtain relevant documents."). This Court should order production of Amazon's responsive statements.

**F. Amazon's Knowledge Regarding Returns Issues (RFPs 48-50)**

RFPs 48-50 seek information regarding Amazon's awareness that its customers are being denied refunds on the basis of nonreceipt where (1) the customer returned the item to a Designated Carrier; (2) the returned item arrived at an Amazon Fulfillment Center; or (3) Amazon told the customer not to return the item. Ex. A at 18-19. Plaintiffs narrowed and clarified these requests to seek documents sufficient to show (1) when Amazon first became aware that its customers are experiencing such denials of refunds; (2) how Amazon became aware; (3) who discovered those incidents; (4) why these incidents occurred or may occur; (5) the cost to customers as a result of these incidents; (6) the cost to Amazon to correct these occurrences; and (7) what steps Amazon has planned or undertaken to correct these occurrences. Ex. D at 14-15. Amazon has agreed to produce only "documents *sufficient to show* analyses, reports, and audits regarding situations in which Amazon denied a refund or recharged a customer on the basis of non-receipt of an expected

item when (1) the expected item was delivered to an Amazon warehouse; or (2) a package purporting to include the expected item was delivered to Amazon's Designated Carrier." Ex. F at 7 (emphasis added). This is insufficient.

Amazon should indeed produce analyses, audits, or reports regarding such circumstances; but its response to these Requests should not be so limited. Amazon's knowledge of the improper denials of refunds, the cause of those denials, the costs to Amazon and consumers, and Amazon's ability to prevent such denials are relevant to willfulness, an element of Plaintiffs' conversion claim. *See* Compl. ¶¶ 216, 282; *see also id*. ¶¶ 127-42 (alleging willful conduct by Amazon). Such information would also negate any defense by Amazon that its conduct was somehow justified or permitted under the parties' contracts. Amazon should produce the documents responsive to RFPs 48-50, as narrowed. Ex. D at 14-15.

**G. Differences in Return or Refund Processing (RFP 54)**

RFP 54 seeks information regarding differences between Amazon's fulfillment centers with respect to processing returns and refunds. Ex. A at 19. In the parties' July 2024 meet and confers, Plaintiffs asked if Amazon would stipulate that there are no such differences, and Amazon's counsel stated it would confer with Amazon. Ex. D at 16. Five months later, Amazon indicated that it is "continuing to discuss this Request." Ex. F at 8.

Amazon has been considering its response to this Request for over six months. Understanding whether there are relevant differences in the returns and refunds practices at different fulfillment centers that might impact Amazon's ability to accurately process returns and refunds could help explain the reasons for the issues that have arisen, or even potentially refine the focus of future discovery to particular centers. This Court should order Amazon to produce responsive documents.

**H. Communications With Third Parties Regarding Returns (RFPs 59-60)**

RFP 59, as clarified in subsequent correspondence, seeks documents and communications between Amazon and third parties regarding instances where Amazon denied a refund on the basis of nonreceipt and either (1) Amazon actually received the returned item at its fulfillment center, (2) the returned item was received by a designated returns carrier, and/or (3) Amazon instructed

the customer not to return the item; and RFP 60 seeks documents and communications between Amazon and third parties regarding this lawsuit. Ex. A at 20; Ex. D at 17-18. Amazon claims that it "does not understand" the request unless "Plaintiffs can articulate what they mean by third parties." Ex. F at 9.

Plaintiffs have confirmed they are not seeking communications with putative class members, or with counsel. Ex. D at 17-18. The term "third parties" is not vague or ambiguous, and it is disingenuous for Amazon to contend that it does not understand the term. Amazon's nonprivileged communications with third parties related to the circumstances alleged in the complaint are relevant and discoverable. *PUMA SE v. Brooks Sports, Inc.*, 2024 WL 4476767, at *6 (W.D. Wash. Oct. 11, 2024) (compelling production of communications with third-party advertising and marketing agencies).

**I. Records Retention (RFPs 61-62)**

RFPs 61 and 62, as clarified in subsequent correspondence, seek information regarding Amazon's record retention and preservation policies and destruction of relevant documents. Ex. A at 20; Ex. D at 18. Amazon objects to RFP 61 on the basis that it "seeks privileged information...is overbroad and unduly burdensome," and asserts that RFP 62 is overbroad and irrelevant. Ex. F at 9.

Documents related to retention policies are not inherently privileged or subject to the work product doctrine. *See, e.g.*, *Erickson v. Biogen, Inc.*, 2019 WL 3238470, at *3 (W.D. Wash. July 18, 2019) (ordering production of document retention policy and non-privileged copies of litigation holds); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *3 (N.D. Cal. Dec. 14, 2020) (permitting discovery into document preservation policies). Document retention policies are relevant to "determin[ing] the universe of responsive documents, evaluat[ing] the completeness of the existing document production, identify[ing] any gaps in document production, and craft[ing] targeted discovery requests to efficiently obtain any missing records." *McMorrow v. Mondelez Int'l, Inc.*, 2019 WL 3852498, at *3 (S.D. Cal. Apr. 19, 2019). Amazon's retention policies are relevant to assessing the available universe of evidence to support Plaintiffs' claims.

While Amazon may withhold and log privileged documents, this Court should compel Amazon to produce nonprivileged documents responsive to these requests.

**J. Documents Amazon Intends To Rely Upon (RFP 63)**

RFP 63 seeks documents on which Amazon intends to rely in defending this case. Ex. A at 21. Amazon responded with boilerplate objections and stated the Request was "premature." Ex. C at 69. In correspondence, Plaintiffs explained that Amazon may not withhold responsive documents until a time it deems "appropriate." Ex. D at 19. Plaintiffs also highlighted Amazon's independent duty to identify documents that support its defenses under Fed. R. Civ. P. 26(a)(1)(A)(ii) and its ongoing duty to supplement its responses and disclosures in a "timely manner" under Rule 26(e). *Id.* Plaintiffs requested that Amazon confirm that it would produce responsive documents "as they are identified by Amazon." *Id.* In a December 2024 letter—15 months after this litigation began—Amazon renewed its objection that this Request is "premature" and stated that it will produce documents only when "timely." Ex. F at 9-10. Amazon also stated that cases discussing the duty to supplement are inapposite because Amazon does not "intend to make supplemental productions after the close of discovery." *Id.* Plaintiffs intend to hold Amazon to that promise. Amazon may not sandbag Plaintiffs with late disclosed documents disguised as supplemental productions. *See El Dorado Irrigation Dist. v. Traylor Bros.*, 2005 WL 8176673, at *1 (E.D. Cal. Aug. 17, 2005) ("[T]he 'duty' to supplement is not a 'right' to act with less than best efforts to produce all pertinent documents at the initial disclosure.").

Amazon has no basis for withholding documents it intends to rely upon for its defenses and must produce responsive documents it identifies. *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (compelling production of documents that support defenses); *Beyenhof v. Schwan's Consumer Brands, Inc.*, 2024 WL 1135098, at *2 (C.D. Cal. Feb. 14, 2024) ("Defendant should not be afforded the opportunity to surprise Plaintiff at trial with" documents that support its defenses and were requested as such).

**K. Fraudulent Return Conduct (RFPs 66-67)**

RFPs 66-67 seek information regarding Amazon's knowledge of and proposed responses to fraudulent return conduct by customers. These Requests, as narrowed in subsequent

correspondence, seek, *inter alia*, documents: (1) sufficient to show the processes and procedures Amazon uses to determine whether a return is fraudulent; (2) sufficient to show the procedures and actions Amazon follows after determining a return is fraudulent, including any training materials, scripts, email templates, or other such materials reflecting messaging regarding how to communicate with consumers regarding such determinations; or which (3) Amazon intends to use to support any defense related to fraudulent returns. Ex. A at 21; Ex. D at 19-20.

Amazon agrees to produce documents it "intends to use to support its defenses related to fraudulent returns," but argues that Plaintiffs' request for Amazon's processes for determining whether a return is fraudulent is irrelevant. Ex. F at 10.

Amazon's position is incoherent. In one breath Amazon essentially concedes it will assert "defenses related to fraudulent returns" and in the next breath it questions "why documents reflecting how Amazon determines whether a return is fraudulent or what procedures Amazon follows after determining a return is fraudulent are relevant to [Plaintiffs'] claims." *Id.* Amazon's processes related to fraudulent returns are relevant to Plaintiffs' claims because they could go to defenses Amazon may assert—either to class certification or on the merits—regarding why Amazon wrongfully denied Plaintiffs' or putative class members' refunds. This Court should order Amazon to produce responsive documents.

### L. Relevance Redactions (Global Issue)

Amazon has indicated it intends to "redact[] for relevance" at its unilateral discretion. Ex. F at 1. "Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive from documents that are otherwise responsive to a discovery request." *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018); *see also Olberg v. Allstate Ins. Co.*, 2019 WL 6033699, at *2 (W.D. Wash. Nov. 14, 2019) (same). Plaintiffs request that the Court order Amazon to refrain from redacting documents for relevance.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request the Court order that Amazon produce the foregoing documents.


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Dated: January 28, 2025

Respectfully submitted,

By: /s/ Alicia Cobb
Alicia Cobb, WSBA #48685
Nolan K. Anderson, WSBA #59691
Alexandria Madjeric, WSBA #60677
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.: 206.905.7075
Fax: 206.905.7100
aliciacobb@quinnemanuel.com
nolananderson@quinnemanuel.com
alexandriamadjeric@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Joshua Courtney (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 S FIGUEROA ST, 10TH FLOOR
LOS ANGELES, CA 90017
Tel: 213.443.3621
Fax: 213.443.3100
adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
joshuacourtney@quinnemanuel.com

By: /s/ Aaron Zigler
Aaron M. Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312.673.8427
aaron@ziglerlawgroup.com

larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Interim Class Counsel*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 4,061 words, in compliance with the Local Civil Rules.

DATED: January 28, 2025

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED January 28, 2025.

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685