THE HONORABLE JUDGE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON RETURN POLICY LITIGATION | Case No.: 2:23-cv-01372-JNW<br><br>**AMAZON'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>NOTING DATE: February 18, 2025<br><br>**ORAL ARGUMENT REQUESTED** |



FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF CONTENTS


Page

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 1

III. ARGUMENT ....... 3

- A. Organizational Structure And Custodians (RFPs 57-58) ....... 3
- B. Documents Concerning Wrongful Denials Of Refunds (RFPs 4-6, 30-31, 45, 48-52, 55, 72-73) ....... 5
- C. Data Requests (RFPs 8-19, 20-22, 23-24, 25-26, 29, 30-33, 78) ....... 5
- D. Amazon's Conditions Of Use (RFP 7) ....... 8
- E. Amazon's Statements Regarding Returns (RFP 46) ....... 8
- F. Amazon's Knowledge Regarding Returns Issues (RFP 48-50) ....... 9
- G. Differences In Return Or Refund Processing (RFP 54) ....... 9
- H. Communications With Third Parties Regarding Returns (RFPs 59-60) ....... 10
- I. Records Retention (RFPs 61-62) ....... 10
- J. Documents Amazon Intends To Rely Upon (RFP 63) ....... 10
- K. Fraudulent Return Conduct (RFPs 66-67) ....... 11
- L. Relevance Redaction ....... 11

IV. CONCLUSION ....... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adamson v. Pierce Cnty.*,
No. 3:21-cv-05592-BHS, 2023 WL 4296383 (W.D. Wash. June 30, 2023) ............................3

*Alexander v. FBI*,
194 F.R.D. 305 (D.C. Cir. 2000) ............................7

*Cruz v. Nike Retail Servs.*,
No. 23-cv-874, 2023 WL 6967410 (S.D. Cal. Oct. 20, 2023) ............................6

*Dziennik v. Sealift, Inc.*,
05-CV-4659 (DLI) MDG, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) ............................6

*Gallagher v. Dep't of Corr.*,
No. C16-5088 RBL-KLS, 2017 WL 347467, at *3 (W.D. Wash. Jan. 24, 2017) ............................7

*Hancock v. Aetna Life Ins. Co.*,
321 F.R.D. 383 (W.D. Wash. 2017) ............................3

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985) ............................6

*Nguyen v. City of Garden Grove*,
No. 8:21-01775 JVS ADSx, 2023 WL 2558536, at *4 (C.D. Cal. Feb. 2, 2023) ............................11

**STATUTES AND RULES**

Fed. R. Civ. P. 26 ............................1, 11

Fed. R. Civ. P. 33 ............................1

Fed. R. Civ. 34 ............................7

## I. INTRODUCTION

Plaintiffs' Motion to Compel (Dkt. 81) is premature and unnecessary. The parties have not reached an impasse on any of the issues that Plaintiffs identify in their Motion. And Plaintiffs have not exhausted all reasonable alternatives to seeking the Court's intervention—as required by the Court's Chambers Procedures—so Amazon is surprised by the timing of this Motion. Plaintiffs claim to need "the Court's assistance to get discovery flowing." Mot. at 1. They do not. To date, Plaintiffs have served over 140 Requests for Production seeking an extremely broad range of information, much of which is irrelevant or disproportional to the needs of this case. That tactic has delayed the discovery process because it has forced the parties to exchange multiple rounds of correspondence and to engage in hours of meet-and-confer discussions. Nevertheless, Amazon has produced many responsive documents and is in the process of producing many more. Amazon addresses each of Plaintiffs' specific requests below; none requires the Court's current attention or intervention.

## II. BACKGROUND

On November 13, 2023, the Court issued its order joining various related cases into this consolidated action. Dkt. 32. On March 25, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("CCAC"). Dkt. 58. The CCAC added five new named Plaintiffs, amended Plaintiffs' factual allegations, redefined the prior proposed class and added a new class, and added two new causes of actions. In other words, both procedurally and factually, the CCAC started a new case with different parties and an entirely new case schedule. On May 15, 2024, Amazon filed a motion to partially dismiss the CCAC; that motion is pending. Dkt. 62. On June 5, 2024, the parties held their Rule 26(f) conference in the current case. Decl. of Mary Griffin Sims ("Sims Decl.") ¶ 3. Under Rule 26, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1).

To date, Plaintiffs have served 143 Requests for Production ("RFPs") on Amazon. Sims Decl. ¶ 6. Plaintiffs have also served 11 Interrogatories, but they contain multiple subparts and, as such, exceed the 25 interrogatories permitted under the Rules. Fed. R. Civ. P. 33(a)(1). Sims Decl. ¶ 7. Contrary to Plaintiffs' insinuation that Amazon was "late" in responding to Plaintiffs'

discovery (*see* Mot. at 2), Amazon timely responded or objected to all of Plaintiffs' discovery requests. Sims Decl. ¶ 8. Furthermore, Amazon did not assert "boilerplate objections" (*see* Mot. at 2); Amazon objected to each of Plaintiffs' discovery requests, identifying the specific bases on which each request was objectionable. Sims Decl. ¶ 8.

Rather than focus on the documents and data they reasonably and realistically need now, Plaintiffs have instead insisted that the parties confer on *all* of Plaintiffs' voluminous requests at once. The result has been that the parties have exchanged at least nine written communications on discovery matters and conducted at least nine meet-and-confer calls. Sims Decl. ¶ 9. As a result, the parties have been able to reach agreement on many issues, while some remain open for further discussion. *Id.* ¶ 10. As addressed below, the parties have not reached an impasse on any of the issues Plaintiffs raise in this Motion.

In parallel with the parties' discussions, Amazon has been diligently collecting, reviewing, and producing documents. And Plaintiffs' inaction has caused significant delays. For example, with respect to custodial searches, Amazon proposed an initial list of search terms; Plaintiffs waited more than *seven weeks* to respond to that list. Sims Decl. ¶¶ 11-12. In the spirit of compromise, Amazon agreed to *all* of Plaintiffs' 40 search terms and search strings. *Id.* ¶ 13. Amazon has been reviewing those documents and making productions on a rolling basis. *Id.* With respect to custodial documents specifically, Amazon made productions on January 30, 2025, and February 10, 2025, and Amazon will continue to make rolling custodial productions. *Id.*

Moreover, Plaintiffs are in no position to complain about the pace of discovery or the timing of Amazon's productions. Plaintiffs have easy access to their Amazon accounts and all the information related to their claims. Indeed, Plaintiffs presumably collected most of that information, and provided it to their lawyers, before filing suit *well over a year ago*. Yet, Plaintiffs still have not fully responded to Amazon's discovery requests, including for basic information such as documents identifying all the Amazon accounts to which Plaintiffs had access. Sims Decl. ¶ 4. And Plaintiffs produced the majority of their documents just five days before this Motion was filed. *Id.*

## III. ARGUMENT

The thrust of Plaintiffs' Motion is that Amazon is (Plaintiffs say) moving too slowly. But until recently the Court had not even entered a case schedule. On January 30, 2025, the Court approved the parties' joint stipulated schedule. Dkt. 84. That schedule sets a deadline of May 5, 2025, for the substantial completion of document discovery. There are no other interim discovery deadlines, though the parties did commit to provide the Court with a status update on discovery by March 3, 2025. Thus, Plaintiffs are not entitled to demand document productions from Amazon on any particular timeline of Plaintiffs' choosing. As Amazon has consistently said, it will observe its discovery obligations and produce relevant, responsive documents on a rolling basis, and it is continuing to do so.

The other problem with Plaintiffs' Motion, and their approach to discovery generally, is that their expansive demands seek plainly irrelevant information and are disproportionate to the needs of this case. *Adamson v. Pierce Cnty.*, No. 3:21-cv-05592-BHS, 2023 WL 4296383, at *5 (W.D. Wash. June 30, 2023) (denying motion to compel because plaintiff did not "explain how the information sought is relevant or proportional"); *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017) (proportionality hinges on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). As addressed below, Plaintiffs often assert, without explanation or justification, that they are "entitled" to certain information, but that does not make it so. Much of what Plaintiffs demand they are *not* entitled to.

### A. Organizational Structure And Custodians (RFPs 57-58)

Plaintiffs seek documents describing Amazon's "organization, structure, and personnel," and "[o]rganizational charts and personnel lists on which" certain individuals appear, dating all the way back to 2017. *See* Dkt. 82-1 (Anderson Decl.) (Plaintiffs' RFPs 57-58), at 20. The parties have had many discussions on this issue. Amazon does not centrally maintain historical corporate

"organizational charts" in the traditional sense (i.e., charts with rows of boxes with employees' names and titles showing who reported to whom across an organization at various points in time).[1]

On November 7, 2024, Plaintiffs served an Interrogatory seeking organizational details for the six custodians Amazon had identified in its initial ESI disclosures. *Id.* ¶ 7. Amazon responded with more than *19 pages* of information about the custodians, their responsibilities, their teams, and their reporting lines (all the way up to Amazon's CEO), going back to 2017. *Id.* Although the vast majority of that information is not even conceivably relevant, it reflects Amazon's good-faith attempts to provide Plaintiffs with organizational details. Amazon also told Plaintiffs that should it identify responsive documents, it would produce them. *Id.* ¶ 14.

Notably, while they complain generally about Amazon's lack of organizational documents, Plaintiffs never say what specific information they are seeking or have yet to receive. Plaintiffs cannot genuinely contend that they are "entitled" to know every detail of every part of the Amazon organization on every date for the last six years. And Plaintiffs cite no cases suggesting that RFPs are the proper or most efficient way to identify potentially relevant custodians. Nor has Amazon ever refused to run searches for additional custodians. On January 30, 2025, Plaintiffs identified and requested to add four additional custodians. Plaintiffs have provided no basis for why additional custodians are needed now. Amazon has urged Plaintiffs to review Amazon's initial discovery responses and document productions to identify other potential custodians who Plaintiffs think might be relevant, and the parties can then discuss expanding Amazon's custodial searches. Sims Decl. ¶ 15.

In all events, the parties are nowhere near an impasse with respect to Amazon's custodians. Amazon has been diligently reviewing custodial documents; has begun producing those documents and will continue doing so on a rolling basis; and has invited ongoing discussion with Plaintiffs about adding other relevant custodians, if, after reviewing Amazon's productions, Plaintiffs

[1] Amazon has an online internal directory that has a function to create charts with limited information. These charts do not have the information contained in traditional organizational charts and reflect only current organizational information. What Amazon has provided to Plaintiffs is far more comprehensive and useful. Sims Decl. ¶ 14.

continue to believe that additional custodians are required. Thus, there is nothing for the Court to resolve.

**B. Documents Concerning Wrongful Denials Of Refunds (RFPs 4-6, 30-31, 45, 48-52, 55, 72-73)**

Plaintiffs seek to represent a class of "[a]ll Amazon consumers who returned merchandise in the United States and were denied refunds by Amazon on the basis of non-receipt of the return when Amazon's records show the return was actually received by Amazon at its designated fulfillment center." CCAC at ¶ 143. Plaintiffs asked Amazon to produce documents related to its policies regarding denial of refunds for non-receipt, i.e., those policies that might bear on why members of Plaintiffs' defined class were denied a refund. *See, e.g.*, Dkt. No. 82-1 (Plaintiffs' RFP 52), at 19. Amazon committed to producing relevant documents on that topic. Sims Decl. ¶ 16. Plaintiffs now misconstrue and mischaracterize Amazon's position, claiming that "Amazon states it will produce only documents 'related to the denial of refunds *when the expected item is not returned*.'" Mot. at 3 (underlining added). But that is not what Amazon said. To the extent they exist, Amazon also will produce relevant documents related to situations "where the customer *does* return an item and is nevertheless denied a refund on the basis of non-receipt," as Plaintiffs request. *Id.*

This is a prime example of Plaintiffs' uncooperative discovery tactics and why this Motion is improper and premature. Since Amazon sent its December 9, 2024 discovery letter (which Plaintiffs reference as the purported basis for this dispute), the parties have met and conferred *three times*. Sims Decl. ¶ 17. Plaintiffs never raised this issue on those calls or in any other of their frequent emails or letters to Amazon on discovery issues. Sims Decl. ¶ 17. If they had, Amazon could have dispelled any confusion about Amazon's position. In all events, there is nothing for the Court to resolve; again, Amazon will produce documents (if any) relevant to the specific scenario that Plaintiffs posit.

**C. Data Requests (RFPs 8-19, 20-22, 23-24, 25-26, 29, 30-33, 78)**

Plaintiffs are seeking massive categories of data about Amazon customers that could only conceivably be relevant after a class is certified. Plaintiffs claim to need documents and data

regarding the identities of millions of non-party Amazon customers, dollar amounts of denied refunds (for any reason), numbers of customers denied refunds (for any reason), and other data associated with non-plaintiff Amazon customers' accounts, including the items and quantity of items purchased; the payment method used, dates and times captured in the purchase and return process; the place where the purchase and return occurred; and the price of the item(s) bought or returned. *See* Dkt. No. 82-1 (Plaintiffs' RFPs 22-23), at 14. As an initial matter, the identities of absent potential class members certainly are not relevant or appropriate at this stage. *See, e.g., Hatch v. Reliance Ins. Co*., 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial of request for names and potential class members before any class was certified); *Dziennik v. Sealift, Inc*., 05-CV-4659 (DLI) MDG, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) (courts generally prohibit discovery of class members' identities at the pre-certification stage). Notably, Plaintiffs implicitly concede this by agreeing to "accept anonymized data," but only if "there are customer identifiers that can be used to identify a given customer within and across data sets." Mot. at 6 n.4. Plaintiffs do not explain that oblique phrase or how customer data can be considered "anonymized" if Plaintiffs can identify which customers are implicated.

Moreover, even on an aggregate basis, classwide data is not proportional to the needs of the case right now. Plaintiffs effectively concede that they do not currently need, and are not currently entitled to, classwide data, provided they receive a representative sample of customer data. *See* Mot. at 5 ("A '[p]laintiff's offer to accept a relatively small sample size in exchange for defendant's promise that [the] sample is sufficient for making a class certification determination is patently reasonable.'" (quoting *Cruz v. Nike Retail Servs.*, No. 23-cv-874, 2023 WL 6967410, at *1 (S.D. Cal. Oct. 20, 2023))). Meanwhile, Plaintiffs' cases are inapposite; in those cases, the defendants either failed to produce any sample data or otherwise failed meet and confer in good faith. Mot. at 6. And Plaintiffs further admit that all they need at this stage is "a template of the available universe of data fields, and an initial sample of such data." Mot. at 4. *That is precisely what Amazon has produced*.

On November 8, 2024, for each of the nine named Plaintiffs' returns in the CCAC, Amazon produced a complete set of relevant transactional data. Sims Decl. ¶ 21. That data was in the form

of spreadsheets and tables with hundreds of data fields. *Id.* Amazon has informed Plaintiffs repeatedly, over many months, that the data fields in those spreadsheets are *the same fields* that would appear in other customers' data. *Id.* To the extent Amazon intends to use data related to fraud, it will produce that data separately, as discussed below. In other words, Plaintiffs' own data is a template of the available data fields, and also is "an initial sample of such data." Mot. at 4. Plaintiffs' *only* response to that fact is their mantra that a sampling must be "statistically significant." *Id.* at 5. But Plaintiffs have never explained what sample size would be "statistically significant" in this context. More to the point, despite Amazon's repeated requests (again, over months), Plaintiffs have never explained how it could possibly be relevant, useful, or meaningful to have additional datasets for random, "anonymized" Amazon customers showing the same fields reflected in Plaintiffs' data. In short, Plaintiffs have their "sample," and they are not entitled to more.

As an aside, Plaintiffs complain that Amazon has not explained the "meaning" of all the hundreds of data fields in Plaintiffs' data tables. Mot. at 4-5. Those fields do not all have standard definitions or a "key" that Amazon can readily produce. Sims Decl. ¶ 22. And Amazon has no obligation to create new documents for Plaintiffs' benefit. *Gallagher v. Dep't of Corr.*, No. C16-5088 RBL-KLS, 2017 WL 347467, at *3 (W.D. Wash. Jan. 24, 2017) (denying motion to compel and explaining "defendants are not required to create a document that does not exist"); *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.C. Cir. 2000) ("Therefore, Rule 34 only requires a party to produce documents that are already in existence.").

The logical way for Plaintiffs to better understand the data tables (like almost any document) is to ask relevant witnesses or custodians questions in depositions. Nevertheless, in the spirit of cooperation, Amazon compiled definitions for two of the tables and is working on completing definitions for the third. Sims Decl. ¶ 22. Amazon will continue to work with Plaintiffs on this issue and try to find a cooperative, efficient way to answer their (genuine) questions. Sims Decl. *Id.* There is nothing for the Court to resolve on that front.

Finally, in their string cite of RFPs for which they are apparently seeking the Court's help, Plaintiffs include RFPs 30-33, but they never explain why. Mot. at 3. RFPs 30-31 seek documents

about Amazon's policies, procedures, and training materials for processing returned items and for determining whether an item was received at a fulfillment center; reports analyzing those policies, procedures, and training materials; and the reasons for any changes to those policies, procedures and training materials. Amazon already agreed to produce this data and is working on producing responsive documents. Sims Decl. ¶ 18; *see also* Dkt. No. 82-6 (Anderson Decl.) (Amazon's December 9, 2024 letter), at 4. Similarly, RFPs 32-33 relate to a customer' ability to track a returned item, and Amazon has already agreed to produce responsive documents. Sims Decl. ¶ 19. There is nothing for the Court to address on these topics.

**D. Amazon's Conditions Of Use (RFP 7)**

Plaintiffs' RFP 7 seeks documents concerning how Amazon "applies" its Conditions of Use ("COUs") to returns and refunds. Amazon has repeatedly explained that this request is unclear, and that Amazon does not understand what Plaintiffs mean by "apply" the COUs. Sims Decl. ¶ 23. The COUs speak for themselves and, to the extent they relate to returns and refunds, that will be evident from the language of the COUs. In response, Plaintiffs stated that they seek "information regarding programmatic decisions." Dkt. No. 82-4 (Anderson Decl.) (Plaintiffs' September 27, 2024 letter), at 4. That "explanation" made the RFP even less clear.

Now, in their Motion, Plaintiffs claim that they want "internal documents concerning how Amazon interprets those Conditions in the context of returns or refunds." Mot. at 10. Amazon has already produced both current and historical versions of its COUs and return policies, and is in the process of producing documents in response to Plaintiffs' other far-ranging requests. In that process, if Amazon identifies relevant documents responsive to this request (as Plaintiffs now describe it) Amazon will produce them.

**E. Amazon's Statements Regarding Returns (RFP 46)**

Plaintiffs' RFP 46 seeks Amazon's "public communications, blogs and written statements about [Amazon's] Refund and Returns polices, including those for Instant Refunds, Refunds at First Scan, Advanced Refunds, Advanced Replacements/Exchanges, and partial refunds." Dkt. 82-4 (Plaintiffs' September 27, 2024 letter), at 13. Amazon has never refused to produce these documents. Instead, in its December 9 letter, Amazon simply noted that, if Plaintiffs are

seeking public documents, they are equally available and accessible to Plaintiffs. *See* Dkt. 82-6 (Amazon's December 9, 2024 letter), at 7. But if relevant, responsive documents exist in Amazon's possession, Amazon will produce them.

**F. Amazon's Knowledge Regarding Returns Issues (RFP 48-50)**

Plaintiffs seek documents sufficient to show when Amazon first became aware that customers were denied refunds, or were recharged, on the basis that Amazon did not receive the item when in fact: (i) the item was delivered to Amazon's fulfillment center; (ii) the item was delivered to a designated carrier; or (iii) the customer was instructed to keep or discard the return item; and (iv) the circumstances around the discovery of these incidents and associated costs with correcting them. Dkt. 82-4 (Plaintiffs' September 27, 2024 letter), at 14. Amazon framed its responses to these RFPs to clarify what types of documents it would produce, based on Plaintiffs' class definitions which focus on refunds denied for *non-receipt*. *See* Dkt. 86-6 (Amazon's December 9, 2024 letter), at 7. In its December 9 letter, Amazon asked Plaintiffs to let Amazon know if they had any questions about Amazon's positions. Plaintiffs never mentioned the issue again and instead filed this Motion. That does not qualify as exhausted all reasonable alternatives to Court intervention, as this Court has directed.

Nevertheless, Amazon is continuing to review its custodial documents and will produce relevant documents responsive to this request (if any).

**G. Differences In Return Or Refund Processing (RFP 54)**

Plaintiffs' RFP 54 seeks information regarding differences between Amazon's fulfillment centers with respect to processing returns and refunds. Once again, Amazon never said that it would not produce documents responsive to this request. Sims Decl. ¶ 24. Amazon has nearly 80 return centers. *Id.* It is, therefore, quite complicated and time-intensive to determine whether there are different practices across facilities or, alternatively, whether Amazon can state definitively that there are not. Amazon's investigation is ongoing and if relevant, responsive documents exist in Amazon's possession, custody, or control, Amazon will produce them.

**H. Communications With Third Parties Regarding Returns (RFPs 59-60)**

Plaintiffs' RFPs 59-60 seek documents and communications between Amazon and "third parties." Amazon never said it would not produce documents responsive to these requests. Rather, Amazon asked Plaintiffs to clarify what they meant by "third parties" because that term is very broad and could apply to many different entities. Dkt. 82-6 (Amazon's December 9, 2024 letter), at 9. Amazon also offered a further meet-and-confer to discuss these requests. *Id.* Plaintiffs have refused to explain what they mean by "third parties"; they have only said that they are *not* looking for privileged communications or communications with putative class members. Dkt. 82-4 (Plaintiffs' September 27, 2024 letter), at 17-18. Now, Plaintiffs insist that "the term 'third parties' is not vague or ambiguous," but again conspicuously refuse to define it or clarify in any way what they are seeking. Mot. at 9. If they clarify their requests, Amazon remains willing to discuss these RFPs and to produce relevant, responsive documents (if any).

**I. Records Retention (RFPs 61-62)**

Plaintiffs' RFP 61 seeks documents regarding Amazon's record retention and preservation policies. This request is overbroad and unduly burdensome to the extent that it seeks all documents concerning all of Amazon's retention policies. Plaintiffs have not indicated the specific categories or types of documents for which they are seeking Amazon's retention policies. Amazon stated that it was willing to meet and confer on this issue but, again, Plaintiffs never responded to Amazon's offer. Dkt. 82-6 (Amazon's December 9, 2024 letter), at 9. Amazon is willing to produce retention policies that relate to relevant categories of documents.

Similarly, Plaintiffs' RFP 62, seeking documents about the "destruction" of relevant information, is equally overbroad. *See* Dkt. 82-1 (Plaintiffs' RFP 62), at 20. Amazon offered a further meet-and-confer call to discuss what Plaintiffs are truly after. Plaintiffs instead filed this Motion. Amazon remains willing to confer and try to reach a compromise on this point.

**J. Documents Amazon Intends To Rely Upon (RFP 63)**

Plaintiffs seek "documents upon which you intend to rely or introduce into evidence at any deposition, hearing, motion, or otherwise use at trial." Dkt. 82-1 (Plaintiffs' RFP 63), at 21. This request is plainly premature, given the stage of the case. Amazon cannot currently produce

documents that it intends to rely on in depositions that have not even been scheduled, let alone documents Amazon might use in future motions or at trial. The parties did not even confer under Rule 26(f) until June 2024, so this case is still in its relatively early stages. Amazon will of course observe its duty to supplement its discovery responses as discovery and the case generally progress.

**K. Fraudulent Return Conduct (RFPs 66-67)**

Plaintiffs seek information regarding Amazon's knowledge of and proposed responses to fraudulent return requests. Specifically, Plaintiffs seek: (i) documents Amazon intends to use to support any fraud defense; (ii) documents sufficient to show the processes and procedures Amazon uses to determine whether a return is fraudulent; and (iii) documents sufficient to show the procedures and actions Amazon follows after determining a return is fraudulent. The parties are not at an impasse on this issue. Amazon never said that it would not produce documents related to fraud. Sims Decl. ¶ 25. While Amazon maintains that the request, as written, is too broad, Amazon has already agreed to produce relevant, responsive documents that Amazon intends to use to support its defenses related to fraudulent returns. Dkt. 82-6 (Amazon's December 9, 2024 letter), at 10. Amazon also agrees to produce documents sufficient to show how it detects fraudulent returns and its policies surrounding fraudulent returns.

**L. Relevance Redaction**

Finally, Plaintiffs mischaracterize Amazon's position with respect to relevance redactions. Amazon is producing documents by their document "family," meaning that parent documents or attachments (children) that are entirely nonresponsive will be produced to Plaintiffs. It is possible that some of those irrelevant, nonresponsive documents could contain information that is personally or competitively sensitive, which should be redacted. *See, e.g.*, *Nguyen v. City of Garden Grove*, No. 8:21-01775 JVS ADSx, 2023 WL 2558536, at *4 (C.D. Cal. Feb. 2, 2023) (appropriate to redact irrelevant personal or financial information). Amazon has not yet decided that it needs to redact any documents; it merely stated that "if Amazon redacts for relevance, it will make those redactions clear to Plaintiffs." Dkt. 82-6 (Amazon's December 9, 2024 letter), at 1. And Amazon will of course confer in good faith on any redactions and explain the rationale behind

them. In any event, there is no issue ripe for the Court's consideration, and, like Plaintiffs' Motion as a whole, this request for the Court's help is premature.

## IV. CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

Dated: February 12, 2025

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423

Deena J.G. Feit, WSBA No. 29036
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511
Email: bbuckley@fenwick.com
dfeit@fenwick.com

Jedediah Wakefield (admitted *pro hac vice*)
Mary Griffin Sims (admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: jwakefield@fenwick.com
mgriffin@fenwick.com

*Attorneys for Defendant Amazon.com, Inc.*

**LCR 7(e) and 7(g) WORD-COUNT CERTIFICATION**

As required by Western District of Washington Local Civil Rules 7(e) and 7(g), I certify that this Brief contains 4,172 words.

February 12, 2025

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on **February 12, 2025.** Any other counsel of record will be served by First Class U.S. mail on this same date.

*<u>/s/ Brian D. Buckley</u>*
Brian D. Buckley