THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON RETURN POLICY LITIGATION

No. 2:23-CV-1372-JNW

**PLAINTIFFS' MOTION TO COMPEL CUSTODIANS**

NOTING DATE: June 30, 2025

**PUBLIC VERSION**



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................ 1

BACKGROUND ........................................ 2

A. Amazon Selects Its Custodians and Stonewalls Discovery ........................................ 2

B. Amazon Refuses to Add Additional Custodians ........................................ 4

C. Amazon Identifies Some Additional Potentially Relevant Employees in Interrogatory Responses, but Nevertheless Refuses to Search Their Documents ........................................ 5

ARGUMENT ........................................ 6

A. Amazon's Selected Custodians Are Inadequate ........................................ 6

B. Plaintiffs' Proposed Custodians Are Likely To Have Relevant, Non-Duplicative Discovery ........................................ 7

C. Amazon Must Be Ordered To Add Additional Custodians Now ........................................ 12

CONCLUSION ........................................ 13





QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

# TABLE OF AUTHORITIES

**Page**

## Cases

*Custom Foods of Am., Inc. v. California Garlic Co.*,
2024 WL 5036652 (S.D. Cal. Nov. 8, 2024) ..... 7

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
2024 WL 3174874 (S.D. Cal. June 25, 2024) ..... 13

*Baranco v. Ford Motor Co.*,
2018 WL 9869540 (N.D. Cal. Apr. 10, 2018) ..... 7

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) ..... 7, 8, 13

*Mt. Hawley Ins. Co. v. Felman Prod., Inc.*,
269 F.R.D. 609 (S.D.W. Va. 2010) ..... 8

*Otto v. Abbott Labs, Inc.*,
2014 WL 12612682 (C.D. Cal. Mar. 10, 2014) ..... 6

*Shenwick v. Twitter, Inc.*,
2018 WL 1801290 (N.D. Cal. Apr. 12, 2018) ..... 7

*Vasudevan Software, Inc. v. Microstrategy Inc.*,
2012 WL 5637611 (N.D. Cal. Nov. 15, 2012) ..... 8

## Rules/Statutes

Fed. R. Civ. P. 26(b) ..... 7

RCW 4.16.040 ..... 2

## INTRODUCTION

Plaintiffs respectfully request an order compelling Amazon to add 10 additional custodians to its ESI searches: Vishal Bhargava, Bryan Puckett, Tom Weiland, Libby Johnson McKee, Srikanth Madupu, Vince Calabro, Yudhish Kalluri, Tobin Weldele, Kathryn Jorawsky, and Brett O'Keefe.[1]

At the outset of discovery, Amazon unilaterally selected six document custodians without Plaintiffs' input (and without having produced any organizational charts or provided other information to facilitate Plaintiffs' engagement in informed decision-making about custodians), and has refused to add ***any*** custodians identified independently by Plaintiffs. As explained below, there are clear information gaps with Amazon's designated custodians, and therefore adding Plaintiffs' proposed custodians will yield highly relevant, non-duplicative discovery. Amazon has taken the position that it need not even consider adding additional custodians until it has completed production of documents for its current custodians. But that position is without basis, highly inefficient, and prejudicial to Plaintiffs. Amazon is not in a hurry to produce responsive documents—making clear its intentions to produce the bulk of documents on or around the deadline for substantial completion of document productions, on June 20, 2025, and delays in adding custodians will only delay the case schedule. Further, the gaps identified by Plaintiffs—such as the time periods and tenure of the existing versus proposed custodians—cannot possibly be solved by Amazon's current productions. Amazon should not be permitted to block access to clearly relevant discovery through its self-serving and insufficient selection of document

[1] Amazon has refused to provide information needed to identify relevant custodians. Plaintiffs have two related motions to compel that are fully submitted and pending before the Court. *See* Dkt. 81 (Pls' Mot. to Compel Documents) at 2-3; Dkt. 89 (Reply ISO Pls' Mot. to Compel Documents) at 1-2; Dkt. 93 (Pls' Mot. to Compel Interrogatory Resps.) at 3-9. Amazon has also engaged in improper discovery tactics—making its first material production of emails just a few weeks ago, nearly a year after Plaintiffs' first document requests. Plaintiffs seek relief now without prejudice to Plaintiffs' ability to subsequently request that additional custodians be added after further review of these documents or any document productions made subsequent to the filing of this motion.

custodians, and its delay tactics. The Court should order Amazon produce responsive documents from the additional requested custodians, and do so within 21 days.

## BACKGROUND

### A. Amazon Selects Its Custodians and Stonewalls Discovery

On April 22, 2024, Plaintiffs served their first set of documents requests. Dkt. 82-1. On July 26, 2024, Amazon served its ESI disclosures, identifying six individuals likely to have discoverable documents:

1) Anil Kaligatla—Senior Manager/Director of Worldwide Returns Customer Experience [redacted];
2) Nicolette Kyte—Program Manager/Senior Program Manager/Principal Program Manager of various departments including Customer Service Concessions, Defect Elimination, and Customer Experience Insights [redacted];
3) Jennifer Moore—Program Manager/Process Improvement Specialist of various departments including Returns Repeatability and Fraud & Executive Escalations [redacted];
4) Dinesh Palleneni—Senior Product Manager/Principal Product Manager of various departments including Technology for Returns Customer Experience [redacted];
5) Prashanth Pannala—Senior Product Manager/Principal Product Manager of various departments including Returns Policy and Field Operations Return & ReCommerce [redacted]; and
6) Shelly Robertson—Director of Worldwide Consumer Customer Service [redacted].

Ex. 1[2]; *see also* Ex. 2 at 6-25. But once Amazon finally provided some information about the proposed custodians in response to an interrogatory, it became clear that they lacked relevant experience throughout the entire class period. The statute of limitations for Plaintiffs' breach of

---

[2] All citations to "Ex." refer to Exhibits attached to the Declaration of Nolan Anderson.

contract claim is six years, RCW 4.16.040, and the Parties defined the "Relevant Period" for purposes of discovery to start on September 5, 2017. *See, e.g.*, Dkt. 99-5 at 4 (parties agree to Relevant Period). However, only one of Amazon's selected custodians held a relevant position in 2017, and only three held relevant roles before 2022. Ex. 2 at 6-25. Specifically, Kaligatla—the only director-level custodian within the returns department—held that role only since [redacted] and only worked in Worldwide Returns Customer Experience since [redacted]. The other returns department employees—Palleneni, Moore, Pannala—held relevant positions since [redacted], respectively. But even for the two employees who held facially relevant roles going back to [redacted] (Moore and Pannala), Amazon has so far only produced 3,457 and 555 documents pre-dating 2022 for those custodians, respectively. Anderson Decl. ¶5. As to the two Customer Service employees, the more senior customer service custodian (Robertson) did not hold a relevant role until [redacted] and does not specialize in returns, but rather [redacted] Ex. 2 at 23. That Amazon's selections are inadequate is confirmed by the fact that approximately 85% of documents produced are from 2022 or later, and the vast majority of the documents from before 2022 come from Kyte. Anderson Decl. ¶6.

In the fall of 2024, the Parties met and conferred to discuss Amazon's custodians and search terms. Anderson Decl. ¶7; Ex. 3. Both before and after those meet and confers, Plaintiffs requested additional information about Amazon's proposed custodians and information that would enable Plaintiffs to evaluate them, including their backgrounds and the reasons for their selection. *Id.* Amazon provided no information to answer Plaintiffs' questions or assuage Plaintiffs' concerns, other than the titles, departments, roles, and reporting line of the six custodians. *See* Ex. 2. In early January 2025, the parties met and conferred regarding outstanding discovery disputes, including Amazon's failure to produce a single custodial document. Anderson Decl. ¶8; Ex. 3. Amazon refused to give any indication as to when it would produce any custodial documents beyond gesturing toward the substantial completion deadline. *Id.*

### B. Amazon Refuses to Add Additional Custodians

On January 30, 2025, having received no custodial productions from Amazon, Plaintiffs requested Amazon add four additional custodians, who Plaintiffs had identified independently without the benefit of Amazon's document productions or assistance:

(1) Libby Johnson McKee—Director of Worldwide Returns and Recommerce at Amazon (2014-2022);

(2) Bryan Puckett—Director of Worldwide Returns (April 2020-present); Senior Manager of Returns Transportation (2017-2020);

(3) Vishal Bhargava—Global Head of Concessions and Support Experience (October 2022-present);

(4) Tom Weiland—Vice President of Support and Customer Service (1997-2022).

Ex. 3. These individuals have more experience in their roles than the custodians Amazon proposed, with three of the four being in their relevant roles at the beginning of the relevant time period (Puckett, Weiland, and Johnson), and the fourth covering a department largely missing from Amazon's proposed custodians: the concessions team (focusing on the resolution of customer issues, including granting refunds when there are issues with returns).

On February 3, 2025, Amazon requested Plaintiffs "explain their justification for wanting to add custodians other than 'chain of command.'" *Id.* Although Plaintiffs had only limited information, Plaintiffs nevertheless explained that the custodians they proposed "appear to fill a gap in the coverage of the relevant time period (2017 to present) and appear to have a broader scope and level of responsibility in the returns area," and specifically detailed why each of the four new proposed custodians are likely to possess unique, relevant documents. *Id.* Rather than engage with this proposal, Amazon claimed that Plaintiffs' request was "premature" and refused to even *consider* adding additional custodians until after the completion of Amazon's document production for its six unilaterally-chosen custodians, at the deadline for substantial completion of document productions. *Id.*; Ex. 4; Dkt. 87 at 3; Dkt. 113 at 3.

Amazon then waited until April 30, 2025 (the day after the Court denied its Motion to Dismiss), to make its first material custodial production, of approximately 50,000 documents. Anderson Decl. ¶10. Moreover, Amazon has repeatedly refused to provide any details on when it expects to make further productions, other than to say it "plans to produce tens of thousands more before the June 20, 2025 substantial completion deadline." Dkt. 113 at 3.

### C. Amazon Identifies Some Additional Potentially Relevant Employees in Interrogatory Responses, but Nevertheless Refuses to Search Their Documents

On March 21, 2025, Amazon served updated interrogatory responses identifying certain additional Amazon employees with relevant knowledge. Ex. 2. On May, 7, 2025, after review of the limited custodial documents produced by Amazon in February and their March supplemental interrogatory responses, Plaintiffs requested that Amazon run the agreed-to search terms across six additional custodians, three of which Amazon itself identified in its Supplemental Amended Interrogatory Responses:

1) Srikanth Madupu—Senior Manager of [redacted] (April 2022-present); Software Development Manager in Recommerce & Logistics (April 2016-April 2022);
2) Vince Calabro—Senior Manager of Returns & Recommerce (April 2019-August 2021, October 2022-present);
3) Yudhish Kalluri—Product Manager for Customer Returns and Refunds (August 2013-present);
4) Tobin Weldele—Vice President Worldwide Customer Service (July 2017-present);
5) Kathryn Jorawsky—Content Project Manager (September 2021-present); and
6) Brett O'Keefe—Senior Manager of Quality & Defect Elimination (September 2023-October 2024), Head of Data & Insights (May 2022-September 2023), Head of Customer Experience Insights (October 2021-August 2022), and Senior Manager of Customer Experience Insights (August 2018-October 2021).


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Ex. 5. The parties met and conferred later that day, and Amazon indicated it would respond to Plaintiffs the week of May 12, 2025. Anderson Decl. ¶12. Instead, Amazon responded on June 5, 2025, but failed to address any of Plaintiffs' concerns about substantial gaps in the temporal and subject-matter coverage of Amazon's six custodians, baldly claiming that Plaintiffs' request was *still* "premature and inefficient" and there "appears" to be overlap among custodians. Ex. 6. Revealing its true intent to further delay discovery, Amazon stated that if additional custodians are ultimately added later, it "would be willing to negotiate a schedule to account for…additional custodians." *Id.*

## ARGUMENT

### A. Amazon's Selected Custodians Are Inadequate

As described above, Amazon unilaterally selected six document custodians at the outset of discovery, and refused to provide adequate information about those custodians for Plaintiffs to evaluate their appropriateness, or to engage with Plaintiffs on adding any additional custodians. Further, it is clear from Amazon's discovery responses and productions to date that Amazon's custodians lacked relevant experience throughout the entire class period, *i.e.*, September 5, 2017 to the present, generally hold junior roles, and do not cover the full range of relevant Amazon departments.

Although unilaterally selecting ESI custodians is not "per se, improper," courts have granted motions to compel the addition of custodians where "plaintiff's counsel ha[d] not been sufficiently involved in the selection process to ensure a fulsome production of responsive documents." *Otto v. Abbott Labs, Inc.*, 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (compelling the selection of additional custodians after defendant unilaterally selected custodians). In fact, the ESI order requires the parties to "confer to attempt to reach agreement on appropriate…data sources (including custodians)." Dkt. 71 at C.2. The purpose of this requirement is to promote "the more efficient procedure" whereby the parties "agree on…custodians before conducting electronic data collection." *Custom Foods of Am., Inc. v. California Garlic Co.*, 2024 WL 5036652, at *2 (S.D. Cal. Nov. 8, 2024); *Baranco v. Ford Motor Co.*, 2018 WL 9869540, at

*1 (N.D. Cal. Apr. 10, 2018) ("It is well-established that, when search terms are used in ESI discovery, the parties should cooperate to select…custodians."). Amazon's refusal to engage with Plaintiffs on adding any custodians violates this directive as demonstrated by the *de minimis* production from all but one of Amazon's six custodians. For these reasons, it is clear that Amazon's selection of these six custodians is inadequate.

### B. Plaintiffs' Proposed Custodians Are Likely To Have Relevant, Non-Duplicative Discovery

Plaintiffs, who have less information about Amazon's documents and custodians than Amazon, have therefore identified additional proposed custodians based upon Plaintiffs' own research combined with Amazon's interrogatory responses, and (until recently) very limited document production. *See Shenwick v. Twitter, Inc.*, 2018 WL 1801290, at *3 (N.D. Cal. Apr. 12, 2018) (ordering the addition of custodians beyond the 25 the parties had previously agreed to "[g]iven the unequal information of the parties" and "the clearly relevant nature of the information sought"). As detailed further below, Plaintiffs' proposed additional custodians possess "uniquely relevant information that is not available from the sources already designated" by Amazon unilaterally. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *1–2 (N.D. Cal. Nov. 14, 2021) (granting request to add Mark Zuckerberg and Sheryl Sandberg as custodians because they were likely to "possess information relevant to the Plaintiffs' allegations [that] differs from discovery already obtained from other custodians").

Amazon has refused to provide hit counts for these additional proposed custodians, has never claimed that they held irrelevant roles, has never claimed they will not have responsive documents or information, and has never stated that searching their documents would be unduly burdensome or solely duplicative of other collections. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [among other things,]…whether the burden or expense of the proposed discovery outweighs its likely benefit."). And any purported burden would be outweighed by the clear benefit of adding custodians likely to possess uniquely relevant information. *See Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 620 (S.D.W.


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Va. 2010) (granting motion to add custodians because "it is reasonable to believe that they will have additional, highly relevant" documents, and thus that "likely benefit outweigh[ed]" any burden and was "justifiable"); *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *6 (N.D. Cal. Nov. 15, 2012) (granting motion to add custodian whose documents did not appear "duplicative or unreasonable"); *In re Facebook*, 2021 WL 10282213, at *3 ("benefit of collecting, reviewing, producing" the additional custodians "outweigh[ed] the burden imposed on" defendant).

Plaintiffs' proposed custodians are likely to possess the following uniquely relevant information that is not available from the six custodians Amazon designated:

**Libby Johnson McKee.** Johnson McKee was a Director of Worldwide Returns and Recommerce at Amazon from 2014-2022, Ex. 7, a role that Amazon's own proposed custodian (Kaligatla) has only held since September 2024. According to her LinkedIn profile, Johnson McKee "[d]eveloped Returns Experience as a critical customer loyalty feature," "defined and delivered product roadmaps for returns experience and processes used in every Amazon marketplace worldwide," and "[d]efined, built and managed the end-to-end customer returns and refund experience, and the P&L for cost of returns." *Id.* Each of these issues is relevant, and her tenure in these roles going back to 2014 makes her a particularly apt custodian. Further, documents identified from Plaintiffs' ongoing review of Amazon's productions describe Johnson McKee as [redacted], Ex. 8; Ex. 9, and as [redacted], Ex. 10; Ex. 11; Ex. 12.

**Bryan Puckett.** Puckett is currently the Director of Worldwide Returns, a role he has held since April 2020, again, compared to the just eight months Kaligatla has held this role. Ex. 13. Before that (but also during the relevant period), he was a Senior Manager of Returns Transportation from 2017-2020. *Id.* [redacted] Ex. 14, [redacted], *see, e.g.*, Ex. 15; Ex. 16; Ex. 17. [redacted]

[redacted], *see, e.g.*, Ex. 18; Ex. 19, critical here where the class is defined to include people who returned their items, and whose items arrived at a designated carrier, but where Amazon denied a refund anyway, Dkt. 116 ("FACC") ¶225. Plaintiffs' review of Amazon's document production to date also shows that Puckett was the [redacted] Ex. 20. [redacted] Ex. 21. These issues are clearly relevant to key issues in this case.

**Vishal Bhargava.** Bhargava is currently the Global Head of Concessions and Support Experience, a role he has held since October 2022. Ex. 22. Amazon's concessions team focuses on the resolution of customer issues, including granting concessions—*e.g.*, refunds—when there are issues with returns, as there were for Plaintiffs here. His team [redacted], *see, e.g.*, Ex. 23, and also [redacted], *see, e.g.*, Ex. 24. His team also [redacted] Ex. 25. Further, Plaintiffs' review to date of Amazon's productions indicate Bhargava is involved with [redacted] Ex. 26; Ex. 27, which applies to class members who are told they need not return the items before receiving a refund (often because the item was damaged or low value). Due to Bhargava's seniority and boarder scope, his documents are likely to exceed the more limited scope and responsibility than Amazon's offered custodians.

**Tom Weiland.** Weiland was the Vice President of Support and Customer Service from 1997-2022, and with Amazon in customer service roles since 1997. Ex. 28. He was "[r]esponsible for leading and building Amazon's award-winning customer services organizations; including operations, technology, and products." *Id.* Unlike Amazon's proposed customer service custodians, Weiland served in a leadership role in the Customer Service department since before the start of the relevant time period. Plaintiffs' review of Amazon's production to date has identified Weiland as [redacted] *See, e.g.*, Ex. 29; Ex. 30. [redacted]

[redacted] Ex. 31. [redacted], and therefore he is likely to have unique documents relevant to Plaintiffs' claims.

**__Srikanth Madupu.__** Madupu is currently a Senior Manager [redacted], Ex. 2 at 28, 35, a position he has held since April 2022. Ex. 32. Prior to that, he was a Software Development Manager in the Recommerce & Reverse Logistics department from April 2016 through April 2022. *Id.* [redacted] Ex. 2 at 28, 35. [redacted] Ex. 33 at -365, 369, [redacted] Ex. 34. Further, he [redacted]. Ex. 35; Ex. 36. [redacted], and as confirmed by the documents reviewed to date, Madupu is likely to have relevant documents, and he should be added as a custodian.

**__Vince Calabro.__** Calabro is currently a Senior Manager [redacted], Ex. 2 at 33, a position he has held since November 2023. Ex. 37. He has worked at Amazon since July 2015, including in numerous different positions related to Worldwide Returns and reverse logistics (i.e., the process of managing goods that return to the seller or manufacturer after the initial sale to the consumer). *Id.* [redacted] Ex. 2 at 31-34; *see also* Ex. 38. [redacted] Ex. 39, [redacted]

[redacted] Ex. 40. [redacted]. *See* Ex. 41. Calabro should be added as a custodian.

**Yudhish Kalluri.** Kalluri is currently a Senior Product Manager, a position he has held since October 2019. Ex. 42. He held similar roles at Amazon since August 2013. *Id.* Kalluri currently "lead[s] a global cross-functional team" to "build and maintain the end-to-end customer returns and refund experience for every Amazon country," and "set[s] the overall product strategy for Amazon returns" including Amazon's "Online Returns Center." *Id.* [redacted], Ex. 43, [redacted], Ex. 44.

**Tobin Weldele.** Weldele is currently Amazon's Vice President of Worldwide Customer Service, Customer Service Management. Ex. 45. He has worked at Amazon in various roles for nearly 20 years. *Id.* Wedele is described as [redacted]. Ex. 46. Based on Plaintiffs' review to date of Amazon's productions, it appears that [redacted]. *See, e.g.*, Ex. 47; Ex. 48. [redacted]. *See, e.g.*, Ex. 49. However, because [redacted]. Adding Weldele as a custodian would lead to the production of relevant and unique documents.

**Kathryn Jorawsky.** Jorawsky has been a Content Project Manager since September 2021. Ex. 50. She "[m]anage[s] customer facing support content and internal Customer Service Associate content," *id.*, [redacted]. *See, e.g.*, Ex. 51; Ex. 52; Ex. 53; Ex. 54. In particular, [redacted]

[redacted] *See, e.g.*, Ex. 55; Ex. 56. As such, adding Jorawsky as a custodian would likely lead to the discovery of relevant and unique documents regarding [redacted].

**Brett O'Keefe.** O'Keefe worked at Amazon for over 21 years, with his positions during the relevant time period including: Senior Manager of Quality & Defect Elimination (September 2023-October 2024), Head of Data & Insights (May 2022-September 2023), Head of Customer Experience Insights (October 2021-August 2022), and Senior Manager of Customer Experience Insights (August 2018-October 2021). Ex. 57. Plaintiffs' ongoing review of Amazon's productions reveal O'Keefe's involvement [redacted]. *See, e.g.*, Ex. 58; Ex. 59; Ex. 60; Ex. 61; Ex. 62. [redacted] Ex. 58. [redacted] Given his seniority, tenure, and breadth of relevant experience, O'Keefe should be added as a custodian.

### C. Amazon Must Be Ordered To Add Additional Custodians Now

Amazon should not be permitted to continue to stonewall Plaintiffs' efforts to obtain discoverable documents. Amazon's position that Plaintiffs must wait until Amazon is finished producing documents from its current custodians before Amazon even considers any potential additions is absurd and unsupported. Courts routinely grant motions to add custodians although productions from existing custodians is ongoing. *See, e.g.*, *In re Facebook, Inc.*, 2021 WL 10282213, at *1-3 (granting motion to add two additional ESI custodians where the completion of document production from existing custodians would not obviate the need for the unique information from the additional custodians); *see also In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2024 WL 3174874, at *7 (S.D. Cal. June 25, 2024) (compelling addition of two

custodians where party was still reviewing and producing ESI from three other custodians). There is no reason to wait for Amazon to complete its production before Amazon even considers whether to add new custodians with relevant and unique documents.

## **CONCLUSION**

For the reasons above, Plaintiffs respectfully request the Court order that Amazon add the additional custodians proposed by Plaintiffs, and produce their responsive documents within 21 days.

Dated: June 9, 2025

Respectfully submitted,

By: */s/ Alicia Cobb*
Alicia Cobb, WSBA #48685
Nolan K. Anderson, WSBA #59691
Alexandria Madjeric, WSBA #60677
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.: 206.905.7075
Fax: 206.905.7100
aliciacobb@quinnemanuel.com
nolananderson@quinnemanuel.com
alexandriamadjeric@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Alyssa G. Olson (*pro hac vice*)
Joshua Courtney (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017
Tel: 213.443.3621
Fax: 213.443.3100

adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
alyolson@quinnemanuel.com
joshuacourtney@quinnemanuel.com

By: */s/ Aaron M. Zigler*
Aaron M. Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312.673.8427
aaron@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Interim Class Counsel*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 4,193 words, in compliance with the Local Civil Rules.

DATED: June 9, 2025

*_/s/ Alicia Cobb_*
Alicia Cobb, WSBA #48685

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system, and caused unredacted versions of the foregoing to be sent by email to counsel of record.

DATED June 9, 2025

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000