THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON RETURN POLICY LITIGATION

No. 2:23-CV-1372-JNW

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE**

NOTING DATE: February 6, 2026



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

## TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

PROCEDURAL HISTORY ..... 1

A. The Pleadings ..... 1

B. Discovery ..... 2

C. Mediation ..... 3

THE TERMS OF THE SETTLEMENT ..... 3

D. Proposed Class Definitions ..... 3

E. Consideration ..... 4

F. Release ..... 4

G. Settlement Administration ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 5

I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ..... 5

A. Rule 23(a)'s requirements are met ..... 5

1. Numerosity ..... 5

2. Commonality ..... 6

3. Typicality ..... 6

4. Adequacy ..... 7

B. Certification under Rule 23(b)(3) is appropriate ..... 8

1. Predominance ..... 8

2. Superiority ..... 9

3. Interim Class Counsel should be appointed as Class Counsel ..... 10

C. The Settlement Is Facially Fair, Reasonable, and Adequate. ..... 10

1. The relief provided to the Settlement Class is far more than "adequate" (Rule 23(e)(2)(C)) ..... 11

2. The Settlement Agreement Treats Settlement Class Members Equitably (Rule 23(e)(2)(D)) ..... 13

3. The Settlement Is The Product Of Arms'-Length Negotiations ..... 14

4. Plaintiffs And Interim Class Counsel Have Adequately Represented The Class ..... 15

II. THE COURT SHOULD APPROVE THE NOTICE PLAN. ..... 15

A. The Court Should Approve The Proposed Schedule ..... 17

CONCLUSION ..... 17




QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 8

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 7

*Booth v. Strategic Realty Tr., Inc.*,
2015 WL 3957746 (N.D. Cal. June 28, 2015) .......... 10

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .......... 5

*Carvalho v. HP, Inc.*,
2025 WL 588674 (N.D. Cal. Feb. 24, 2025) .......... 5

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .......... 14

*De Coster v. Amazon.com, Inc.*,
2025 WL 2836824 (W.D. Wash. Aug. 6, 2025) .......... 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) .......... 9

*Four In One Co. v. S.K. Foods, L.P.*,
2014 WL 28808 (E.D. Cal. Jan. 2, 2014) .......... 14

*Four in One Co. v. S.K. Foods, L.P.*,
2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) .......... 14

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) .......... 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 9

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .......... 13

*Jones Clark v. Amazon.com Inc.*,
No. 23-cv-1702, Dkt. 1 (Nov. 7, 2023) .......... 2

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) .......... 7



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .......... 15

*In re MacBook Keyboard Litig.*,
2023 WL 3688452 (N.D. Cal. May 25, 2023) .......... 11

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) .......... 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) .......... 9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 16

*Pacito v. Trump*,
2025 WL 2418524 (W.D. Wash. July 30, 2025) .......... 6

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 6

*Radcliffe v. Hernandez*,
794 F. App'x 605 (9th Cir. 2019) .......... 13

*Rieckborn v. Velti PLC*,
2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .......... 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 14

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......... 14

*Small v. Allianz Life Ins. Co. of N. Am.*,
122 F.4th 1182 (9th Cir. 2024) .......... 6

*Srivastava v. Amazon.com, Inc.*,
No. 23-cv-1545, Dkt. 1 (Oct. 5, 2023) .......... 2

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......... 5

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......... 10

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .......... 5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 6

**Rules**

Fed. R. Civ. P. 23 ........................................................ *passim*

## INTRODUCTION

After years of litigation and months of negotiation, the parties have agreed to a resolution of Plaintiffs' claims concerning Amazon's return and refund practices, providing in excess of $1 billion of benefits for the class. The monetary relief from the settlement will likely represent a full recovery for every class member—plus interest. Moreover, the settlement provides for substantive changes to Amazon's practices designed to prevent the recurrence of returns and retrocharge issues. This is an incredible result for the class, no matter what metric one uses.

The proposed settlement is fair, reasonable, and adequate: class representatives and Interim Class Counsel vigorously prosecuted the case and obtained an excellent result in the face of stiff opposition. Pursuant to Fed. R. Civ. P. 23(e), the Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class and appoint class representatives and class counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the proposed form and method of notice to the Settlement Class; and (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters.

## FACTUAL BACKGROUND

This putative class action arises from Amazon's alleged failure to honor its return and refund policies. Plaintiffs represent two putative nationwide classes of Amazon consumers who returned merchandise in compliance with Amazon's policies but who were denied refunds. Dkt. 116 ¶225. Plaintiffs allege Amazon promises customers "free, no hassle returns," but "routinely…fails to issue refunds or re-charges customers who have returned items in compliance with Amazon's refund and exchange policies because of defects in Amazon's return and refund processes, often incorrectly claiming that the return had not been received by Amazon." *Id.* ¶4. Plaintiffs allege these failures can also occur due to human error. *Id.* ¶6. Plaintiffs also allege that Amazon knows that most of its customers do not notice, and as a result, Amazon's practices result in substantial unjustified monetary losses by consumers. *Id.* ¶7.

## PROCEDURAL HISTORY

### A. The Pleadings

In August 2023, Plaintiffs brought a putative class action against Amazon, Inc., ("Amazon"),


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

asserting claims for breach of contract, breach of the duty of good faith and fair dealing, violation of Washington's Consumer Protection Act, money had and received, unjust enrichment, promissory estoppel, and conversion. Dkt. 1.

Shortly thereafter, two additional plaintiffs filed short but materially similar complaints against Amazon, *Srivastava v. Amazon.com, Inc.*, No. 23-cv-1545, Dkt. 1 (Oct. 5, 2023); *Jones Clark v. Amazon.com Inc.*, No. 23-cv-1702, Dkt. 1 (Nov. 7, 2023). The Court consolidated the cases and permitted plaintiffs' counsel to seek appointment as interim class counsel under Rule 23(g). Dkt. 32. After extensive briefing, the Court concluded the undersigned were "best suited to represent the interest of the class members here," appointed the undersigned as Interim Class Counsel, and directed Plaintiffs to file a consolidated complaint. Dkt. 56.

Plaintiffs filed their consolidated complaint in March 2024, Dkt. 58, and Amazon sought partial dismissal of some of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), Dkt. 62. The Court denied Amazon's motion. Dkt. 112. Plaintiffs amended their complaint again on May 23, 2025. Dkt. 116.

The first proposed class consists of consumers who were denied refunds but (1) returned merchandise through an Amazon-designated carrier, or (2) were told that they need not return the merchandise to receive a refund. The second class includes consumers whom Amazon failed to refund despite receiving the returned merchandise at a return center. *Id.* ¶225. Between the two classes, Plaintiffs raise 14 causes of action, including breach of contract, violation of the duty of good faith, violation of the Washington Consumer Protection Act (CPA), unjust enrichment, promissory estoppel, and conversion. *Id.* ¶¶237-372.

**B. <u>Discovery</u>**

Discovery has been extremely hard-fought and necessary, but nonetheless burdensome and expensive. Schapiro & Zigler Decl. ¶¶33–87. Over the course of discovery, the parties have engaged in extensive document production and collected and reviewed hundreds of thousands of pages of documents. *Id.* The parties have also engaged in extensive correspondence, hours of meet and confers, and filed six motions to compel. *Id.* ¶¶45-87. Counsel for both parties have engaged in extensive back-and-forth with their clients to comply with discovery obligations, *id.* ¶¶33–87, which


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

has resulted in significant disruption to their lives and business operations.

**C. Mediation**

The parties began settlement discussions on February 16, 2025, and then turned to formal mediation on May 27, 2025, *id.* ¶89, with Plaintiffs outlining the data they required to engage in fruitful discussions. On March 3, 2025, the parties agreed to an informal pause of the litigation to allow Amazon to collect the data Plaintiffs required. *Id.*

Beginning on May 27, 2025, the parties conducted an in-person mediation, facilitated by an experienced mediator, Honorable Layn R. Phillips (Ret.) of Phillips ADR Enterprises. Phillips Decl. ¶15. Although the initial mediation session was unsuccessful, the parties continued negotiations with Judge Phillips' assistance over the next several months. *Id.* ¶¶15-16. On October 20, 2025, the Parties reached an agreement in principle and entered a binding Term Sheet that set forth the material terms and obligations with respect to the Settlement. Dkt. 157. The Parties notified the Court that they had reached a settlement in principle, and asked that the case be stayed in order to facilitate finalizing the Settlement, a request which the Court granted. Dkts. 157-159.

After entering the binding term sheet, counsel for the parties extensively met and conferred over a long-form settlement agreement and worked to finalize the Settlement Agreement and corresponding notice documents, subject to the Court's approval. Schapiro & Zigler Decl. ¶92. The parties exchanged several drafts and revisions of the long-form agreement over a series of months, and engaged in multiple rounds of discussion prompted by counsel's questions about Amazon's data and documents. *Id.* The parties executed the long-form Settlement Agreement on January 23, 2026. *Id.*

## THE TERMS OF THE SETTLEMENT

**D. Proposed Class Definitions**

The "Settlement Class" is defined in the Settlement Agreement as follows:

> All persons who initiated a return to Amazon or requested a refund regarding a physical product purchased and (per Amazon's records) received in the U.S. after being sold through Amazon.com from September 5, 2017 to the time the Class Data is prepared, and who (1) incorrectly did not receive a refund from Amazon or received an untimely or incorrect refund from Amazon; and/or (2) did receive a refund but were later incorrectly charged by Amazon for the product(s) that was



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

(were) the subject of the return.[1]

Settlement Agreement (attached as Exhibit A) ¶1.30.

**E. Consideration**

In addition to the more than $600 million that is already or will shortly be in class members' hands, Holton Decl. ¶66, the settlement creates an additional $309.5 million non-reversionary common fund for the benefit of Settlement Class Members. Ex. A ¶1.32. This fund will be used to pay additional refunds and interest to the class, settlement expenses and fees and costs. *Id.* ¶¶4.1, 6.4.

Amazon has also agreed to non-monetary consideration worth more than $363,739,761 to the class. Holton Decl. ¶70-74. As described in the Settlement Agreement, Amazon has agreed to take six multilayered steps designed to improve its return and refund practices, including increased monitoring, an audit of potential technical issues related to refund processing, adopting automatic and manual refund processing redundancies, and improvements to customer notifications and communications. Ex. A ¶¶4.3.1, 4.3.2.

**F. Release**

Under the terms of the Settlement Agreement, members of the Settlement Class will release all claims related to the allegations in this action. *Id.* ¶8.1. Amazon will release all claims against Settlement Class Members arising out of the institution, prosecution, or settlement of the claims alleged here. *Id.* ¶8.2.

**G. Settlement Administration**

After a competitive bidding process, Plaintiffs selected Angeion Group (the "Settlement Administrator"), over four other administrators, to administer the Settlement. *See generally* Weisbrot Decl.

[1] Excluded from the Settlement Class are: Defendant; Defendant's employees and agents; any judge conducting proceedings in this action and the judge's parents, spouses and children as well as any other member of the judge's family residing in the judge's household; counsel of record in this Action; individuals and entities who validly and timely opt-out; the legal representatives, heirs, successors and assigns of any excluded person and the United States government; and any purchases from Amazon affiliates and subsidiaries, except where those (i) purchases occur on Amazon.com and (ii) returns are handled through Amazon's fulfillment channels. Ex. A ¶1.30.

## LEGAL STANDARD

A certified class action may only be settled with court approval. *See* Fed. R. Civ. P. 23(e). "Approval of a settlement is a two-step process. Courts first determine whether a proposed class action settlement deserves preliminary approval including conditional class certification and then, after notice is given to class members, whether final approval is warranted." *Carvalho v. HP, Inc.*, 2025 WL 588674, at *2 (N.D. Cal. Feb. 24, 2025) (cleaned up). Review of a district court's approval of a settlement is "extremely limited." *Briseno v. Henderson,* 998 F.3d 1014, 1022 (9th Cir. 2021). The appellate court "will rarely overturn an approval of a" compromised settlement "unless the terms of the agreement contain convincing indications that…self-interest rather than the class's interest in fact influenced the outcome of the negotiations." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

"[T]here is an overriding public interest in settling and quieting litigation…particularly…in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). When the parties settle before class certification, the district court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

## ARGUMENT

### I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Following a Final Fairness hearing, the Court will likely find this matter satisfies each of Rule 23's requirements.

#### A. Rule 23(a)'s requirements are met

##### 1. Numerosity

A class can be sufficiently numerous when it includes as few as 40 members and when


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

general knowledge and common sense indicate that the class is large, the numerosity requirement is satisfied. *De Coster v. Amazon.com, Inc.*, 2025 WL 2836824, at *5 (W.D. Wash. Aug. 6, 2025). Here, the class consists of millions of Amazon customers who initiated a return but were incorrectly denied a refund. Numerosity is easily satisfied.

**2. Commonality**

To be common, the questions must be of "such a nature that [they are] capable of class-wide resolution," such that determination of their "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Plaintiffs 'need not show…that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Pacito v. Trump*, 2025 WL 2418524, at *2 (W.D. Wash. July 30, 2025) (*quoting Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014)).

Here, all Settlement Class Members' claims share numerous common questions of law and fact that go to the central issue of liability and damages. The common issues include, for example, whether Amazon failed to issue Settlement Class Members refunds; the interpretation and scope of Amazon's policies governing returns and refunds; the nature of the contract between the parties; Amazon's obligations regarding returns and refunds; Settlement Class Members' obligations regarding returns and refunds; Amazon's liability under Washington statutory and common law; and the reasons why Amazon failed to provide certain refunds. The Settlement Class satisfies commonality.

**3. Typicality**

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201-02 (9th Cir. 2024). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1202. Similarly,


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

differences that may exist in the amount of injury suffered by each class member do not render plaintiffs' claims atypical. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

In this case, all ten Plaintiffs have experienced injuries that are typical to the others and to those of the Settlement Class generally. Plaintiffs allege they purchased items from Amazon, initiated returns with Amazon, dropped off the items with Amazon's designated returns carriers; received notification that their return had been completed, and were denied refunds from Amazon. There are no material factual differences among Plaintiffs' allegations and the injuries experienced by the Settlement Class. Plaintiffs' interests are therefore coextensive and typical.

**4. Adequacy**

"The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Allison*, 87 F.4th at 1000. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Id.* at 1002.

Plaintiffs and Interim Class Counsel have adequately represented the Settlement Class throughout this Action. *See generally* Schapiro & Zigler Decl.; Phillips Decl. ¶¶10, 20-22, 24. When the Court appointed counsel, it explained that it had "no concern about whether [the undersigned] would devote the necessary resources to pursue the case to the fullest extent possible" because they "have extensive experience litigating consumer class action cases with great success, including against Amazon." Dkt. 56 at 5. The Court also noted that the undersigned had "done an exceedingly thorough job working up the case," demonstrating "they are the most knowledgeable about the policies and practices at issue and best prepared to advance the litigation." *Id.*

The Court's findings have been borne out. This Settlement could not have been possible without the significant investment and months of investigation and coordination between Plaintiffs and their counsel leading up to litigation. Schapiro & Zigler Decl. ¶¶5-15. And it would not have


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

been possible without counsel's diligent prosecution of the interests of the class. *Id.* ¶¶16-93; Phillips Decl. ¶¶10, 20-22, 24.

For their part, Plaintiffs have no antagonistic interests to other class members, their claims are typical of Settlement Class Members' claims, and they share an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Plaintiffs have worked closely with Interim Class Counsel throughout the pendency of this Action, investing significant time and resources to respond to discovery and help counsel investigate their claims and prepare for litigation. *See, e.g.*, Schapiro & Zigler Decl. ¶¶11, 14, 76, 79.

At all times, Plaintiffs and their counsel have worked diligently to advance the interests of the Settlement Class and will continue to do so through the final settlement approval and distribution process.

### B. <u>Certification under Rule 23(b)(3) is appropriate</u>

Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. <u>Predominance</u>

The settlement class satisfies Rule 23(b)(3) because common questions predominate over questions affecting individual class members. The predominance inquiry asks whether Rule 23(a)(2)'s common questions "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. Rule 23(b)(3) does not require that all elements of a claim be susceptible to class-wide proof; rather, it requires only that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013).

Assessing the predominance of common questions begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As discussed above, any factual differences affecting individual class members are materially insignificant in relation to the predominant common questions. The core issues concerning liability and damages are common to all Settlement Class Members. For example, Amazon's liability under its policies and practices and under any contracts between the parties all turn on the same legal principles and evidence. Thus, predominance is easily satisfied here. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006). On the other hand, if, for example, Settlement Class Members brought their claims individually, those proceedings would be inherently duplicative and wasteful. Under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about individual issues, if any, creating trial inefficiencies. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (individual questions "primarily implicat[ing] trial management issues, [are] not consider[ed] when conducting a predominance analysis for a settlement class.").

**2. <u>Superiority</u>**

For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial."). Class treatment is superior to other methods for the resolution of this case, including from a judicial efficiency perspective and given the relatively small amounts of alleged damages for each individual consumer. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages arising from retail transactions is not a realistic or efficient alternative. Indeed, litigating every class member's claims separately would result in a waste of judicial and party resources, given that the vast majority of evidence of liability would be identical. *See Hanlon*, 150 F.3d at 1023. A class action settlement avoids the duplication of efforts and inconsistent rulings. By efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement.

The Court should preliminarily certify the Settlement Class as this Action satisfies each of

the Rule 23(a) and (b)(3) requirements.

### 3. Interim Class Counsel should be appointed as Class Counsel

Rule 23(g) separately asks this Court to appoint class counsel to represent the settlement class. At the outset of this action, the Court appointed the undersigned Interim Co-Lead Counsel for Plaintiffs after a competitive application process. Given Interim Co-Lead Counsel's work in this action, their collective expertise and experience in handling similar actions, and the resources they have committed to representing the class, the Court should make its decision permanent. The undersigned should be appointed as Class Counsel for the proposed settlement class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## C. The Settlement Is Facially Fair, Reasonable, and Adequate.

At the preliminary phase of settlement, the Court need only find that "the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Courts examine "the settlement taken as a whole, rather than the individual component parts…for overall fairness." *Hanlon*, 150 F.3d at 1026. As shown below, the Settlement falls well within the range of possible approval because it is facially fair, reasonable and adequate.

Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Ninth Circuit uses the following factors to guide preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. As shown below, the Settlement falls well within the range of possible approval because it squarely satisfies these requirements, and the Court will likely be able to approve the Settlement as fair, reasonable and adequate.

**1. <u>The relief provided to the Settlement Class is far more than "adequate" (Rule 23(e)(2)(C))</u>**

The relief provided to the class is more than "adequate," considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

(a) <u>Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal weigh in favor of the Settlement</u>

The proposed settlement provides consideration valued at more than $1 billion to the class. This is real monetary relief flowing directly to the class, whose members are likely to recover the full amount of any incorrectly denied refund or retrocharge—plus interest. Moreover, the settlement provides for substantive changes to Amazon's practices designed to prevent the recurrence of the issues and practices that caused these widespread problems.

In addition to the more than $600 million that is already or will shortly be in class members' hands, Holton Decl. ¶66, the settlement creates an additional $309.5 million non-reversionary common fund for the benefit of Settlement Class Members. The consideration offered here is astonishing given the substantial risks and delay of ongoing litigation in this case. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023).

Although Plaintiffs' claims survived Amazon's dismissal motion, there are risks to protracted litigation, and Amazon denies any wrongdoing and would present a multi-pronged defense. Plaintiffs and Interim Class Counsel believe they would prevail at trial, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiff's claims successfully


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

through class certification, extensive discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Counsel for the Plaintiffs have carefully considered and evaluated the relevant legal authorities and evidence to support the claims and defenses, the likelihood of prevailing on the claims or defenses, the risk, expense and duration of continued litigation and the likely appeals, and have concluded that the settlement is a favorable resolution of the Litigation for all parties. The Settlement Agreement removes the potential for continuing trial and appellate proceedings on the merits, which may take several years to complete and be extremely costly and the outcome of which is uncertain.

(b) <u>Rule 23(e)(2)(C)(ii): The distribution plan is straightforward</u>

The Settlement divides affected Amazon customers into two groups: Settlement Subclass A and Settlement Subclass B. Settlement Subclass A contains customers who experienced failed refunds or retrocharges due to computer and payment processing errors and those where Amazon's records reflect that the return did not complete Amazon's review process, for example, because said return was potentially lost in transit. Settlement Subclass B contains all other customers who experienced failed refunds or retrocharges. These transactions include the mishandling and missorting situations where Amazon made errors in grading that resulted in a customer receiving less than they would have otherwise received but the records available to Amazon do not establish that it is more likely than not Amazon incorrectly processed the return.

The claims process should "facilitate[] filing legitimate claims," and "deter or defeat unjustified claims," but not be "unduly demanding." Fed. R. Civ. P. 23 (e)(2) 2018 advisory committee notes. Members of Settlement Subclass A will receive a direct payment of the amount of unpaid refund Amazon's records indicate they are owed and an additionally a proportional amount of the remainder of the fund representing a payment of interest. These payments to Settlement Subclass A will be based solely on Amazon's records and will not require class members to file claims.

Potential Settlement Subclass B members will have to offer some proof of class membership as Amazon's records alone do not establish an unpaid refund. However, Amazon's available records will be used to facilitate the claims process allowing class members to submit claims online without


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

requiring unnecessary data entry.

(c) Rule 23(e)(2)(C)(iii): Counsel will seek reasonable attorneys' fees.

In evaluating the adequacy of the proposed settlements, the Court must also take into account the terms of any proposed attorneys' fees, including the timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement does not contemplate a specific award of attorneys' fees. Instead, it caps Plaintiffs' request at $100 million and provides that any Court-awarded fees will be paid from the Settlement Fund. Because any fee award will be subject to this Court's approval, it will necessarily be reasonable.

(d) Rule 23(e)(2)(C)(iv): Other related agreements.

Rule 23(e)(3) requires parties to identify "any agreement made in connection with" the settlement. This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e) 2003 advisory committee notes. There are no other agreements that the parties have made in connection with the Settlement.

**2. The Settlement Agreement Treats Settlement Class Members Equitably (Rule 23(e)(2)(D))**

The proposed Settlement Agreement does not contemplate any unwarranted preferential treatment of class representatives or segments of the class. *See* Fed. R. Civ. P. 23(e)(2)(D). A settlement's apportionment of relief among class members should take "appropriate account of differences among their claims." Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes. *See also*, *Radcliffe v. Hernandez*, 794 F. App'x 605, 607-08 (9th Cir. 2019) (class members were treated equitably when "Plaintiffs sought to provide additional relief to plaintiffs who alleged more concrete material harms than other[s]"); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 273 (3d Cir. 2009) (approving settlement "allocated in such a way that policyholders who likely incurred the most damage are entitled to a larger proportion of the recovery than those whose injuries were less severe").

Under the terms of the Settlement Agreement, recovery to individual class members is tied to the value of their unpaid refunds. Members of both subclasses are expected to receive a full refund


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

plus interest. The only distinction between the two classes is the amount of proof necessary to demonstrate membership in the class which is necessary due to the records available. As courts have repeatedly held, this is a reasonable and fair way to compensate classes. *Four in One Co. v. S.K. Foods, L.P.*, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

The proposed plan of allocation is thus "fair, adequate, and reasonable" and merits approval.

### 3. <u>The Settlement Is The Product Of Arms'-Length Negotiations</u>

Courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The parties engaged in months of arm's-length negotiations, wrestling back and forth on the contours of this Settlement. Phillips Decl. ¶3, 15-24. The parties often relied on Judge Phillips, an experienced mediator, to navigate past impasses and stalls in the negotiations. *Id.*; S*atchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Years of hard-fought litigation preceded the negotiations, and the parties continued to brief adversarial discovery motions while Judge Phillips assisted with negotiations. *See generally* Schapiro & Zigler Decl. Accordingly, the settlement discussions were at all times adversarial, producing a result that the parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Judge Phillips' involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See Four In One Co. v. S.K. Foods, L.P.*, 2014 WL 28808, at *6 (E.D. Cal. Jan. 2, 2014) (preliminarily approving settlement reached as a result of mediation before Judge Phillips); *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (agreeing that "the mediation process [with Judge Phillips] must have assisted the parties to gain a better understanding of their respective strengths and weaknesses to litigate this case" and finding "these factors weigh in favor of settlement"); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (granting final approval because "[d]espite reaching settlement relatively early in the life span of this case," mediation before Judge Phillips "show[s] that [plaintiffs] decision to settle was made on


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

the basis of a thorough understanding of the relevant facts and law"); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431, at *1 (C.D. Cal. Sept. 17, 2024) (similar).

This process for developing the Settlement Agreement bears all the hallmarks of arms-length negotiation. *See In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302 at *4 (N.D. Cal. Dec. 16, 2022) (granting preliminary approval where the "parties reached the settlement with the assistance of an experienced mediator after two-and-a-half years of litigation, extensive discovery and motion practice, and months of negotiations" and noting the absence of any "subtle signs of collusion" such as reversions or clear-sailing agreements).

#### 4. <u>Plaintiffs And Interim Class Counsel Have Adequately Represented The Class</u>

As discussed at length above, Plaintiffs and Interim Class Counsel have adequately represented the Settlement Class throughout this Action. This Settlement Agreement is a product of their diligent representation. Interim Class Counsel have worked tirelessly to achieve this result for the Settlement Class and Plaintiffs have no antagonistic interests to other Settlement Class Members. At all times, Plaintiffs and their counsel have worked diligently to advance the interests of the Settlement Class and will continue to do so through the final settlement approval and distribution process.

## II. <u>THE COURT SHOULD APPROVE THE NOTICE PLAN.</u>

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a Rule 23(b)(3) class, the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice is satisfactory if it generally describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).

Plaintiffs propose an efficient and straightforward program designed by experienced Settlement Administrator, Angeion Group. Class membership will be determined by data that


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

Amazon will provide to the Settlement Administrator. The Settlement Administrator has used its experience and expertise to develop a multilingual Email and Long Form Notice of this Settlement. Plaintiffs submit for approval proposed notices to class members (*see* Ex. A, Exs. 1-6). The proposed notices are written in plain and easy-to-understand language. They set forth a clear schedule of deadlines and provide class members with at least 60 days to opt out of or object to the Settlement. And they also inform class members that Interim Class Counsel will request attorneys' fees.

Within 30 days of the Court's Preliminary Approval Order, Interim Class Counsel will cause the Settlement Administrator to provide email notices to the last known email for each Settlement Class Member's Amazon account. If the email notice is returned undelivered, the Settlement Administrator will send the Email Notice to any alternate email associated with the Amazon account in question. And the Settlement Administrator will provide three reminder emails. Because class membership and class contact info can be determined from Amazon's data, this notice plan is calculated to reach a broad section of the class.

The Settlement Administrator will also create and maintain a dedicated Settlement Website, which will contain: (i) instructions on how to obtain payments from the Settlement Fund; (ii) instructions on how to contact the Settlement Administrator for assistance; (iii) the Long Form Notice; (iv) this Settlement Agreement; (v) any orders issued in this Action regarding the Settlement; (vi) Plaintiffs' motion for attorneys' fees, costs and service award(s); (vii) procedural information regarding the status of the Court-approval process; and (viii) any other information the Parties determine is relevant to the Settlement. The Settlement Website shall provide Settlement Class Members a mechanism by which Claimants can submit Claims electronically.

Finally, on the date of notice of this Settlement, and again 30 days later, the Settlement Administrator will issue the Press Release publicizing the existence of the Settlement Website.

The Settlement Administrator will maintain a dedicated toll-free telephone number for Class members to call.

Between each of these notice options, the notice plan provides sufficient detail and is reasonably likely to reach the vast majority of Settlement Class Members. Plaintiffs request that the Court authorize Interim Class Counsel to spend up to $5,000,000 of the Settlement Fund to retain


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

the Settlement Administrator and for the purpose of effectuating notice and claims administration consistent with the Settlement Agreement and Rule 23.

"Although first class mail may often be the preferred primary method of giving notice, courts and counsel have begun to employ new technology to make notice more effective. Because there is no reason to expect that technological change will cease, when selecting a method or methods of giving notice courts should consider the capacity and limits of current technology, including class members' likely access to such technology." Fed. R. Civ. P. 23 (c)(2) 2018 advisory committee notes. The class in this case consists of Amazon customers – online shoppers. Email notice is the best notice practicable to this class.

### A. The Court Should Approve The Proposed Schedule

Plaintiffs propose the following schedule for class notice and final approval:

| **Event** | **Proposed Deadline For Compliance** |
|---|---|
| Preliminary Approval Hearing | TBD, based on the Court's convenience |
| Preliminary Approval | Date of the Court's decision on preliminary approval |
| Settlement Notice | Within 30 days of Preliminary Approval |
| Second Press Release | 30 days after Settlement Notice |
| Opt-Out Deadline | 60 days after Settlement Notice |
| Objection Deadline | 60 days after Settlement Notice |
| Claims Deadline | 60 days after Settlement Notice |
| Deadline For Filing Papers In Support Of The Settlement | 90 days after Settlement Notice |
| Final Fairness Hearing | 120 days after Settlement Notice, or whatever date the Court establishes |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement Agreement.


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

Dated: January 23, 2026

Respectfully submitted,

By: */s/ Nolan K. Anderson*

Alicia Cobb, WSBA #48685
Matthew Hosen, WSBA #54855
Nolan K. Anderson, WSBA #59691

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel.: (206) 905-7075
Fax: (206) 905-7100
aliciacobb@quinnemanuel.com
matthosen@quinnemanuel.com
nolananderson@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel.: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Alyssa G. Olson (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3621
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
alyolson@quinnemanuel.com

By: */s/ Aaron M. Zigler*
Aaron M. Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street, Suite 333
Chicago, IL 60661
Tel.: (312) 673-8427
aaron@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Interim Class Counsel*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 5,998 words, in compliance with the Local Civil Rules and the Court's January 21, 2026 Order permitting an overlength brief.

DATED: January 23, 2026

*/s/ Nolan K. Anderson*
Nolan K. Anderson, WSBA #59691


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED: January 23, 2026

*/s/ Nolan K. Anderson*
Nolan K. Anderson, WSBA #59691



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000