THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON RETURN POLICY LITIGATION | No. 2:23-cv-1372-JNW<br><br>**DECLARATION OF LAYN R. PHILLIPS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE** |

I, Layn R. Phillips, declare pursuant to 28 U.S.C. § 1746, as follows:

1. I submit this declaration at the request of the Settling Parties[1] in support of Plaintiffs' Motion For Preliminary Approval Of Settlement And Issuance Of Notice (the "Motion") in the above-captioned consumer class action (the "Action"). The Settling Parties reached the Settlement with my assistance as mediator.

2. I can assure the Court that during all of the negotiations that I participated in with the Settling Parties, there was nothing collusive and the negotiations were conducted at arm's-length and in good faith.

3. As discussed below, the Settlement is the product of hard-fought negotiations, facilitated in lengthy sessions over a period of six months in which I participated personally.

[1] The Settling Parties are Plaintiffs Laura Abbott, Jill Cappel, Michelle Estep, Maria Khangi, Joshua Soto Lopez, Melissa Urbancic, Heriberto Valiente, Katherine Vojtko, Vince Vojtko, and Dianne Walton-Williams ("Settling Plaintiffs"), and Defendant Amazon.com, Inc. ("Amazon").



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WA 98101
TEL: (206) 905-7000

4. Prior to beginning any multi-party mediation, I routinely announce to the mediating parties that my intent is to attempt to settle the case globally and, if unsuccessful, to try to settle as much of the case as possible.

**MY BACKGROUND**

5. I am the founder and lead mediator at Phillips ADR Enterprises, P.C. ("PADRE"), formed in November 2014. From 1991 until 2014, I was a partner in the law firm of Irell & Manella LLP, where I specialized in complex civil litigation, internal investigations, and alternative dispute resolution, primarily mediations.

6. Prior to joining Irell & Manella LLP, I served as a United States District Judge in the Western District of Oklahoma from 1987 to 1991. I also sat for the United States Court of Appeals for the Tenth Circuit by designation on several occasions.

7. I have over thirty years of dispute resolution experience, having conducted thousands of mediations and settlement conferences in all types of litigation, including complex consumer class actions involving Fortune 500 and other publicly traded companies. I also have mediated hundreds of disputes referred by private parties and courts and I have been appointed a Special Master by various federal courts in complex civil proceedings. In addition, I am a Fellow in the American College of Trial Lawyers, and I have been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.

8. During the last 15 years, I have annually settled several billion dollars in cases. I am frequently asked by litigants and their attorneys in complex civil cases to serve as a mediator, including class action litigation like that at issue in this case. In recent years, I have successfully mediated dozens of class action cases pending in various courts across the United States, including many with the various counsel involved here.

9. Among the significant complex matters I have mediated are the NFL concussion cases, the Michigan State and USC sexual abuse cases, the Purdue Opioid bankruptcy, the Boeing air crash derivative litigation, the United Healthcare derivative litigation, the Norfolk Southern Ohio trainwreck litigation, multiple Wells Fargo derivative and class actions, the FirstEnergy

derivative litigation, the Fox News and News Corp. derivative litigation, the Facebook Cambridge Analytica derivative litigation, and numerous other class action and derivative actions.

10. I have set forth my background as a mediator to provide context for the comments that follow, and to demonstrate that my perspective on the settlement of this Action is rooted in significant experience in the resolution of complex litigation. As described below, this Action presented complicated legal, factual, and practical issues. The parties were represented during the mediation process through zealous and able counsel, who negotiated aggressively and at arm's-length. I am strongly of the view that the settlement of this Action reached at the end of the mediation process represents a reasonable and practical resolution of this litigation. The Court, of course, will make determinations as to the settlement under applicable legal standards. From my involvement as the mediator for the case, I observed firsthand all sides of the case were represented by sophisticated and capable counsel who displayed the highest level of professionalism. The negotiation process was *bona fide* and, at times, contentious, as counsel for each side vigorously advocated their clients' positions, including their clients' potential risks.

**MY ROLE IN NEGOTIATING THE SETTLEMENT**

11. I was retained in May 2025 by the Settling Parties here to mediate private settlement discussions in this Action.

12. Working with me on the mediation was my longtime colleagues at PADRE, Michelle Yoshida and Charles Stevens, who are themselves accomplished mediators with collectively decades of experience mediating matters like this one.

13. The Settling Parties executed a confidentiality agreement stating that the mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence and any applicable state law equivalents, protecting disclosures made during such process from later discovery, dissemination, publication and/or use in evidence (the "Mediation Confidentiality Agreement"). The parties to the mediation further agreed that the Mediation Confidentiality Agreement extends to all statements made during the course of the mediation or any materials generated for the purpose of the mediation. All negotiations and discussions took place pursuant to the Mediation Confidentiality Agreement that governs all mediations with me.

All parties and their counsel signed and are bound by those terms.

14. While I cannot disclose the contents of the mediation negotiations, the Settling Parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of the preliminary approval motion. In providing the limited background here and my own views of the Settlement, I do not waive any of the protections in the Mediation Confidentiality Agreement over the substance of the parties' negotiations, discussions, and submissions.

15. On May 27, 2025, the Settling Parties held the first in-person mediation session in Newport Beach, California, prior to which they submitted confidential written mediation statements and exchanged limited information. That mediation session did not result in an agreement to settle the Action.

16. Over the following six months, the parties continued mediating with my assistance. Ms. Yoshida, Mr. Stevens and I held multiple Zoom sessions and also held numerous one-on-one conversations with the parties by phone or email.

17. Through this lengthy mediation process, I developed a comprehensive understanding of the circumstances relevant to this Action, as well as an understanding of the relevant (and in some respects, unique) aspects of Washington law applicable here. I also developed a full understanding of each Settling Party's position—including its strengths and weaknesses—regarding Settling Plaintiffs' claims, as well as the monetary and injunctive relief they sought.

18. I developed this comprehensive and thorough understanding through, among other things, my careful review of the pleadings, the procedural history, the detailed mediation briefs and related submissions, the Settling Parties' settlement demands, and the proposed injunctive relief, as well as through the lengthy in-person and video sessions with the various parties and their counsel, and through emails and phone calls with the individual parties.

19. All negotiations throughout the mediation process took place on a hard-fought, fully arm's-length basis.

20. Counsel made vigorous and substantive presentations regarding their clients'

positions on key contested issues and damages, and their adversaries responded in kind. The parties negotiated aggressively, effectively, and at arm's-length. I believe the parties' advocacy and ultimate compromise of the disputed issues were the result of reasonable, arm's-length bargaining and represent reasonable settlement terms considering the strengths and weaknesses of the parties' factual and legal positions.

**THE SETTLEMENT WAS NEGOTIATED IN GOOD FAITH AND AT ARM'S LENGTH AND IS AN EXCELLENT RESULT FOR THE CLASS**

21. As discussed above, I can attest from firsthand knowledge that the Settling Parties and their counsel negotiated the proposed settlement in good faith, with no collusion and at arm's-length. Without waiving my mediation privilege, I can reveal that, throughout the negotiation process, the Settling Parties held materially different views about the merits of, defenses to, and valuation of the claims asserted in the Action. Indeed, the wide divergences in the parties' views is a large reason why it took many months to reach a settlement. I believe that without my, Mr. Stevens' and Ms. Yoshida's substantial involvement, a settlement would not have been reached.

22. In light of the sophisticated factual, legal, and damages issues involved and the significant time to litigate and negotiate this resolution, I view the total settlement in large part as a testament to the abilities and efforts of a highly talented and committed group of counsel and dedicated principals. I can state that each settlement term represents a heavily negotiated and arm's-length compromise of disputed claims among experienced and able counsel.

23. The Court, of course, will make determinations as to the "fairness" of the settlement under applicable legal standards, but based on my experience as a mediator, it is my professional opinion that the proposed settlement is fair, reasonable, and adequate. There is substantial monetary consideration flowing to the Class, with due recognition to the complexity of the facts and legal contentions at issue, and a real threat of years of litigation and appeals absent a resolution. I believe the settlement agreement was the highest number that the Class could have achieved at the time of resolution.



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WA 98101
TEL: (206) 905-7000

**CONCLUSION**

24. Based on my first-hand observations, I represent to the Court that the proposed settlement was the product of hard-fought, arm's-length and non-collusive negotiations by skilled, experienced, and effective counsel for all parties. The result of this effort, in my view, is an excellent outcome, and one that will benefit the class for years to come. Therefore, based on my knowledge of this Action, all the materials provided to me, the efforts of counsel, the intensity of the negotiations, the litigation risks, and the benefits reached in the proposed settlement, I believe that this is a fair, reasonable and adequate settlement of all claims, and I respectfully recommend that it be approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of January, 2026, at Columbus, Ohio.

LAYN R. PHILLIPS
U.S. District Judge (Fmr.)
Phillips ADR Enterprises, P.C.
("PADRE")

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED January 23, 2026.

*/s/ Nolan Anderson*
Nolan Anderson, WSBA #59691


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WA 98101
TEL: (206) 905-7000