THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON RETURN POLICY
LITIGATION

No. 2:23-CV-1372-JNW

**PLAINTIFFS' OPPOSITION TO
WEILER'S MOTION TO INTERVENE
AND TO DENY MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT**

NOTING DATE: June 10, 2026

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

      A.     Intervention Is Improper and Unnecessary Under Established Precedent. ................ 2

      B.     Weiler's Premature Objections to the Settlement Are Meritless ............................... 5

           1.     Weiler's Claims Are Well Within the Proper Scope of Release .................... 5

           2.     The Settlement Consideration Is Real and Substantial. .................................. 5

           3.     Contrary to Weiler's Assertions, Subclass B Is Represented. ....................... 7

           4.     There Are No Conflicts Between Settlement Class Members. ...................... 8

           5.     Notice Satisfies Due Process, and the Resolved Risk Confirms the Settlement's Value. ..................................................................................... 11

           6.     The Fee Is a Capped Request to Be Tested Against Actual Benefit. ........... 12

CONCLUSION .................................................................................................................. 12

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ...............................................................................................2, 3

*In re Amazon Serv. Fee Litig.*,
   2025 WL 2268252 (9th Cir. Aug. 8, 2025) ................................................................................10

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) .....................................................................................................11

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .....................................................................................................4

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) .....................................................................................................6

*Brown v. Accellion, Inc.*,
   2023 WL 1928210 (N.D. Cal. Feb. 10, 2023) ...........................................................................3, 4

*Brown v. Google LLC*,
   172 F.4th 1128 (9th Cir. 2026) ...............................................................................................3, 4

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .....................................................................................................5

*Chi v. USC*,
   2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ...............................................................................3

*Cody v. SoulCycle, Inc.*,
   2017 WL 8811114 (C.D. Cal. Sept. 20, 2017) ..........................................................................1, 2

*Connell v. Heartland Express, Inc.*,
   2021 WL 4295754 (C.D. Cal. Apr. 30, 2021) ...............................................................................3

*In re Domestic Airline Travel Antitrust Litig.*,
   378 F. Supp. 3d 10 (D.D.C. 2019) ..............................................................................................9

*Evans v. Wal-Mart Stores, Inc.*,
   2022 WL 18277053 (C.D. Cal. Mar. 18, 2022)............................................................................3

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) (en banc).....................................................................................11

*Kang v. Fyson*,
   2022 WL 6943174 (9th Cir. Oct. 12, 2022)..............................................................................2, 3

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                        ii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

*In re CPK Data Breach Litig.*,
    129 F.4th 667 (9th Cir. 2025) ..................................................................................................12

*Lane v. Facebook, Inc.*,
    2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ............................................................................2

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..................................................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................................................11

*Storey v. Amazon.com, Inc.*,
    2026 WL 1470611 (9th Cir. May 26, 2026) ............................................................................10

*Tech Instrumentation, Inc. v. Eurton Elec. Co.*,
    No. 1:16-cv-02981, Dkt. 117 (D. Colo. May 24, 2022) ............................................................10

*In re Wawa*,
    141 F.4th 456 (3d Cir. 2025) ....................................................................................................6

*West v. Rheem Mfg. Co.*,
    2026 WL 1192136 (C.D. Cal. Apr. 30, 2026) ............................................................................4

## **Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................................4, 9

Fed. R. Civ. P. 24 .............................................................................................................................4

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW      iii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

**INTRODUCTION**

On February 2, 2026, ten days after Plaintiffs moved for preliminary approval of this proposed settlement[1], Weiler filed a complaint asserting the same claims for a subset of the covered transactions. *Weiler v. Amazon.com, Inc.*, No. 2:26-cv-00378-JNW (W.D. Wash., Feb. 2, 2026), Dkt. 1. On March 3, Weiler's counsel assured Plaintiffs' counsel she had no intention of disrupting the settlement. Zigler Decl. ¶¶3-6. On April 3, she agreed to stay her own case—before this same Court—pending the resolution of the settlement approval process here. *Weiler*, No. 2:26-cv-00378-JNW, Dkt. 22 at 1. But now she has moved to intervene to upset that settlement. Dkt. 183. Her motion is barred by Ninth Circuit precedent and should be denied.

Weiler's motion rests solely on her objections to the settlement. But these objections are premature and provide no basis for intervention. "The Ninth Circuit has held (as have various district courts) that [settlement] objections are properly addressed through the regular objection process during final settlement approval, not through intervention." *Cody v. SoulCycle, Inc.*, 2017 WL 8811114, at *2 (C.D. Cal. Sept. 20, 2017) (denying mandatory and permissive intervention). Weiler does not meet intervention's strict requirements, particularly at this late stage in the litigation. Her motion should be denied on this basis alone.

Weiler's criticisms also rest on misreadings of the record. She tells the Court that the parties "conducted limited discovery" and settled "very early." Dkt. 183-1 at 3, 11. But this case is over two-and-a-half years old, and Plaintiffs not only defeated Amazon's motion to dismiss, but also prevailed on several hard-fought motions to compel, obligating Amazon to produce key documents that led to the resolution of the lawsuit. Dkts. 112, 156. Weiler's speculation that Plaintiffs have not conducted discovery into fees and partial refunds is also incorrect. Contrary to Weiler's assertions, this is not an "early" settlement or one lacking effort on Plaintiffs' part.

Likewise, Weiler asserts without any support that there is "no class representative for Subclass B," Dkt. 183 ("Mot.") at 7; Dkt. 183-1 at 30. Weiler is again incorrect. Nine of the 10 Class Representatives alleged Subclass B transactions in the operative Complaint. Her "illusory

---

[1] Citations to "SA § __" are to the Settlement Agreement, Dkt. 171-5.

consideration" theory is equally unfounded. Mot. 7; Dkt. 183-1 at 29. The very article she cites to assert that Amazon supposedly "committed to return" $1.1 billion in fact describes a one-time accounting charge for historical unpaid returns *and tariff-driven inventory costs* unrelated to this lawsuit, not a commitment to pay anyone anything. Dkt. 183-1 at 3-5 & nn.1-2. Finally, her remaining objections—a supposed intra-class conflict and excessive fee—each depend on similar misreadings of the record.

That record reveals an extraordinary result for the class, reached by fully informed counsel and diligent class representatives after more than two years of hard-fought litigation and months of arm's-length mediation. The settlement readily clears the "likely to approve" standard applicable at this stage. It delivers more than $1.27 billion in value—over $600 million in refunds Amazon has paid, a $309.5 million non-reversionary common fund for additional payments (including interest on the previous payments), and court-enforceable practice changes worth $363 million. Every class member who is owed money should receive the full unpaid amount plus interest. This is real consideration and any attorneys' fees will be measured at final approval against what the class actually receives. Weiler's contrary objections are not only premature, they are wrong. The Court should deny the motion to intervene and grant preliminary approval.

<u>**ARGUMENT**</u>

**A.    Intervention Is Improper and Unnecessary Under Established Precedent.**

Weiler's motion to intervene fails for two independent reasons. First, "[t]he Ninth Circuit has held (as have various district courts) that [settlement] objections are properly addressed through the regular objection process during final settlement approval, not through intervention." *Cody*, 2017 WL 8811114, at *2. Second, motions to intervene after "years of ongoing litigation, on the eve of settlement," are untimely and prejudicial because they "threaten[] to…derail[] settlement talks." *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015); *see also Kang v. Fyson*, 2022 WL 6943174, at *3 (9th Cir. Oct. 12, 2022) (similar).

Courts regularly reject motions to intervene at the preliminary approval stage, both as a matter of law and discretion, because there is no "significantly protectable interest incumbent in an opportunity to object to preliminary approval as opposed to the right to object to final approval."

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                     2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

*Lane v. Facebook, Inc.*, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009). The Ninth Circuit and district courts within it have repeatedly held that intervention is "especially" inappropriate, as a matter of right or discretion, where a potential class member's "concerns could largely be addressed through the normal objection process." *Allen*, 787 F.3d at 1222; *accord Kang*, 2022 WL 6943174, at *3 ("the better course for class members who oppose a settlement is to object to the settlement rather than seeking to intervene"); *Brown v. Accellion, Inc.*, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (collecting cases); *Connell v. Heartland Express, Inc.*, 2021 WL 4295754, at *3 (C.D. Cal. Apr. 30, 2021) (denying mandatory and discretionary intervention); *Evans v. Wal-Mart Stores, Inc.*, 2022 WL 18277053, at *4 (C.D. Cal. Mar. 18, 2022) (same); *Chi v. USC*, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019). Weiler's two-paragraph analysis, Mot. 4-5, offers no reason why the Court should disregard this bulwark of controlling precedent.

Weiler's motion is independently barred because it is untimely. The parties litigated this case for more than two-and-a-half-years, reaching a settlement in principle on October 20, 2025, Dkt. 157. The settlement became public when Plaintiffs moved for preliminary approval on January 23, 2026, Dkt. 171, and the filing generated substantial media coverage. Weisbrot Decl. ¶¶8-9. Weiler has known of this litigation at least since then: her February 2, 2026 complaint copies the same seven causes of action that Plaintiffs developed and successfully defended in this case. *Compare* Dkt. 183-2 ("*Weiler* Compl.") ¶¶69-123, *with* Dkt. 116 ¶¶237-304; *see also* Dkt. 179. And, shortly thereafter, Amazon and Plaintiffs' counsel told Weiler her claims are covered by the Settlement, Dkt. 183-19 (Amazon); Zigler Decl. ¶¶3-6 (Plaintiffs). She nonetheless waited almost four months after she filed her case, and mere days before the scheduled preliminary approval hearing, to seek intervention. The Ninth Circuit rejects this type of delay as untimely. *Allen*, 787 F.3d at 1221 (affirming denial of intervention even where a group of "[o]bjectors sought to intervene as of right and to intervene permissively" immediately "[u]pon learning details of the prospective [class] settlement"). Indeed, just weeks ago the Ninth Circuit affirmed denial of an untimely intervention attempt "just before the final class settlement approval hearing," holding that a late intervenor "will likely unravel the settlement agreement at the midnight hour and thus prejudice the named plaintiffs." *Brown v. Google LLC*, 172 F.4th 1128, 1131 (9th Cir. 2026); *accord Allen*, 787 F.3d at

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                    3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1221. Weiler's unexplained delay is the paradigm of untimeliness. Accordingly, she is not entitled to intervention as a matter of right or by permission.

Weiler hardly addresses the Rule 24 intervention factors, but they clearly weigh against intervention here. To intervene as of right: "(1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); Fed. R. Civ. P. 24(a)(2). A party seeking to intervene must meet each requirement. Weiler cannot.

Beyond timeliness, any interest Weiler holds as a putative class member is also fully protected by her ability to object to or opt out of the proposed settlement. "Courts in this circuit have consistently held that the ability to file objections and opt out of a class settlement, as dictated by Rule 23, are sufficient to protect the interests of class members in a typical case seeking damages." *West v. Rheem Mfg. Co.*, 2026 WL 1192136, at *2 (C.D. Cal. Apr. 30, 2026) (citation omitted). In addition, Weiler's interests are fully and adequately represented by existing Plaintiffs. Despite Weiler's contentions, 9 of the 10 proposed Class Representatives allege Subclass B transactions and they have conducted extensive discovery regarding the merits of Subclass B transactions. Because Weiler cannot satisfy Federal Rule of Civil Procedure 24(a)(2), she cannot intervene as of right.

Permissive intervention is likewise unwarranted. While the Court in its discretion may permit intervention if the motion is timely and the party "has a claim or defense that shares with the main action a common question of law or fact," it may deny intervention if it "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). "In the context of permissive intervention…the Court must analyze the timeliness element 'more strictly than [it does] with intervention as of right.'" *Accellion*, 2023 WL 1928210, at *3 (citation omitted).

As discussed above, the timing of Weiler's intervention motion alone warrants denial. So does the obvious disruption and prejudice that intervention would impose on the parties, who spent years in hard-fought litigation and months in extensive negotiations before reaching a fair

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE & DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW    4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

settlement. *See Google*, 172 F.4th 1131. Weiler thus cannot meet the standard for permissive intervention. Rather, she can raise any concerns about the settlement through the objection process.

## B.    Weiler's Premature Objections to the Settlement Are Meritless.

The Court should not entertain Weiler's attempt to have her objections to the Settlement heard outside the well-established process without the benefit of a full record. Regardless, even this record shows Weiler's objections are misguided.

### 1.    Weiler's Claims Are Well Within the Proper Scope of Release.

Weiler's claim that the proposed release violates the identical-factual-predicate rule (Mot. 6-7; Dkt. 183-1 at 26-29) is doubly wrong.

*First*, her claim arises from the identical factual predicate. From its first paragraph, this lawsuit has challenged Amazon's practice of "charging consumers for returned items in violation of its own return and refund policies' terms," and it pleads partial refunds. Dkt. 1 ¶1. A restocking fee is a denied refund by another name. Weiler pleads the exact same seven causes of action developed here, *Weiler* Compl. ¶¶69-123, and Amazon has confirmed her claims are covered, Dkt. 183-19. The release reaches her claims because the predicate is identical—and as a covered class member, her remedy is to object or opt-out. Weiler recognizes she is part of the Settlement Class, which is why she has agreed to stay her putative class action pending the resolution of this settlement. *Weiler*, No. 2:26-cv-00378-JNW, Dkts. 17, 22.

*Second*, if Weiler wishes to test whether the identical-factual-predicate rule applies, she is free to opt out and pursue that argument once her pending litigation resumes. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1124 (9th Cir. 2020).

### 2.    The Settlement Consideration Is Real and Substantial.

Weiler attempts to dismiss the settlement's consideration as "illusory" because Amazon supposedly "publicly committed to returning $1.1 billion dollars in refunds before the settlement." Mot. 7; Dkt. 183-1 at 3-4, 29, 37 n.9. Weiler's only basis for this assertion is an article by *USA Today* published in May 2025. Dkt. 183-1 at 3 nn.1-2. Weiler incorrectly asserts this same $1.1

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                    5                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

billion is equal to the amounts at issue in the Settlement. *Id.* at 1, 3, 30, 37. That is incorrect in multiple respects.

First, the article itself states that the $1.1 billion accounting charge Amazon announced in May 2025 included different goals, such as accounting for the "cost of stockpiling inventory in anticipation of tariffs," among refund and other issues.[2]

Second, Weiler is miscalculating the amounts at issue in this Settlement. Writ large, the Settlement concerns approximately $600 million in direct refunds by Amazon, $309.5 million paid by Amazon into a settlement fund, and the valuable injunctive relief that Amazon is providing, which Plaintiffs' expert estimates as worth approximately $364 million. These figures add up to $1.27 billion, which is the number Plaintiffs referenced in their motion for preliminary approval.

Third, whatever amount Amazon may have booked for accounting purposes, only the Settlement makes the payments judicially supervised and enforceable: under Section 4.2.1, Amazon must complete the refund process and cannot claw the payments back. A quarterly write-down taken based on Amazon's read of applicable accounting standards is the antithesis of the "court- or settlement-imposed obligation" that separates real consideration from a defendant's unenforceable say-so. *Briseño v. Henderson*, 998 F.3d 1014, 1028 (9th Cir. 2021) (citation omitted).

The Third Circuit's *In re Wawa* decision is informative. There, the court rejected the argument that a defendant's pre-settlement measures would have happened "even without the settlement." 141 F.4th 456, 475 (3d Cir. 2025). The Court explained that the settlement's commitment to the relief was "attributable to the settlement" and the court "cannot discount the likelihood that the [actions] were spurred, at least in part, by litigation concerns," noting that the actions "could well have been merely temporary" without the settlement's injunction since unilateral, voluntary actions are "pale shadows of an order by the Court" guaranteeing relief. *Id.* Here the settlement's similar completion obligation and no-clawback bar, SA § 4.2.1, make the refunds enforceable.

---

[2] Mike Snider, *'Wild!': Amazon is refunding some customers for purchases made as far back as 2018*, USA Today (May 21, 2025), https://www.usatoday.com/story/money/2025/05/21/amazon-refunds-purchases/83776603007/

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE & DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW

6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

### 3.    Contrary to Weiler's Assertions, Subclass B Is Represented.

Weiler is wrong that "[t]here is no class representative for Subclass B." Mot. at 7; Dkt. 183-1 at 29. Subclass B comprises (1) partial refunds (including fees); (2) ineligible refunds—i.e., circumstances where no refund was provided and Amazon's records state at least some reason for a refund denial; and (3) full retrocharges for which Amazon's records state a reason. SA §§ 1.30, 1.35, 1.9. Nine of the 10 Proposed Class Representatives allege their membership in Subclass B transactions in the operative Complaint.

Weiler's suggestion that Counsel settled blind also misunderstands the facts. For example, Weiler's charge that counsel valued Subclass B before receiving the "Class Data" due February 13, 2026, Dkt. 183-1 at 38-40, conflates two different datasets. The "Class Data" is the administrative file Amazon hands to the Settlement Administrator to identify members, mail notice, and pre-populate claim forms. SA §§ 1.9, 5.5.1. Counsel instead valued this case based on the voluminous discovery record: the parties "collected, reviewed, and produced hundreds of thousands of pages of documents," along with the underlying transactional data and confidential confirmatory-discovery materials. Dkt. 171-1, Schapiro & Zigler Decl. at 8-9. Amazon also produced thousands of documents on the "restocking fees" that is the focus of Weiler's complaint. *E.g.*, *Weiler* Compl. ¶¶ 5-10, 17-21, 25-26, 40-46, 49-50, 56, 95. Moreover, counsel pressed Amazon throughout with new discovery requests and "rounds of discussion prompted by counsel's questions about Amazon's data and documents," Schapiro & Zigler Decl. at 15, and the settlement followed "extensive discovery" and the exchange of "substantial documents and information," SA at 1. Judge Phillips confirms counsel "made vigorous and substantive presentations regarding their clients' positions on key contested issues and damages" and developed "a full understanding of each Settling Party's position—including its strengths and weaknesses." Dkt. 171-3, Phillips Decl. ¶¶17, 20-21. And Plaintiffs' motion for preliminary approval is supported by extensive citations to documents

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                    7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

Amazon produced and Plaintiffs reviewed. Dkt. 169, Holton Decl. That the Administrator's notice file postdates execution says nothing about an investigation built on years of document and transactional discovery. In addition, Weiler's claim that the Class Data does not contain any information regarding why Amazon denied refunds, issued only partial refunds, or made retrocharges, Dkt. 183-1 at 20, is wrong on the agreement's text, which lists "reason for retrocharge or refund denial" among its fields. SA § 1.9.

### 4.    There Are No Conflicts Between Settlement Class Members.

Weiler's assertion that there are conflicts between the settlement subclasses appears to stem from her mistaken belief that no proposed Class Representative is a member of Subclass B. In any event, her assertions are wrong in several additional respects.

*First*, Weiler appears to misunderstand the calculation of payments to Subclass A members. Section 6.4 works to pay each member who is owed money the unpaid transaction amount plus prejudgment interest—Subclass A automatically, SA § 6.4.1 & n.6, and Subclass B on a claim "showing more likely than not…entitlement," SA § 6.4.2. For Subclass A, full payment is guaranteed: the total unpaid Subclass A principal is less than the Subclass A fund, so every member receives the unpaid amount and automatic interest, SA §§ 2.2, 6.4.1 & n.6, and most Subclass A relief—approximately $604 million—was paid outside the fund altogether, SA §§ 2.2, 4.2.1. The "238.6% to 354%" Weiler decries, Dkt. 183-1 at 32, is therefore principal plus interest, not a windfall; that the payment is generous reflects the strength of those claims, some of which are from many years ago.

*Second*, Weiler's criticisms of Subclass B's distribution are based on her misunderstanding of the data supporting those claims. Amazon's records do not indicate that there is an amount due to Subclass B, so a claims process to receive additional information from Subclass B members is necessary. Weiler incorrectly assumes that every single Subclass B member has a bulletproof claim

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                    8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

that can disprove Amazon's records and that should settle for 100% of its possible value, then wrongly estimates that Subclass B members will recover only "1.77% to 2.6%" in the Settlement. That is a fantasy. There is no evidence to support Weiler's wishful thinking that all Subclass B members will be able to prove their claims despite Amazon's records.

In fact, Plaintiffs expect that claims will fall well within the $22.59 million non-reversionary Subclass B fund, and its members will be paid the full unpaid amount plus interest. Any amount not claimed is redistributed to claiming members, not returned to Amazon, SA § 6.8, so a lower claim rate only increases individual recoveries. The allocation and claim requirements for Subclass B reflect an appropriate balancing of the goal of maximizing recovery by class members and the practical difficulties in proving claims the transactional data does not verify.

Moreover, because the actual per-member share cannot be precisely known until the claims period closes, Weiler's argument is premature. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 23 (D.D.C. 2019) (uncertainty about "the settlement amounts to be received by Class Members" is "a premature basis for an objection"). Counsel are confident that Subclass B class members will receive the full amount of their claims plus interest, but the only way to know with certainty is to grant preliminary approval and open the claims process.

*Third*, the proposed settlement provides a simple claim form for Subclass B members that will promote the filing of claims. The settlement provides for notice to every potential Subclass B member. For those who undertake to file a claim, it also provides for disclosure of each transaction at issue, and Amazon's justification for its actions, by prepopulating the claim form with Amazon's data. And it provides the ability to disprove that justification by showing, more likely than not, that Amazon's non-refund, partial refund or retrocharge was incorrect. SA §§ 6.1.2, 6.2.1, 6.4.2; 2.3 n.2; Ex. 1 (Claim Form) § II. The claim and proof requirement are indispensable to preventing settlement funds from being misdirected to uninjured, non-class members. *See* Fed. R. Civ. P. 23(e) advisory

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW          9

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

committee's note to 2018 amendment ("claims processing method should deter or defeat unjustified claims").

*Fourth*, Weiler's premise that her return-fee claims are a sure thing that Amazon cannot defend (Mot. 2, 9; Dkt. 183-1 at 4, 34) is uninformed. While Plaintiffs believe in the strength of their claims, all are subject to dispute. Amazon's published policy makes returns only "generally" free and warns that "certain situations or item conditions may incur fees," including a late fee for an untimely return. So whether any particular fee was wrongly charged is a contested, transaction-specific question—one of the very risks a settlement compromises.[3] Amazon's consumer-contract and consumer-protection defenses have defeated claims like these at the pleadings and on appeal. *See Storey v. Amazon.com, Inc.,* 2026 WL 1470611, at *1 (9th Cir. May 26, 2026) (rejecting an automatic-refund theory as contrary to the contract's terms); *In re Amazon Serv. Fee Litig.,* 2025 WL 2268252, at *1 (9th Cir. Aug. 8, 2025) (no breach where the contract authorizes the challenged conduct). Weiler's complaint alleges that she was charged a restocking fee based on when her returns were received by Amazon. Amazon's answer in Weiler's own action denies those allegations, and Amazon concedes nothing by settling—disclaiming that any class member is "entitled to any refunds" or holds a "valid, timely, or legitimate claim." *Answer, Weiler*, No. 2:26-cv-00378 (W.D. Wash. Mar. 30, 2026), Dkt. 21; SA §§ 1.31 n.1; 2.3 n.2.

A recovery that is a portion of the theoretical maximum is fair where proving the underlying claims would be difficult. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement worth "roughly one-sixth of the potential recovery" as "fair and adequate" "given the difficulties in proving the case"). That difficulty is acute here, where Amazon's records

---

[3] Amazon Return Policy, Amazon.com (last visited June 4, 2026), https://web.archive.org/web/20260526031726/https://www.amazon.com/gp/help/customer/display.html?nodeId=GKM69DUUYKQWKWX7.

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE & DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW

10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

reflect at least some reason for each Subclass B charge and a claimant must affirmatively prove error—the very circumstance in which courts approve both a discounted recovery and a claims process to sort provable claims from the rest. *See Tech Instrumentation, Inc. v. Eurton Elec. Co.*, No. 1:16-cv-02981, Dkt. 117, at *2-3 (D. Colo. May 24, 2022) (discount "warranted given several substantial evidentiary obstacles" where the defendant "did not retain any meaningful records" supporting plaintiffs' position). Nevertheless, all class members will benefit from the Settlement's required practice changes that are designed to prevent incorrect processing of returns in the future.

Calibrating recovery to the strength and provability of each subclass's claims is equitable, not a conflict. That some members may hold stronger or more valuable claims "does not in itself render the settlement unfair," especially where members may opt out, and the Court evaluates "the fairness of a settlement as a whole." *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012). *Amchem* and *Ortiz*, on which Weiler leans, are inapposite: each concerned a single, capped, limited fund in which members competed against one another—not two separately funded, non-reversionary pools, each sized to the claims it pays. At most Weiler shows a difference in claim value, not a conflict "fundamental to the suit" that defeats adequacy. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (citation omitted); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022) ("[t]hat not every class member had an actionable claim is not tantamount to two adverse groups requiring separate representation, as in *Amchem*," where members were injured "in the same manner.").

**5.      Notice Satisfies Due Process, and the Resolved Risk Confirms the Settlement's Value.**

Notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567-68 (9th Cir. 2019) (en banc) (citation omitted), and this plan does that. Weiler identifies no defect; her worry that members cannot self-sort into a subclass

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                                   11

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

(Mot. 10-11; Dkt. 183-1 at 22-23; 29, 36) ignores that the notices will inform class members which Subclass(es) they may belong to. Weiler also ignores that the claim form will be pre-populated with Amazon's data, SA Ex. 1 (Claim Form) § II, and that requiring "some sort of claims process" is well within the Court's discretion, *In re Hyundai*, 926 F.3d at 568.

### 6.    The Fee Is a Capped Request to Be Tested Against Actual Benefit.

Weiler's attack on attorney fees (Mot. 11; Dkt. 183-1 at 16-17) is premature and recycles her misunderstanding of the value of Subclass B's claims. No fee is awarded at preliminary approval; the $100 million is a ceiling on a request, SA § 7, that the Court will test at final approval against the settlement's actual benefit to the class—exactly as the Ninth Circuit requires. *In re CPK Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025). Measured against the nearly $1.3 billion in value that the settlement obtains ($600 million in litigation-guaranteed refunds, a $309.5 million fund, and more than $363 million in reforms, Dkt. 171 at 9; SA § 4.3), a fee request equal to the cap would be unremarkable—but that is, in any event, a question for another day.

### CONCLUSION

The settlement provides immense benefits to Settlement Class Members after two-and-a-half years of hard-fought litigation. Weiler, a latecomer who can object and opt out, offers the Court no reason to allow her to intervene or withhold notice of that recovery from the Class. The Court should deny the motion to intervene and preliminarily approve the settlement.

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW

12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

Dated: June 4, 2026

Respectfully submitted,

By: */s/ Nolan K. Anderson*

Alicia Cobb, WSBA #48685
Matthew Hosen, WSBA #54855
Nolan K. Anderson, WSBA #59691
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel.: (206) 905-7075
Fax: (206) 905-7100
aliciacobb@quinnemanuel.com
matthosen@quinnemanuel.com
nolananderson@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel.: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Alyssa G. Olson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3621
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
alyolson@quinnemanuel.com

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                          13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel.: (206) 905-7000

By: */s/ Aaron M. Zigler*
Aaron M. Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street, Suite 333
Chicago, IL 60661
Tel.: (312) 673-8427
aaron@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Interim Class Counsel*

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                          14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 4,195 words, in compliance with the Local Civil Rules.

DATED: June 4, 2026

/s/ Nolan K. Anderson
Nolan K. Anderson, WSBA #59691

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE & DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                          15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED: June 4, 2026

*/s/ Nolan K. Anderson*
Nolan K. Anderson, WSBA #59691

PLTFFS' OPP. TO WEILER'S MOT. TO INTERVENE &
DENY PRELIMINARY APPROVAL
CASE NO. 2:23-CV-1372-JNW                    16

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000