THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

IN RE: AMAZON RETURN POLICY
LITIGATION

Case No. 2:23-cv-01372-JNW

**REPLY IN SUPPORT OF MOTION TO INTERVENE AND TO**

**DENY MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

NOTING DATE: JUNE 10, 2026

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

WYATT GRONSKI
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

## I.   INTRODUCTION

The parties in *In re Amazon Return Policy Litigation* fail to mount a credible defense of their settlement. Indeed, the parties either concede explicitly or through omission virtually every point Weiler made in her objection to their settlement. Instead, the parties ask the Court to deny intervention on procedural grounds, and to punt consideration of the merits of the objection to final approval. That is putting the cart before the horse. "The Court has an independent duty to protect the interests of absent class members." *Allen v. Similasan Corp.*, 318 F.R.D. 423, 426 (S.D. Cal. Aug. 9, 2016). "The district court must act as a fiduciary, protecting the interests of absent class members by scrutinizing the settlement's fairness in light of well-established factors." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). That duty is heightened for "settlements that occur before class certification." *See id*. The Court cannot proceed to final approval without first assuring itself that each element of Rule 23(a) and (b)(3) is satisfied and then finding the settlement fair and reasonable under the Ninth Circuit's heightened scrutiny standard. Here, granting class certification would be a clear abuse of discretion, given that the subclasses are not defined, and no class representative is identified by name as representing either Subclass A or B. But even beyond that fundamental failure, the settlement cannot be approved for at least a dozen other reasons, including fatal conflicts of interest, grossly inadequate consideration, and a defective a notice plan and method of distribution.

## II.   THE COURT CANNOT GRANT CLASS CERTIFICATION

"A class definition should be precise, objective and presently ascertainable." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (quotation omitted). "[T]he class definition must be sufficiently definite so that the members of the class can be ascertained by reference to objective criteria." *Daniel F. v. Blue Shield of Ca.*, 305 F.R.D. 115, 122 (N.D. Cal. 2014). Here, the Settlement

1

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

provides no definition for either Subclass A or B. The parties retort that notice will tell class members *whether* they may be a part of Subclass A or B. Opp. Br. at 11-12. But, neither the proposed class notices nor the Settlement defines either Subclass A or B. How could this Court grant class certification to a class that is undefined?

The parties state that purportedly "[n]ine of the 10 Class Representatives alleged Subclass B transactions in the operative Complaint." *Id*. at 1. Incredibly, the parties do not identify *which* nine putative class representatives are Subclass B members, and which sole plaintiff represents Subclass A. The Court cannot find that either Subclass A or Subclass B is represented by typical or adequate class representatives when the parties have refused to disclose the *names* of the representatives, or even the *transactions* that qualify them as Subclass A or B members. Tellingly, the parties do not claim that a single plaintiff was charged a Return Fee or Restocking Fee, the fees at issue in *Weiler*. However, Subclass A is comprised of *twelve* different types of transactions, while Subclass B is comprised of *three* different types of transactions. Because only *one* plaintiff is a member of Subclass A, class members of the other *eleven* types of transactions within Subclass A are not represented. And, because all Subclass B plaintiffs were in the "Retrocharges" category of Subclass B, class members within the "Ineligible Refunds" and "Patrial refunds – amount not refunded" categories are not represented.

This is not a ministerial matter. The transactions stem from different policies, require different proofs, have unique defenses, and have wildly different valuations. For instance, there is no articulable reason why someone in the category of "Ineligible Refunds" should receive the same relief as someone with a slam-dunk case that was charged a Restocking Fee in violation of Amazon's Return Fee policy, with Amazon's own records showing that the fee was improper.

2

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

WYATT GRONSKI
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

## III.    THE SETTLEMENT IS NOT FAIR OR REASONABLE

The parties effectively concede that the Settlement leaves Subclass B *worse off* than if the parties simply did nothing. Weiler's opening brief and objection calculated Subclass B's total damages at $856.8 million, with the Settlement capping relief for Subclass B at only $15.22 million to $22.59 million, depending on approved attorneys' fees. The parties *do not contest these estimates*. Class Counsel does not explain why they failed to exercise their right to terminate the Settlement when they found out that the estimated damages were worth more than *double* the $400 million estimated at the time of Settlement.

No member of Subclass B is strictly entitled to *anything*. In a typical class action with a claims process, class members are entitled to specific relief if they affirmatively prove class *membership* – *i.e.*, they prove their identity, prove that they were charged a fee within the scope of the class, or prove that they purchased a covered product. Here, the Settlement requires that Subclass B prove not only class membership (which is superfluous given that Amazon knows the identity of every class member and the precise dollar amount at issue), but also prove "more likely than not" that they are entitled to damages through evidentiary submissions. Opp. Br. at 8, 9. Subclass B must "*disprove* [Amazon's] justification [for failing to refund] by showing, more likely than not, that Amazon's non-refund, partial refund or retrocharge was incorrect." *Id*. at 9 (emphasis added). Amazon is effectively afforded a presumption that its determination is correct. Class members must then prove "more likely than not" that they are entitled to damages, the same standard used *at trial* in civil litigation. *In re Crain Walnut Shelling, LP*, 175 F.4th 1069, 1076 (9th Cir. 2026); *United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001). Should Subclass B members fail to "prove" damages by a preponderance of the evidence,

---

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

WYATT GRONSKI
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

*they get nothing*, even if they otherwise establish class membership and prove a transaction within the scope of the class.

Because the standard to "prove" entitlement in the Settlement is the same as in civil litigation, Subclass B members are drastically worse off *because of* the Settlement. Outside the Settlement, Subclass B's claims are worth up to $856.8 million, can be prosecuted as a class action, can be appealed, can be prosecuted with the aid of merits experts and experienced class counsel, and can be won or lost under the same "more likely than not" standard. In the case of a judgment in favor of Subclass B, class members would merely need to prove that they are *bona fide* class members to receive a share of any judgment. The Settlement, however, caps damages at $15.22 to $22.59 million, provides Amazon with a release, sets a quick claims deadline, removes the right to a trial or to appeal, forces claims to be "proven" individually without the aid of class counsel or merits experts (Settlement § 6.2.5), and forces class members to "prove" their claims *without discovery from Amazon*.[1] All claims are subject to a final determination by the Settlement Administrator "in its sole discretion." Settlement § 6.2.1. So, the Settlement keeps the standard of proof the same as in civil litigation, but drastically decreases putative damages and the ability of class members to prove or appeal their claims.

Class Counsel is "confident that Subclass B class members will receive the full amount of their claims plus interest," despite Subclass B being entitled to 1.77% to 2.6% of their maximum damages. *See* Opp. Br. at 9. That statement could only be true if a) Class Counsel believes that less than 1.77 percent of Subclass B could prove entitlement to benefits under the Settlement or b) Class Counsel believes that the claims rate will be abnormally low. In either case, Class Counsel does not provide the

---

[1] The Settlement Administrator can seek further inquiry and investigation *from the Settlement Class Member*, but cannot seek discovery from Amazon. Settlement § 6.2.4.

4

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

**WYATT GRONSKI**
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

Court with sufficient information to determine whether the Settlement is reasonable because they do not provide any estimation of damages should this case have proceeded to trial, much less damages estimations for the subclasses within Subclass B. Class Counsel's explanation of why Weiler's Restocking Fee claims might not be strong is that *Amazon* denies the allegations and because Amazon's records "reflect at least some reason for each Subclass B charge." *Id*. at 10-11. That only underscores the conflicts within Subclass B. The reasons for the various Subclass B refund denials and fee charges are drastically different. For Restocking Fees transactions like for Ms. Weiler, the "reason" is that Amazon wrongly used the date the item was received at an Amazon warehouse instead of the date of return. That reason has no merit. Class Counsel also cites decisions concerning contract terms not at issue involving Amazon where courts granted motions to dismiss as an illustration for putative weakness of the claims. *Id*. This is puzzling, given that Amazon never even filed a motion to dismiss in *Weiler* and lost *two* motions to dismiss in this case.

All of this is a sharp contrast to Subclass A. Subclass A has payments sent to class members automatically and provides for relief of 238.6% to 354% of putative damages. The parties say this is no "windfall" because it accounts for possible interest. This is false. Class members get the same *pro rata* payment whether they experienced wrongful charges in 2025 or 2017. Class members that were wrongfully charged in 2025 get more than treble damages, while class members charged in 2017 get interest at a rate of more than 15% *per annum*, which is in itself a windfall. The parties have not identified an articulable reason why Amazon would have agreed to such an absurd windfall for Subclass A, while squeezing Subclass B down to a penny on the dollar. Amazon would have owed less to Subclass A by taking those claims to trial *and losing*. This is a massive red flag.

5

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

## IV.    INTERVENTION IS PROPER

The parties' main argument against intervention is that intervention is appropriate where Weiler will have an opportunity to object at final approval. But this presupposes that the Court will grant preliminary approval. District courts grant motions to intervene where the motion to intervene is filed prior to preliminary approval and preliminary approval is *denied. See, e.g., Hilsley v. General Mills, Inc*., 2021 WL 2290782, at *7-8 (S.D. Cal. June 4, 2021) (rejecting identical arguments against intervention where the "argument lost its potency with the denial of Plaintiffs' Preliminary Approval Motion"); *CO Craft, LLC v. Grubhub, Inc*., 2022 WL 2981831, at *6-7 (D. Colo. July 28, 2022) (denying preliminary approval and granting intervention); *Ross v. Convergent Outsourcing, Inc*., 323 F.R.D. 656, 662 (D. Colo. Jan. 17, 2018) (same). As in *Hilsley*, granting preliminary approval and proceeding to final approval would adversely affect absent class members, Weiler, and the parties, as the settlement falls short of the preliminary approval standard.

The parties' arguments about timeliness are even less well taken. Weiler's claims did not even accrue until January 2026, when she was charged a Restocking Fee. Upon filing in February 2026, Weiler's counsel spent months conferring with counsel for Amazon trying to get data to determine *whether she was even a member of the class*, what subclass she was a member of, and obtain class and individual data to allow her to evaluate the strengths of the settlement. Both Amazon and Class Counsel told Weiler (and the Court) that she, and all other class members, could get a full refund plus interest, and that the Settlement was worth more than a billion dollars. There was no reason to suspect this was not true at the time, or that her interests may not have been adequately represented. The Settlement is incredibly opaque, and the case docket is dense. It took significant research to draft and then file her 40-page objection and motion to intervene. And despite the herculean effort required to

6

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

**WYATT GRONSKI**
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

put together the objection and motion to intervene, Weiler still filed the motion to intervene and objection *prior to* the hearing on the motion for preliminary approval. It would be far more prejudicial to punt these issues to final approval, which (if granted) will then be appealed.

## V.    CONCLUSION

The Court should deny preliminary approval, and permit Weiler to intervene.

Dated:  June 9, 2026

Respectfully submitted,

 /s/    *Yeremey O. Krivoshey*

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Cal. Bar No. 295032)*
28 Geary Street, Ste. 650 # 1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

 /s/    *Todd Wyatt*

**WYATT GRONSKI PLLC**
Todd Wyatt (Bar No. 31608)
540 Newport Way NW, Suite 200
Issaquah, WA 98027
Phone: 425-395-7784
E-Mail: todd@wdlawgroup.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (Cal. Bar No. 244902)*
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*admitted *pro hac vice*

7

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

**WYATT GRONSKI**
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 2,063 words (Less than 2,100 words), in compliance with the Local Civil Rules.

/s/ *Yeremey O. Krivoshey*

Yeremey O. Krivoshey

8

REPLY ISO MOTION TO INTERVENE AND TO
DENY PRELIMINARY SETTLEMENT APPROVAL;
CASE NO. 2:23-CV-01372-JNW

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784