FILED
LODGED
RECEIVED
MAIL

OCT 26 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**IN RE: AMAZON RETURN POLICY LITIGATION**
**Case No. 2:23-cv-01372-JNW**

# OBJECTION OF GEORGE YUNAEV TO PROPOSED CLASS ACTION SETTLEMENT

Objector: George Yunaev, Pro Se

## I. INTRODUCTION

I object to final approval of the proposed Settlement Agreement (ECF No. 171-5, later "Agreement") in its current form under Federal Rule of Civil Procedure 23(e)(5).

My principal concern is that the Settlement may release claims belonging to persons who were never identified for individualized notice. This problem arises from a class definition dependent on the merits of disputed refund claims, combined with a notice procedure based on Amazon's Class Data, whose selection criteria and completeness are not adequately explained in the Agreement.

I also raise concerns regarding uncertainties in the class and subclass definitions, the possibility that Subclass B claimants may remain bound by the


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

release without compensation, and evidentiary requirements that may disproportionately burden older, small-dollar claims. Additionally, I question whether the allocation of only 7.3% of the Net Settlement Fund to Subclass B is adequately supported by reasonable estimates of valid claims and expected recovery.

I am self-represented and have no formal legal training. I do not oppose settlement of this litigation in principle. However, I respectfully request that the Court examine these issues and require appropriate modifications, clarification, or other safeguards before granting final approval.

## II. FACTUAL BACKGROUND

On September 30, 2026, I received an individualized email notice from the Settlement Administrator ("Administrator") with notice ID AMZB119317346, inviting me to submit a Settlement Subclass B claim. Clicking on a link in the individualized email notice opened the online Claim Form ("the Form"), which displayed a 'Returns You May Contest' section identifying a single Amazon order 111-4791730-5013868, a "PYLE waterproof MP3 player", a refund request dated May 12, 2020, an amount of $29.53, and the rejection reason "Not in order history." I remember purchasing and returning the item and believe that I did not receive the refund owed. The Form states that the transaction information comes from Amazon's records and cannot be edited. The relevant part of the Form is reproduced as Exhibit B.

The Form states that "To receive a payment, you will need to provide, for each transaction, information allowing the Settlement Administrator to determine that it is more likely than not that Amazon incorrectly denied your refund, incorrectly issued only a partial refund, or incorrectly charged you." The Form requests attaching a "proof of tender", described through examples including carrier tracking confirmation, a drop-off receipt, an Amazon drop-off confirmation email, or a return-


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

label scan. It also requests sworn attestations concerning the return and nonreceipt of the refund.

On or around September 30, 2026, I first reviewed the Form. I understood the "proof of tender" requirement as mandatory and abandoned the claim submission process, because I no longer possessed carrier documentation from a transaction approximately six years earlier.

On October 14, 2026, I sent the Settlement Administrator the following message through its online contact form:

> I've received a notice however while filing a claim I note that it asks for supporting documentation "proof of tender" for a transaction which happened six years ago, in 2020. I do not believe such request is reasonable, as nobody would retain such documentation for six years. I intend to file a formal objection to this settlement and point this out to a presiding judge.

On October 16 I received two responses from the Administrator. The first response stated "We have received your response and have escalated it for further review. We will provide you with feedback on this matter as soon as possible." The second response contained generic information about how to submit an objection. As of this submission, no further responses have been received from the Administrator on that matter.

While preparing this objection, I attempted to submit the claim through the Form without attaching any carrier documentation. The website accepted the submission with the required attestations, and I promptly received an automated email confirming the form was submitted. I do not know whether acceptance without an attachment was intended or resulted from a validation error, or whether the Settlement Administrator will approve a claim submitted in this manner. As of this submission, no further response has been received from the Administrator regarding


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

this claim.

Separately, I examined how the online claims process could be accessed through the public settlement website, rather than through a personalized email notice. I visited www.returnsettlement.com and clicked the "Submit Claim" button. The website presented a login form (Exhibit A) requesting a Notice ID and Confirmation Code. Clicking "Login" without entering either credential produced no visible response.

## III. GROUNDS FOR OBJECTION

### A. <u>The Settlement May Release Claims of Persons Never Identified for Individualized Notice</u>

The Agreement may bind persons beyond the identified notice population, yet does not sufficiently explain how that population was selected or what binding protections exist for persons omitted from it.

#### ***a. <u>The Notice Population and the Population Subject to the Release Are Defined Differently</u>***

The Settlement Class is defined in Section 1.30 of the Agreement as follows:

> All persons who initiated a return to Amazon or requested a refund regarding a physical product purchased and (per Amazon's records) received in the U.S. after being sold through Amazon.com from September 5, 2017 to the time the Class Data is prepared, and who (1) incorrectly did not receive a refund from Amazon or received an untimely or incorrect refund from Amazon; and/or (2) did receive a refund but were later incorrectly charged by Amazon for the product(s) that was (were) the subject of the return.

Section 5.5.2 provides that Settlement Class membership, **for purposes of notice**, is determined solely by reference to Class Data. However, the substantive class definition in Section 1.30 does not require inclusion in Class Data. Section


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

8.1.2 expressly provides that the release may bind Settlement Class Members who never received actual notice, and the Agreement does not otherwise expressly condition the release on inclusion in Class Data.

The Agreement thus does not establish that the population identified for individualized notice coincides with the substantive Settlement Class. Consequently, the Settlement may release claims belonging to persons never identified for individualized notice, without clearly establishing who determines their membership or how such persons can protect their rights.

***b. The Criteria for Inclusion in Class Data Are Not Adequately Explained***

Section 1.9 defines "Class Data" as follows:

> "Class Data" includes, for each customer account that is part of the Class Data, and to the extent available, the name or identity of the account holder, postal and email address(es), phone number(s), and, for transactions at issue, the dollar values, order numbers, ASINs, and reason for retrocharge or refund denial.

This definition does not establish the criteria governing which accounts and transactions must be selected. Because Section 5.5.2 makes Class Data the sole basis for determining Settlement Class membership for purposes of notice, the composition and completeness of this dataset directly affect who is identified for individualized notice. Yet the Agreement does not specify the inclusion and exclusion criteria, the number of accounts and transactions included, or the measures taken to assess the accuracy and completeness of the resulting dataset.

In particular, the Agreement does not explain whether Class Data includes all reasonably identifiable transactions involving potentially incorrect refund outcomes, irrespective of Amazon's assessment of their correctness, or whether transactions may be excluded because Amazon believes that a refund was properly denied or


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

already paid.

For example, Amazon's records may indicate that a full refund was issued on time, while the customer maintains that the refund was never received because the payment failed or was otherwise not completed. Depending on the circumstances, that customer may satisfy the substantive Settlement Class definition even though Amazon's records do not identify an outstanding refund.

The Agreement itself acknowledges in Section 4.2.1 that some refunds were not completed because of payment-processing issues.[1] Thus, a discrepancy between an attempted refund and an actually completed refund is not merely hypothetical.

If such transactions are excluded from Class Data, those customers may receive no individualized notice despite potentially belonging to the Settlement Class, and even if such customers learn about the action independently, they may also lack the notice ID and confirmation code required to access the personalized online Claim Form.

The problem is not limited to the lack of notice. A potentially qualifying customer omitted from Class Data may also face practical barriers to seeking compensation, while Amazon may later assert that the Settlement released the underlying claim. Although Section 6.1.4 permits claims to be submitted by mail, and the published paper Claim Form allows customers to provide transaction information, those alternatives do not resolve the central concern. A qualifying customer omitted from Class Data may never learn that a claim must be submitted or that exclusion is necessary to preserve individual rights. Nor does the availability of a paper form establish how the Administrator determines payment eligibility for a

1 "After this litigation was filed, Defendant identified certain customer refunds that were potentially unpaid [...] These refunds include (1) refunds not completed due to a payment processing issue [...]"


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

transaction absent from Class Data.

I recognize that Rule 23(c)(2)(B) requires the best notice practicable under the circumstances, rather than guaranteeing actual receipt of individualized notice by every member. Nor do I assert that qualifying customers were actually omitted from Class Data. The Agreement does not disclose sufficient information to determine whether such omissions occurred. However, **the Agreement thus employs different criteria for identifying persons for individualized notice and defining those subject to the release**, without adequately explaining how the notice methodology ensures that the former population encompasses reasonably identifiable members of the latter.

***c. Potential Consequences for Unnotified Claimants***

The discrepancy between the notice population and the substantive Settlement Class is particularly consequential when Amazon and a customer disagree about whether a refund was incorrectly denied.

Consider a customer planning or pursuing an individual lawsuit against Amazon for an allegedly improper refund denial. Amazon maintains that the denial was justified, while the customer contends otherwise.

If Amazon excludes the transaction from Class Data because it considers the denial justified, the customer may never be identified for individualized notice. Nevertheless, a subsequent judicial determination that the refund was incorrectly denied could establish that the customer satisfied the substantive Settlement Class definition all along. Amazon could then invoke the Settlement as a defense to that individual claim, even though the customer was never identified for individualized notice.

I do not assert that such a defense would necessarily succeed, particularly where adequate notice or other due-process protections were lacking. The concern


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

is that the Agreement does not expressly prevent Amazon from asserting such a defense, leaving affected customers potentially required to litigate the binding effect of a settlement of which they may have been unaware.

Section 8.1.1 addresses claims pending in other matters as of October 20, 2025, but does not unconditionally preserve claims that fall within the definition of Class Released Claims, nor does it expressly resolve disputes commenced after that date.

***d. The proposed remedy aligns class membership, notice, and release.***

The concerns described above arise from the potential mismatch between the population identified for individualized notice and the population whose claims the Settlement purports to release. I respectfully request that the Court consider aligning class membership and the release with a fixed, objectively identifiable notice population, or imposing equivalent binding safeguards for persons omitted from individualized notice. The specific relief requested is set forth in Section IV.

## B. Additional Uncertainties in the Class and Subclass Definitions

***a. The Settlement Agreement Does Not Establish a Fixed Class-Period Cutoff***

Section 1.30 of the Agreement defines the relevant period as beginning September 5, 2017, and ending at "the time the Class Data is prepared." The Preliminary Approval Order uses the same definition. However, the published Long Form Notice, at Question 5, identifies February 12, 2026, as the end of the class period.

Although the Long Form Notice was authorized by the Court, it is not itself an express amendment to the Settlement Class definition in the Agreement or Preliminary Approval Order. The operative documents therefore do not expressly establish February 12, 2026, as the legally controlling cutoff date. This distinction is


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

material because the cutoff determines which transactions fall within the Settlement Class and potentially which claims are subject to release.

Moreover, the Agreement does not clearly explain which transaction event must occur before the cutoff. For example, a product may have been purchased and received before February 12, 2026, but returned and incorrectly denied a refund afterward. The uncertainty is compounded by Section 1.10, which defines Class Released Claims by reference to claims arising before the Settlement's Effective Date, potentially later than the class-period cutoff.

I respectfully request that the Court require the parties to specify an explicit calendar cutoff date in the operative Settlement Agreement and final judgment, clarify which transaction events are governed by that date, and establish whether the release encompasses refund disputes arising after the cutoff.

***b. The Criteria for Assignment to Settlement Subclasses A and B Are Not Sufficiently Defined***

The Agreement does not provide a clear, self-contained definition of Settlement Subclass A.

Section 1.34 defines "Settlement Subclass A" as "all persons whose transactions are included in Settlement Subclass A." Section 1.35 defines Settlement Subclass B by exclusion from Subclass A. These definitions do not independently establish criteria for assigning transactions to either subclass.

Other provisions of the Agreement, including Sections 2.2, 4.2.1, and 6.4, identify certain transactions included in Subclass A. Furthermore, Plaintiffs' Motion for Preliminary Approval (ECF No. 171 at 17) describes Subclass A as including certain failed refunds and retrocharges resulting from processing errors or incomplete return reviews, while Subclass B encompasses other disputed transactions.


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

Nevertheless, the Agreement does not clearly establish comprehensive, objective criteria for determining which individual transactions belong to each subclass, how those criteria are applied, or how an allegedly incorrect subclass assignment may be challenged.

This distinction is material. Subclass A transactions generally qualify for automatic payments and access to a substantially larger portion of the Net Settlement Fund, whereas Subclass B claimants must submit claims and establish eligibility through an evidentiary process. Consequently, subclass assignment affects not merely how transactions are categorized but also the practical conditions under which compensation is available.

I respectfully request that the Court require the parties to clarify the objective criteria and decision-making procedures governing subclass assignment, including how potentially erroneous assignments may be corrected.

**C. <u>Rejected Claimants May Lose Their Claims Without Compensation or an Opportunity to Opt Out</u>**

Even where a customer is identified and receives individualized notice, the Agreement creates uncertainty about the consequences of an unsuccessful claim.

As discussed above, the class membership is defined by the underlying return and refund circumstances, not by the claimant's possession of historical documentation or its ability to satisfy a more-likely-than-not evidentiary standard. Although Sections 6.1.2 and 6.2.1 authorize the Administrator to determine whether a Subclass B claimant has demonstrated class membership for purposes of payment, the substantive Settlement Class definition in Section 1.30 does not depend on administrative approval of a claim. Furthermore, Section 6.2.9 makes the Administrator's decision final as to the validity of a Claim, without expressly providing that rejection excludes the claimant from the Settlement Class for purposes of the


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

release.

Consequently, a customer whose refund was actually denied incorrectly may remain a Settlement Class Member even if the Administrator rejects the claim for insufficient evidence. Under Section 8.1.2, that customer may receive no compensation while remaining bound by the Settlement and effectively losing the right to pursue the underlying claim independently, because establishing the merits of a customer's individual refund claim could simultaneously establish the customer's membership in the class that released it.

This uncertainty is compounded by the timing of claim determinations.

The deadline to submit claims and request exclusion is December 1, 2026. Although Sections 6.2.6–6.2.8 provide for deficiency notifications, opportunities to cure, and administrative appeals, the Agreement does not require the Settlement Administrator to issue an initial claim determination before the exclusion deadline.

A customer may submit a claim in good faith, expecting that an approved claim will provide adequate compensation, while intending to preserve the option of pursuing an individual claim if compensation is denied. A rejection may nevertheless occur only after the exclusion deadline, when the opportunity to opt out has expired.

I respectfully request that the Court consider safeguards allowing claimants whose claims are rejected to make an informed choice before their opportunity to preserve individual rights expires. Such safeguards could include a further opportunity to request exclusion following final claim rejection, an appropriate limitation on the release, or equivalent protections.

### D. <u>The Claims Procedure Imposes Ambiguous and Potentially Excessive Evidentiary Requirements</u>

The individualized online Claim Form presents requests for documentary proof together with sworn attestations, without clearly explaining whether submission


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

is permitted without an attachment or whether a claim lacking the specified documentation can be approved.

My own experience demonstrates the practical significance of this ambiguity. I initially abandoned the claim submission process because I understood the documentation to be mandatory and no longer possessed it. Only when I tried again approximately two weeks later did I discover that the website would accept a submission without an attachment.

The issue is not confined to my personalized online form.

The published five-page paper Claim Form[2] includes a table titled "Refund Rejection Reasons and Required Documentation" on pages 4–5. The table prescribes proof of tender across numerous categories, including "Item not returned," "Not in order history," "Different item in order history," and "Any other stated reason, or none."

The terminology and standardized requirements may reasonably lead claimants to believe that specified historical carrier documentation is indispensable to receiving compensation.

The forms do not clearly explain:

- Whether sworn attestations, together with Amazon's own transaction records, may satisfy the evidentiary standard without historical carrier documentation;
- Whether other reasonable corroborating evidence is accepted and, if so, what kinds;
- Whether the listed carrier documents are mandatory for claim approval; or
- How a claimant may contest a finding that the submitted evidence is insufficient.

---

2 The settlement website https://www.returnsettlement.com/important-documents links to a "Claim Form" at https://angeion-public.s3.amazonaws.com/www.returnsettlement.com/docs/Amazon.com%20Abbott_Claim%20Form_FINAL.pdf


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

I recognize that Sections 6.2.6–6.2.8 of the Agreement provide procedures for notification of deficiencies, opportunities to cure, and administrative appeals. However, these provisions do not resolve the ambiguity concerning what evidence is necessary for initial approval, and the claim forms do not clearly explain how the procedures apply when a claimant cannot produce the specified historical documents.

I also acknowledge Class Counsel's explanation that Amazon's records alone do not establish entitlement to relief for every Subclass B transaction, so additional evidence may be appropriate. Plaintiffs' Motion for Preliminary Approval, ECF No. 171 at 17. However, that same motion invokes the principle that settlement claims procedures should facilitate legitimate claims without imposing undue demands. The administrator's evidentiary standards and the instructions presented to claimants should be evaluated against that principle.

The rejection category in my own transaction further illustrates the need for clarity. Amazon's stated reason is "Not in order history," despite the Form identifying the order number, product, amount, account, and refund request. Although proof of tender may help establish that a return occurred, the Form does not explain how that evidence addresses rejection reasons such as "Not in order history" or "Different item in order history," or what evidence would resolve the stated discrepancy. There may be a technical explanation, but claimants should be informed what factual issue the required documentation is intended to establish.

I respectfully request that the Court require disclosure of the actual evidentiary criteria and consider revisions to the published and online Claim Forms clearly distinguishing mandatory documentation, acceptable alternative evidence, and the procedures available when a claimant cannot satisfy the stated requirements.


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

**E. <u>The Evidentiary Burden Is Disproportionate for Older, Small-Dollar Claims</u>**

The Settlement covers qualifying transactions dating back to September 2017. Customers ordinarily would have little reason to anticipate that they would need to preserve carrier tracking details, return drop-off receipts, or return-label scans for six to nine years to obtain refunds that Amazon had previously denied.

Historical documentation requirements impose particularly disproportionate costs where the disputed refund is small. In my case, the identified refund amount is $29.53. The time required to locate or reconstruct six-year-old shipping records could readily exceed the economic value of the claim. This concern is consistent with Class Counsel's own explanation of the need for class treatment.[3] A settlement claims procedure should not recreate the same economic barrier that class treatment was intended to overcome.

I do not possess information establishing the distribution of Subclass B claim amounts or the actual rate of denials for missing documentation. Nor do I assert that every claimant has lost access to historical records. Nevertheless, the combination of the standardized documentary requirements, the age of the transactions, and counsel's acknowledgment concerning the economics of individual claims warrants scrutiny of how many eligible customers are realistically expected to obtain relief.

The Court should examine the practical effectiveness of the claims process under Rule 23(e)(2)(C)(ii), including whether reasonable alternative means of substantiation are available.

3 In the Motion for Preliminary Approval, ECF No. 171, at 14, counsel argues that "Class treatment is superior to other methods for the resolution of this case [...] given the relatively small amounts of alleged damages for each individual consumer."


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

**F. The Basis for the Subclass B Fund Allocation and Expected Recovery Is Unclear**

Section 2.3 of the Agreement estimates the most likely potential claim pool for Settlement Subclass B at approximately $400 million. However, Section 6.4.2 allocates only 7.3% of the Net Settlement Fund to Subclass B, after deductions for attorneys' fees, costs, and administrative expenses.

In their Motion for Preliminary Approval (ECF No. 171 at 18–19), Plaintiffs represent that "Members of both subclasses are expected to receive a full refund plus interest".

I recognize that the estimated potential claim pool does not establish that every disputed transaction represents a valid claim. Nevertheless, the Agreement does not explain what proportion of that potential pool the parties expect to qualify for compensation, the anticipated aggregate value of approved Subclass B claims, or the assumptions underlying the 7.3% allocation.

These questions are material to the adequacy and equitable distribution of relief, particularly because Subclass B claimants must satisfy documentary requirements while potentially remaining bound by the release even if compensation is denied.

I respectfully request that the Court examine the evidence supporting the allocation and expected recovery for Subclass B under Rules 23(e)(2)(C) and 23(e)(2)(D), including the projected aggregate value of approved claims and the extent to which the allocated funds are expected to provide full refunds.



GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

## IV. REQUESTED RELIEF

For the reasons stated above, I respectfully request that the Court decline to grant final approval of the Settlement in its present form unless the identified concerns are adequately addressed.

In particular, I respectfully ask the Court to consider the following measures:

1. **Align class membership, notice, and the release**. Consider conditioning final approval on a revised Settlement Class definition based on inclusion in a fixed, objectively identifiable Class Data notice population, rather than on a determination that a disputed refund decision was substantively incorrect. The corresponding release should be appropriately limited to identified transactions, preserving the claims of persons outside the defined class and claims concerning unrelated transactions not identified in Class Data. Any limitation on Settlement Class membership or the scope of the release should be expressly incorporated into the operative Settlement Agreement and final judgment, so that it governs subsequent disputes and does not depend on nonbinding representations of the parties' present intentions.
2. **Clarify the class period and subclass allocation**. Consider conditioning final approval on an amendment to the Settlement Agreement expressly establishing a fixed calendar cutoff date for the Settlement Class, consistent with the date represented in the published Long Form Notice. The operative Agreement and final judgment should also clarify which transaction events are governed by that cutoff and whether claims arising afterward are excluded from the release. Additionally, require objective criteria for assigning transactions to Subclasses A and B.
3. **Clarify the treatment of pending individual claims**. Require the parties to explain whether the Settlement is intended to release claims already being


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

litigated individually, including disputes in which Amazon maintains that its original refund decision was correct. Consider appropriate safeguards for such claims, including exclusion from the release unless the claimants affirmatively elect to participate.

4. **Examine the Class Data methodology**. Require disclosure of the source records, selection criteria, population size, and validation procedures used to construct Class Data. In particular, determine whether Amazon's assessment that a refund denial was justified or a refund had been paid could result in exclusion from individualized notice.

5. **Protect claimants whose requests for compensation are rejected**. Clarify whether a final rejection of a Subclass B claim for insufficient evidence leaves the claimant bound by the release. If so, consider providing an opportunity to request exclusion following final rejection, limiting the release, or adopting equivalent safeguards.

6. **Clarify evidentiary requirements**. Require the parties and Settlement Administrator to explain how sworn attestations, Amazon's records, historical carrier documentation, and alternative corroborating evidence are evaluated, including whether particular documents are indispensable to approval.

7. **Correct ambiguous claim-form instructions**. Consider requiring revisions to the online and published paper Claim Forms to clarify the documentary requirements, explain rejection codes, and identify permissible alternative evidence.

8. **Evaluate the adequacy and allocation of Subclass B relief.** Examine the basis for allocating 7.3% of the Net Settlement Fund to Subclass B in light of the approximately $400 million estimated potential claim pool. Consider the assumptions concerning claim validity, participation, documentary



GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

deficiencies, approval rates, and projected aggregate recovery, including whether the allocated funds are reasonably expected to provide the full refunds plus interest described in Plaintiffs' Motion for Preliminary Approval. Evaluate these issues under Rules 23(e)(2)(C) and 23(e)(2)(D), including the equitable treatment of Settlement Subclasses A and B.

9. **Consider corrective notice and deadline measures**. If material deficiencies in the notice or claims procedures are established, consider supplemental notice, appropriate deadline adjustments, or other measures enabling affected persons to make informed decisions.

10. **Consider other appropriate safeguards**. Grant such further relief as the Court deems necessary and appropriate to ensure compliance with Rule 23, recognizing that material amendments to the Settlement may require the parties' agreement and additional notice.

If I am unable to attend the Final Approval Hearing in person, I respectfully request that the Court consider the factual and legal questions raised in this objection on the written record. In particular, I request that any representations concerning the Class Data methodology, the scope of the release, or the consequences of rejected claims be supported by evidence or incorporated into the operative final judgment, as appropriate, rather than depend solely on statements of present intention.

If material evidence addressing these objections is submitted after the objection deadline, I respectfully request an opportunity, subject to the Court's permission and scheduling requirements, to provide a limited written response.

## V. CONCLUSION

The Settlement's most fundamental difficulty is the relationship between class membership, notice, and the release.

The class definition depends on whether Amazon's disputed refund decisions were actually incorrect. The notice process relies on Amazon's Class Data. The release would bind qualifying members even if they never received actual notice or compensation. These provisions raise the possibility that Amazon could invoke the Settlement to extinguish claims of customers whom it did not identify for individualized notice because it considered their refund decisions justified.

For notified claimants, separate problems arise when evidence is deemed insufficient for compensation but the release may still apply. Ambiguous documentary requirements and claim determinations occurring after the exclusion deadline compound those concerns.

These questions do not establish that the proposed Settlement is necessarily invalid. They do, however, require a clear explanation of who is bound, who is notified, which transactions are released, and what meaningful opportunity affected persons have to obtain relief or preserve their rights.

I respectfully request that the Court examine these issues under Rules 23(c)(2)(B) and 23(e)(2), including the adequacy of notice, effectiveness of claims administration, and equitable treatment of class members, and require appropriate clarification or corrective measures before granting final approval.

Further, the concerns identified in this objection involve fundamental aspects of the Settlement: the definition of the class, the adequacy of notice, the scope of the release, and the practical availability of compensation. These are matters that Class Counsel, as representatives of absent class members, would reasonably be expected to examine when negotiating the Settlement.


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

I do not suggest that these issues establish misconduct or bad faith by Class Counsel. However, if the concerns remain unresolved, I respectfully request that the Court consider whether the interests of absent class members were adequately protected, including under Rules 23(a)(4), 23(g)(4), and 23(e)(2)(A).

I further request that the Court take any resulting findings into account when evaluating the reasonableness of Class Counsel's requested attorneys' fees under Rule 23(h), including the quality of representation and the actual benefits secured for the class.

## VI. OBJECTOR INFORMATION AND DISCLOSURES

**Full name**: George Yunaev

**Mailing address**: 849 S Wolfe Rd, Sunnyvale CA 94086

**Telephone**: 408 676 6612

**Email address(es) associated with Amazon account and transaction:** gyunaev@ulduzsoft.com

**Basis for my good-faith belief that I am a Settlement Class Member:** I received an individualized Settlement Subclass B notice based on Amazon's Class Data. My personalized Claim Form identifies a specific transaction for which Amazon's records indicate a refund rejection. I recall returning the merchandise and believe I did not receive the refund owed. I submitted a Subclass B claim. These circumstances form the basis for my good-faith belief that I satisfy the Settlement Class definition in Section 1.30.

**Scope of objection**: The Settlement Class definition, individualized notice methodology, scope of the release, and the administration of Subclass B claims, including historical claims and potentially unnotified qualifying members. I submit this objection solely in my individual capacity. The objections concerning class

membership, individualized notice, and the release apply to the Settlement Class as a whole. The objections concerning evidentiary requirements, claim rejection, and the claims procedure primarily concern Settlement Subclass B. I do not intend to represent other class members. I seek no special treatment of my individual refund claim and no consideration in exchange for forgoing or withdrawing this objection.

**Legal representation**: I appear pro se. No attorney represents me or expects compensation for this objection.

**Intention to appear at final approval hearing**: I intend to appear and request to be heard if circumstances permit. I cannot presently confirm whether I will be able to attend in person.

**Counsel appearing**: None.

**Witnesses**: None.

**Supporting exhibits:**

- **Exhibit A:** A login screen asking for ID and Confirmation code.

- **Exhibit B**: Relevant screenshots of my personalized online Claim Form.

The Settlement Agreement (ECF No. 171-5) and Plaintiffs' Motion for Preliminary Approval (ECF No. 171) are cited by docket number.

## VII. DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the factual statements concerning my own transaction, notice, experience with the Claim Form, claim submission, and communications with the Settlement Administrator are true and correct.

Statements concerning possible consequences for other claimants, the construction of Class Data, and the scope of the release are presented as legal arguments or concerns, not as facts within my personal knowledge.


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

**Executed on: October 20, 2026**

**At:** Sunnyvale, CA

**Signature (wet ink):** ______________________

George Yunaev, Objector, Pro Se

## VIII. CERTIFICATE OF SERVICE

I certify that on **October 20, 2026**, I served a copy of this objection, including Exhibits A and B, by USPS Priority Mail, postage prepaid, addressed to:

Amazon Return Policy Litigation
Attn: Objections
P.O. Box 10, East Brunswick, NJ 08816-9998

On the same date, I sent the original objection and exhibits by USPS Priority Mail, postage prepaid, to the Clerk of Court, United States District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101, for filing.

**Signature:** ______________________

George Yunaev

**Date: October 20, 2026**



GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

# Exhibit A



## Submit a Claim

In re: Amazon Return Policy Litigation

**Login with your Notice ID and Confirmation Code**

If you received a personalized notice in the mail or via email with a Notice ID and Confirmation Code, please enter the codes you were provided below.

Please remember to enter the full Notice ID exactly as it appears on your personalized Notice, (i.e. XYZ45678).

ID

Confirmation Code

Reset Login


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

## Exhibit B

**II. DETAILS ABOUT YOUR AMAZON RETURNS**

**Returns You May Contest**

The chart below includes details about your Amazon returns based on Amazon's records. This information cannot be edited. If you disagree with a rejected return shown below, check the "Claim" box and provide the required information displayed in the chart.

To receive a payment, you will need to provide, for each transaction, information allowing the Settlement Administrator to determine that it is more likely than not that Amazon incorrectly denied your refund, incorrectly issued only a partial refund, or incorrectly charged you.

Download CSV

| CLAIM | ORDER # | ITEM NAME | DATE REFUND REQUESTED | REFUND AMOUNT REQUESTED | REFUND REJECT REASON |
|---|---|---|---|---|---|
| ☑ | 111-4791730-5013868 | PYLE MP3 PLAYER, WATERPROOF, SPORTS, 8GB Memory, IPX8 Rating, USB Connection, Rechargeable Battery, Includes Earbuds, Perfect for Swimming, Running, Gym, Ergonomic Design, Sweatproof, Dustproof | 05/12/2020 | $29.53 | Not in order history |

**Supporting this claim**

Documentation

Proof of tender.

Carrier tracking confirmation, drop-off receipt, Amazon drop-off confirmation email, or return-label scan showing the item was handed to a carrier or drop-off location.

Upload document

**and**

Attestation

Check each statement below that you attest to, under penalty of perjury:

☐ The item(s) I returned were the item(s) I purchased in this order.

**and**

☐ I did not receive the refund.


GEORGE YUNAEV,
849 S WOLFE RD, SUNNYVALE CA 94086,
408 676 6612

UNITED STATES POSTAL SERVICE

PirateShip.com
Make shipping fun

P

usps.com

US POSTAGE

U.S. POSTAGE PAID
USPS Ship

10/20/2026
1 lb 0 oz

Mailed from 94086

PRIORITY MAIL®

GEORGE YUNAEV
849 S WOLFE RD
SUNNYVALE CA 94086-8164

Created 10/20/2026
Flat Rate Envelope

CLERK OF COURT, US
DISTRICT COURT FOR THE WESTERN DISTRI
700 STEWART ST STE 2310
SEATTLE WA 98101-4442

USPS TRACKING # USPS Ship

9305 5110 4390 0012 1611 06

FILED
LODGED
RECEIVED

MAIL

OCT 26 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY