**EXHIBIT 12**

Case 2:23-cv-01372-JNW Document 102-3 Filed 06/02/25 Page 1 of 15

THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON RETURN POLICY LITIGATION

No. 2:23-CV-1372-JNW

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

NOTING DATE: June 30, 2025



QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

ARGUMENT ........ 1

A. The Court Should Order Amazon to Produce Tracking Data and Information (RFPs 79, 80) ........ 1

B. The Court Should Order Amazon to Produce Documents Sufficient to Identify Customer Service Agents that Corresponded with Plaintiffs (RFPs 103, 107, 127, and 130) ........ 3

C. The Court Should Order Amazon to Produce Information Relied on to Deny Plaintiffs' Refunds (RFPs 83, 88-89, 97-98, 102, 106, 111, 115, 120-21, 125-26) ........ 4

D. The Court Should Order Amazon to Produce Documents From Amazon's Customer Service System (RFP 139) ........ 5

E. The Court Should Order Amazon To Produce Documents Sufficient to Identify Third-Party Contractors (RFP 141) ........ 5

F. The Court Should Order Amazon to Produce Documents Concerning the Decision to Rename "Instant Refunds" "Advance Refunds" (RFP 142) ........ 6

G. The Court Should Order Amazon to Produce Documents Concerning the Process for Determining that Customers Did Not Send Back the Correct Item (RFP 143) ........ 8

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Albert's Embroidery, Inc. v. First Fin. Ins. Co.*,
2008 WL 11343026 (C.D. Cal. Feb. 7, 2008) .......... 6

*Bryant v. Armstrong*,
285 F.R.D. 596 (S.D. Cal. 2012) .......... 2, 7

*Chavez v. Allstate Northbrook Indem. Co.*,
2024 WL 5179908 (S.D. Cal. Dec. 19, 2024) .......... 3

*City of Spokane v. Monsanto Co.*,
2017 WL 3613985 (E.D. Wash. Feb. 21, 2017) .......... 4

*Duran v. Cisco Sys., Inc.*,
258 F.R.D. 375 (C.D. Cal. 2009) .......... 6

*Gopher Media, LLC v. Spain*,
2020 WL 12688143 (S.D. Cal. Aug. 24, 2020) .......... 5

*Kellgren v. Petco Animal Supplies, Inc.*,
2016 WL 4097522 (S.D. Cal. July 7, 2016) .......... 5

*Oracle Corp. v. SAP AG*,
566 F. Supp. 2d 1010 (N.D. Cal. 2008) .......... 7

*Power Analytics Corp. v. Operation Tech., Inc.*,
2017 WL 3008486 (C.D. Cal. Mar. 20, 2017) .......... 4

*Richlin v. Sigma Design W., Ltd.*,
88 F.R.D. 634 (E.D. Cal. 1980) .......... 6

*U.S. E.E.O.C. v. ABM Indus. Inc.*,
2008 WL 5385618 (E.D. Cal. Dec. 23, 2008) .......... 3

*Walker v. N. Las Vegas Police Dep't*,
2016 WL 8732300 (D. Nev. May 13, 2016) .......... 4, 9

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 6501798 (N.D. Cal. Dec. 15, 2017) .......... 7

*Wolfclan v. Pierce Cnty.*,
2024 WL 4449931 (W.D. Wash. Oct. 9, 2024) .......... 4

Case 2:23-cv-01372-JNW Document 123-2 Filed 01/02/26 Page 4 of 15

## INTRODUCTION

Plaintiffs allege that Amazon has unlawfully withheld and retained refunds that its customers were legally entitled to receive. Dkt. 116 ("FACC") ¶1. According to Amazon's own representatives, this practice is due to some type of "system technical issue"; "mix-up"; "error"; "mistake[]"; or "mistake from the carrier end." *Id.* ¶¶60, 73, 80, 91, 123, 125. Plaintiffs have served discovery seeking documents related to these statements, including why Amazon's customer service agents admitted that Plaintiffs had been wrongfully recharged for items they returned, the identities of those customer service agents, and the information they relied on to make those representations. Plaintiffs also seek documents regarding Amazon's procedures for processing returns and refund requests, including information and data captured throughout that process that Amazon relied on to deny Plaintiffs' refunds, as well as Amazon's decision to make changes to its return and refund policies implicated by this case.

Yet, Amazon is obstructing discovery into these clearly relevant topics. In some cases, Amazon has outright refused to produce documents responsive to many of Plaintiffs' second set of document requests. In others, it has reneged on prior agreements and commitments, refused to cooperate by providing Plaintiffs with intentionally ambiguous and vague discovery positions, and improperly cited its interrogatory responses as satisfying its duty to produce documents. This discovery conduct is part of a pattern and practice by Amazon to delay discovery progress in this matter and warrants this Court's intervention. *See generally* Dkts. 81, 89, 93, 106. This Court should order Amazon to produce documents responsive to the below Requests within 15 days of its Order.

## ARGUMENT

### A. The Court Should Order Amazon to Produce Tracking Data and Information (RFPs 79, 80)

RFP 79 seeks "tracking data" for items returned to Amazon by Plaintiffs, and RFP 80 seeks "tracking information" that Amazon's customer service agent reviewed when informing Plaintiff


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Laura Abbott that she had been "mistakenly" recharged for a returned item. Ex. A at 9.[1] Amazon refuses to fully respond to these requests because it contends that the terms "tracking data" and "tracking information" are vague and ambiguous. Ex. B at 6-7. Instead, Amazon agreed to produce only "return data" but did not elaborate further on whether return data would include the requested tracking information. *Id.* In meet and confers and correspondence, Plaintiffs asked whether Amazon's production of "return data" would include "tracking data." Ex. C at 2. Instead of providing the requested clarification, Amazon vaguely stated that it will produce "scans associated with the returns." Ex. D at 2. While Amazon should produce this information, its refusal to confirm that tracking data from Amazon's designated carriers (*i.e.*, tracking data similar to what Plaintiffs were shown in their Amazon accounts, *see, e.g.*, FACC ¶¶86, 121) would be captured by its agreement to produce "return data" and "scans associated with the returns" is obstructionist, and it should be compelled to include any such data in its production.

The terms "tracking data" and "tracking information" should be understood to include the tracking of returned items by third party drop-off locations or carriers, at every step of Amazon's return process for which Amazon has such information. Indeed, that is how Amazon uses these terms in the regular course of business and on its public-facing websites.[2] *See Bryant v. Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. The responding party should exercise common sense and attribute ordinary definitions to terms in discovery requests." (citation omitted)).

This Court should order Amazon to produce the tracking data and information requested by Plaintiffs.

---

[1] All citations to "Ex." refer to Exhibits attached to the Declaration of Nolan Anderson.

[2] *See, e.g.*, *Missing Tracking Information*, Amazon.com, https://www.amazon.com/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=G6ZFEB9ZDU7QHMER (last visited June 9, 2025).

**B. The Court Should Order Amazon to Produce Documents Sufficient to Identify Customer Service Agents that Corresponded with Plaintiffs (RFPs 103, 107, 127, and 130)**

RFPs 103, 107, 127, and 130 seek documents sufficient to show the identity of the customer service representatives who corresponded with Plaintiffs Joshua Soto Lopez and Vince Vojtko about their returns, and the information those representatives accessed supporting their assertions that Plaintiffs had been recharged due to errors or mistakes. Ex. A at 13, 16-17. Amazon agreed to produce only "documents sufficient to show data for the return…that would have been available to a customer service agent." Ex. B at 28, 30-31, 48, 50. While Amazon should produce such documents, it should also produce documents sufficient to identify the customer service representatives who made the referenced admissions. Amazon disingenuously claims that it does not understand why the identities of its customer service agents are "necessary or relevant" and falsely claims that "Plaintiffs have not explained" their relevance. Ex. D at 5.

The identities of Amazon employees who made admissions that directly support Plaintiffs' claims are indisputably relevant. As Plaintiffs explained to Amazon at the meet and confer, these individuals are likely to possess discoverable information and are obvious candidates for potential depositions or custodial searches. Anderson Decl. ¶3. Amazon understood as much, agreeing as a first step that it would "see if [it] could identify the agents and whether those people were still employed by Amazon." Ex. C at 4; Anderson Decl. ¶3. Without any explanation, Amazon has reneged on that agreement. Ex. D at 5.

Plaintiffs have more than met "relevancy's low bar," and it is Amazon's burden to explain why the identities of its employees who made crucial admissions are *not* relevant. *Chavez v. Allstate Northbrook Indem. Co.*, 2024 WL 5179908, at *1 (S.D. Cal. Dec. 19, 2024). Moreover, the disclosure of employees with discoverable information is routine in a case like this and not burdensome or violative of any privacy interest. Indeed, Amazon has already conceded that it is not entitled to withhold information regarding its employees' identities, agreeing that it "will not redact employees' names." Dkt. 82-6 at 2; *see also* 82-4 at 3; *U.S. E.E.O.C. v. ABM Indus. Inc.*, 2008 WL 5385618, at *3, *9-10 (E.D. Cal. Dec. 23, 2008) (overruling privacy-based objection to request seeking documents identifying names of employees). And Amazon is not entitled to raise

burden objections merely because it is an "entity with many employees." *City of Spokane v. Monsanto Co.*, 2017 WL 3613985, at *5 (E.D. Wash. Feb. 21, 2017).

The Court should order Amazon to produce responsive documents. *See Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 3008486, at *2 (C.D. Cal. Mar. 20, 2017) (ordering production of documents sufficient to identify relevant employees); *Wolfclan v. Pierce Cnty.*, 2024 WL 4449931, at *4 (W.D. Wash. Oct. 9, 2024) (ordering disclosure of individuals based on job description and department).

### C. The Court Should Order Amazon to Produce Information Relied on to Deny Plaintiffs' Refunds (RFPs 83, 88-89, 97-98, 102, 106, 111, 115, 120-21, 125-26)

RFPs 83, 88-89, 97-98, 102, 106, 111, 115, 120-21, 125-26 seek documents sufficient to show the bases for Amazon's decision to send emails to Plaintiffs reminding them to return items ("Return Reminder Emails") that they had already returned to Amazon, the bases for Amazon's decision to subsequently recharge Plaintiffs for those items, and the information Amazon relied on to make those decisions. Ex. A at 10-16. These requests seek relevant information concerning Amazon's decisions to deny Plaintiffs' refunds as alleged in the Complaint and concerning any justification Amazon may cite to support those decisions. Amazon has not agreed to search for or produce responsive documents, but claims it has already produced documents sufficient to show "the reason" for the emails and charges referenced in these requests. *See generally* Ex. B. But this fails to confirm that the documents produced are sufficient to show *all* of the bases for Amazon's decisions to send Return Reminder Emails and issue recharges, and leaves out the part of Plaintiffs' request that Amazon produce documents sufficient to show the "information received" by Amazon that supported these decisions. Amazon ignored Plaintiffs' requests seeking clarity about what Amazon had already produced and whether it was intentionally excluding these other categories of documents. Ex. D at 4; *see also Walker v. N. Las Vegas Police Dep't*, 2016 WL 8732300, at *3 (D. Nev. May 13, 2016) (parties have a duty "to communicate clearly and cooperate in the discovery process"). These omissions are not inadvertent. By ignoring Plaintiffs' requests for clarification and failing to provide clear and cogent positions, Amazon has managed to delay Plaintiffs' discovery efforts. Amazon's refusal to confirm one way or the other suggests that

additional responsive documents do exist, which Amazon is withholding. But "if the production to date is in fact the sum of responsive documents within [Amazon's] possession, [it] must so state." *Gopher Media, LLC v. Spain*, 2020 WL 12688143, at *3 (S.D. Cal. Aug. 24, 2020). "[P]laintiffs are entitled to an unequivocal response that no additional responsive documents exist." *Kellgren v. Petco Animal Supplies, Inc.*, 2016 WL 4097522, at *5 (S.D. Cal. July 7, 2016).

The Court should order Amazon to produce documents sufficient to show all the bases for, and information received supporting, the decisions described in the above RFPs, or confirm that the three data tables it cites are the only responsive documents.

**D. The Court Should Order Amazon to Produce Documents From Amazon's Customer Service System (RFP 139)**

RFP 139 seeks all data contained in Amazon's customer service system that relates to Plaintiffs' returns alleged in the Complaint. Ex. A at 18. Amazon agreed only to produce "documents referenced in the Consolidated Complaint relating to Plaintiffs' customer service contacts and communications," claiming that this Request is "overbroad, vague, and ambiguous" and "unduly burdensome and not proportional to the needs of this Action." Ex. B at 56. But Amazon identified the customer service system as a non-custodial data source likely to have discoverable information. Ex. E at 2. It is hardly overbroad, vague, or unduly burdensome for Amazon to produce all documents from that data source that relate to the specific transactions described in the Complaint. What Amazon has agreed to produce—the communications referenced in the Complaint (*i.e.*, the chats between Plaintiffs and Amazon customer service representatives)—is essentially a refusal to produce responsive documents at all. This Request seeks any documents from Amazon's customer service system that relate to the referenced returns—not just the communications with Plaintiffs that were quoted in the FACC. The Court should order Amazon to produce responsive documents.

**E. The Court Should Order Amazon To Produce Documents Sufficient to Identify Third-Party Contractors (RFP 141)**

RFP 141 seeks documents sufficient to identify all third parties with whom Amazon contracts to process returns, recharges, and refunds. Ex. A at 18. Amazon has not agreed to produce responsive documents but instead "referr[ed] Plaintiffs to its response to" Plaintiffs'


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Interrogatories. Ex. B at 57-58. Amazon's response is improper. Interrogatories and requests for production "are cumulative, not alternative," and interrogatory responses "cannot be used for the production of documents." *Albert's Embroidery, Inc. v. First Fin. Ins. Co.*, 2008 WL 11343026, at *2 (C.D. Cal. Feb. 7, 2008) (citation omitted); *see also Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 637 (E.D. Cal. 1980) ("it cannot be disputed that the various methods of discovery as provided for in the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive"). Moreover, Amazon's Interrogatory responses state that it is still investigating its responses despite having months to complete a thorough investigation. Dkt. 120-2. And although Amazon also makes numerous boilerplate objections, including that RFP 141 is "overbroad and unduly burdensome," Ex. B at 57, "such unexplained and unsupported boilerplate objections are improper." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009). The Court should order Amazon to produce responsive documents.

**F. The Court Should Order Amazon to Produce Documents Concerning the Decision to Rename "Instant Refunds" "Advance Refunds" (RFP 142)**

RFP 142 seeks documents concerning the decision to rename "Instant Refunds" "Advance Refunds," Ex. A at 18—shortly after Plaintiffs filed this lawsuit. *Compare* Ex. F, *with* Ex. G. Prior to the filing of the Complaint in this action, Amazon's refund policy offered customers "Instant Refunds," explaining "If you want to use your refund without waiting for us to process your return, you can select the Instant Refund option, if available….You'll still need to return your items within 30 days." Ex. F. After filing the Complaint, Amazon modified its refund policy, offering an "Advanced Refund," rather than an "Instant Refund," and including an additional explanation that: "After you complete a drop off or pick up of return item(s), it may take some time for the item(s) to be transported to Amazon or a third-party seller. Once the item(s) are received, the item(s) will be verified and inspected against the expected product(s) and quantity in your return request. If Amazon or the seller does not receive the expected product(s) and quantity as submitted by you in your return request,…you will be charged for the previously refunded amount…." Ex. G. The returns policy, and this provision in particular, are part of the contract Plaintiffs allege Amazon breached. *See* FACC ¶¶3, 33-34, 54, 241. Thus, documents concerning Amazon's decision to

change the name from "instant refunds" to "advanced refunds" is directly relevant to the allegations in the Complaint.

Despite this, Amazon unilaterally limited the scope of RFP 142 to documents "sufficient to show" the changes to the "Refunds" page and "the reasons for" any changes to the "Refunds" page over the relevant time period. Ex. B at 58. Amazon's response carves out communications about Amazon's decision, including communications among Amazon employees discussing the change, any considerations that went into that decision, and any consequences arising from the decision. Given that these provisions are part of the contract Plaintiffs allege Amazon breached and the changes were made shortly after this action was filed, it is clear that documents regarding that change—not just documents sufficient to identify the reason for the change—are relevant.

Then, in subsequent correspondence, Amazon further narrowed its commitment by limiting its agreement to produce only such "responsive" documents that it identifies by running search terms over the six custodians that Amazon picked without any input from Plaintiffs. Ex. D at 8.[3] Yet, Amazon has not represented that any of those six custodians were even involved in the decision, and therefore that such a search would reasonably lead to the identification of the documents Plaintiffs seek. *See Oracle Corp. v. SAP AG*, 566 F. Supp. 2d 1010, 1014 (N.D. Cal. 2008) (parties are required to run targeted searches for responsive documents based on email searches from the files of "relevant employees besides custodians"). Multiple Amazon employees and business units were likely involved in the decision to alter the terms of Amazon's refund policies, and Amazon has "an affirmative duty to seek that information reasonably available to [it] from [its] employees" and produce it. *Bryant*, 285 F.R.D. at 607; *see also Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6501798, at *11 (N.D. Cal. Dec. 15, 2017) (parties have an independent obligation "to conduct a reasonable inquiry into [Plaintiffs'] requests" and "to produce known,

[3] Amazon's custodial searches are severely deficient as Amazon has limited its custodial search to just six custodians that it unilaterally selected, Dkt. 81 at 2, withheld documents that would permit Plaintiffs to identify additional custodians, Dkts. 87 at 4 & n.1; 89 at 1-2, and thus far refused to add any additional custodians that Plaintiffs nonetheless have been able to identify, Dkt. 89 at 2 (citing Dkts. 90-1; 90-2).

relevant and reasonably accessible material."). Amazon knows this. Dkt. 113 at 4 (conceding it is "typical in discovery" to "beg[in] producing non-custodial, directly collected documents…before…produc[ing] forensically collected documents from custodians").

The Court should order Amazon conduct a reasonable search to find and produce documents that are responsive to the full scope of RFP 142.

**G. The Court Should Order Amazon to Produce Documents Concerning the Process for Determining that Customers Did Not Send Back the Correct Item (RFP 143)**

RFP 143 seeks documents sufficient to show the process for, and individuals involved with, determining that customers did not send back the correct item. Ex. A at 19. Amazon agreed only to meet and confer about this Request. Ex. B at 59. At the meet and confer, Plaintiffs explained they are seeking process-oriented documents, the categories of people that are involved (*e.g.*, grading associate, grading manager, etc.), including the managerial structure, and the names of the higher-level supervisors and managers who direct the process. Ex. C at 6. Amazon stated it would produce only the process-oriented documents, refusing to produce any documents regarding the categories of people, structure, and manager names. *Id.* In follow up correspondence, Plaintiffs requested that Amazon confirm that it would produce both process-oriented documents and documents sufficient to show the managerial structure and identities of high-level supervisors involved in the process. *Id.* In response, Amazon directed Plaintiffs to its interrogatory responses. and vaguely states that "*[s]hould Amazon identify responsive documents*, it will produce them." Ex. D at 9 (emphasis added). Plaintiffs requested precise clarifications to determine if Amazon's understanding of "responsive documents" includes both process-oriented documents and documents regarding individuals and positions involved in that process. Ex. C at 6. These clarifications were the product of Plaintiffs' efforts to distill Amazon's discovery positions during the parties' meet and confers. But rather than cooperate by communicating its positions clearly and unequivocally, Amazon has refused to clearly state whether it is waiving its prior objections or standing on them, and refused to clarify whether its agreement to produce "responsive documents" would include Amazon conducting a reasonable search for documents responsive to

the full scope of Plaintiffs' request. Ex. D at 9. This is another example of Amazon's failure "to communicate clearly and cooperate in the discovery process." *Walker*, 2016 WL 8732300, at *3.

The Court should order Amazon to search for and produce documents responsive to the entire scope of RFP 143.

**CONCLUSION**

For the reasons above, Plaintiffs respectfully request the Court order that Amazon produce the foregoing documents.

Dated: June 9, 2025

Respectfully submitted,

By: */s/ Alicia Cobb*
Alicia Cobb, WSBA #48685
Nolan K. Anderson, WSBA #59691
Alexandria Madjeric, WSBA #60677
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.: 206.905.7075
Fax: 206.905.7100
aliciacobb@quinnemanuel.com
nolananderson@quinnemanuel.com
alexandriamadjeric@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Alyssa G. Olson (*pro hac vice*)
Joshua Courtney (*pro hac vice*)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: 213.443.3621
Fax: 213.443.3100

adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
alyolson@quinnemanuel.com
joshuacourtney@quinnemanuel.com

By: /s/ *Aaron M. Zigler*
Aaron M. Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312.673.8427
aaron@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Interim Class Counsel*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 3,006 words, in compliance with the Local Civil Rules.

DATED: June 9, 2025

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED June 9, 2025

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685


QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000