**EXHIBIT 13**

Case 2:23-cv-01372-JNW Document 105 Filed 09/30/25 Page 1 of 15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| *IN RE:* AMAZON RETURN LITIGATION | CASE NO. 2:23-cv-1372<br><br>ORDER ON PLAINTIFFS' MOTIONS TO COMPEL, DKT. NOS. 81 AND 96 |

## 1. INTRODUCTION

This case is a putative class action alleging Amazon routinely denies refunds to customers who properly return merchandise. Before the Court are Plaintiffs' motions to compel discovery—Plaintiffs move to compel Defendant Amazon.com Inc. to fully respond to 49 requests for production and ten interrogatories. Dkt. Nos. 81, 93 (sealed), 96 (redacted). Plaintiffs contend responses to their discovery requests are essential for class certification, including information about Amazon's return processes, the scope of wrongful denials, and class-wide damages methodology. Amazon opposes many requests as premature, overbroad, or unduly burdensome, while claiming it continues to investigate and will supplement responses.

The Court rejects Amazon's prematurity argument, finding that with the class certification motion deadline set for December 31, 2025, Plaintiffs need foundational discovery now to meaningfully evaluate and pursue class certification. Continuing to investigate is not a valid basis for withholding information reasonably available after months of notice.

Accordingly, the Court GRANTS both motions in substantial part. Amazon must provide complete responses within 21 days, except where the parties must meet and confer regarding statistical sampling of class-wide transactional data.

## 2. BACKGROUND

This putative class action arises from Amazon's alleged failure to honor its return and refund policies. Plaintiffs represent two putative nationwide classes of Amazon consumers who returned merchandise in compliance with Amazon's policies but who were denied refunds. Dkt. No. 116 ¶ 225.

The first proposed class consists of consumers who (1) delivered returned merchandise to an Amazon-designated carrier, or (2) kept items after being told to do so, but did not receive a refund. The second class includes consumers whom Amazon failed to refund despite receiving the returned merchandise at a fulfillment center. *Id.*

Plaintiffs allege Amazon promises customers "free, no hassle returns," but "[i]n practice, . . . Amazon routinely . . . fails to issue refunds or re-charges customers who have returned items in compliance with Amazon's refund and exchange policies because of defects in Amazon's return and refund processes, often

incorrectly claiming that the return had not been received by Amazon." *Id.* ¶ 4. Plaintiffs allege these failures often occur when Amazon employees misidentify returned items, or they get separated from others causing them to be incorrectly flagged in the process. *Id.* ¶ 6. Plaintiffs also allege that Amazon does not correct these errors because it knows that most of its customers do not notice, and as a result, Amazon's practices result in substantial unjustified monetary losses by consumers. *Id.* ¶ 7.

Between the two classes, Plaintiffs raise 14 causes of action, including breach of contract, violation of the duty of good faith, violation of the Washington Consumer Protection Act (CPA), unjust enrichment, promissory estoppel, and conversion. *Id.* ¶¶ 237–372.

Discovery commenced after the Court's January 30, 2025, scheduling order, which set May 5, 2025, for substantial completion of document discovery and December 31, 2025, for filing the class certification motion. Dkt. No. 84. In its first round of discovery requests, Plaintiffs served 143 requests for production and 11 interrogatories. The instant motions concern Amazon's responses to 49 of these document requests and 10 interrogatories, which Plaintiffs contend are necessary to evaluate the feasibility of class treatment and to develop evidence supporting their claims.

## 3. LEGAL STANDARD

The Court starts from the premise that pretrial discovery should receive "broad and liberal treatment," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), to secure the "just" and "speedy" resolution of every action, *Herbert v. Lando*, 441 U.S.

153, 177 (1979). Generally, “parties may obtain discovery regarding any nonprivileged matter that is relevant to any party’s claim or defense and proportional to the needs of the case.” Fed. R. Civ. P. 26(b)(1).

In class actions, discovery before certification serves the critical purpose of enabling courts to conduct the “rigorous analysis” required by Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (certification requires that Rule 23’s prerequisites be satisfied through evidentiary proof); *see also Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975) (“The propriety of a class action cannot be determined in some cases without discovery[.]”).

The party seeking discovery must first establish that its requests are relevant. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). The party resisting discovery must then show specifically how each request is not relevant or how each is overly broad, burdensome or oppressive. *See Brown v. Warner*, No. C09-1546RSM, 2015 WL 630926, at *1 (W.D. Wash. Feb. 12, 2015). Boilerplate objections are not enough. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

District courts have “wide latitude” in controlling discovery. *Lane v. Dep’t of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). This discretion extends to determining relevancy, managing the scope and timing of discovery, and fashioning appropriate remedies when parties fail to comply with their discovery obligations. *Avila v. Willits Env’t Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011).

## 4. DISCUSSION

### 4.1 Multiple discovery requests have been resolved through agreement.

Before addressing the disputed discovery requests, the Court notes that the parties have reached agreement on numerous items, eliminating the need for judicial intervention on these matters.

Amazon has committed to produce documents responsive to RFPs 30–33 regarding its processing policies, procedures, training materials, and related reports, and documents about customers' ability to track returned items, stating it "has already agreed to produce" responsive documents and data. Dkt. No. 87 at 10–11. Amazon has also agreed to produce documents responsive to RFP 46 regarding Amazon's public statements about return policies; RFPs 48–50 showing when and how Amazon learned of refund denial issues and corrective measures taken; and RFP 54 concerning differences in return handling across its facilities. Dkt. No. 87 at 12. Regarding RFP 54, Amazon acknowledges no objection but notes that with "nearly 80 return centers," responding is "a time-intensive" endeavor. *Id.*

Similarly, Amazon has agreed to produce certain categories of fraud-related documents under RFPs 66–67, specifically committing to produce "relevant, responsive documents that [it] intends to use to support its defenses related to fraudulent returns" and "documents sufficient to show how it detects fraudulent returns and its policies surrounding fraudulent returns." Dkt. No. 87 at 14.

For RFP 7, after Plaintiffs clarified they seek internal documents concerning how Amazon interprets its Conditions of Use in the returns context, Dkt. No. 81 at 10, Amazon agreed that if it finds "relevant documents responsive to this request

(as Plaintiffs now describe it)," it will produce them. Dkt. No. 87 at 11. Amazon has also confirmed it will produce relevant documents related to situations "where the customer does return an item and is nevertheless denied a refund on the basis of non-receipt," and "documents related to its policies regarding denial of refunds for non-receipt, i.e., those policies that might bear on why members of Plaintiffs' defined class were denied a refund" under RFPs 4–6, 30–31, 45, 48–52, 55, 72–73, resolving Plaintiffs' concern about selective production. Dkt. No. 87 at 8.

As for interrogatories, Amazon has agreed to supplement its responses to Interrogatories 4, 6, 7, and 9, informing Plaintiffs it would do so by March 21, 2025. Dkt. No. 102 at 8–9. Amazon indicated it will supplement Interrogatory 5 "if doing so would provide additional clarity." Dkt. No. 102 at 11–12. For Interrogatories 10 and 11, Amazon states it has provided "screenshots from [its] customer service system containing the details and records of Plaintiffs' orders." Dkt. No. 102 at 11.

To ensure these agreements are fulfilled and to establish an enforceable timeline, the Court ORDERS Amazon to complete production of all agreed-upon items within 21 days of this order to the extent not already produced. This deadline supersedes Amazon's proposed March 21, 2025, date for interrogatory supplementation, as the Court finds no justification for further delay given that these requests were served in April and November 2024. Dkt. No. 82 ¶¶ 4, 15.

### 4.2 Plaintiffs' motion to compel Amazon's responses to requests for production, Dkt. No. 81.

Plaintiffs move to compel Amazon's responses to 49 RFPs across several categories. The Court addresses each category below.

Case 2:23-cv-01372-JNW Document 126 Filed 09/02/25 Page 7 of 15

#### 4.2.1 Amazon's organizational structure and custodians (RFPs 57 and 58).

RFPs 57 and 58 seek documents concerning Amazon's organizational charts and structure for its business units and personnel responsible for, or involved in, returns processing, including teams and personnel with relevant information. Dkt. Nos. 81 at 6; 82-1 at 22. Amazon objects that these requests are overbroad and burdensome. Dkt. No. 82-4 at 18. Specifically, Amazon says it lacks centrally maintained *historical* organizational charts, and although it does have an online internal directory with *current* information, this information would not be useful to Plaintiffs because organizational charts are an ineffective way to identify custodians. Dkt. No. 87 at 6–8.

Both objections fail. First, the absence of some documents does not excuse withholding others that do exist. Second, Amazon cannot unilaterally decide what is "useful" to Plaintiffs—the standard is relevance, not Amazon's preferred method of custodian identification. Understanding Amazon's returns infrastructure is without question relevant to prosecuting systematic practices across what Amazon admits are "nearly 80 return centers." If no responsive documents exist, Amazon should say so.

The Court GRANTS Plaintiffs' requests and orders Amazon to produce all responsive organizational documents in response to Plaintiffs' RFPs 57 and 58 within 21 days of this order.

**4.2.2 Class wide data (RFPs 8–19, 20–22, 23–24, 25–26, 29, 78).**

Plaintiffs seek transactional data to identify customers who experienced wrongful refund denials, including:

- Documents or data sufficient to identify Amazon customers that have experienced wrongful denials of refunds on the basis of nonreceipt;
- Documents or data sufficient to identify the monetary sum of refunds wrongfully withheld on the basis for nonreceipt;
- Documents or data sufficient to identify Amazon customers that received return-reminder and refund-recharge emails; and
- Data regarding transactions where Amazon denied refunds on the basis of nonreceipt (including data captured by Amazon when processing returns and refunds).

Dkt. No. 81 at 7–10 (citing RFPs 8–19, 20–22, 23–24, 25–26, 29, 30–33, 78).

Rather than demanding all responsive data, Plaintiffs have proposed that Amazon provide, as a compromise, "an anonymized statistically-significant sample, whereby Amazon would provide a template of the available universe of data field, and an initial sample of such data." *Id.* at 8. Plaintiffs also ask that "Amazon ensure that it would have some means of identifying a given customer's data across transactions and data productions so that the information c[an] be tracked, and then de-anonymized quickly at a later stage of the case." *Id.*

Amazon objects that Plaintiffs' requests for class-wide data are premature and not proportional, citing case law denying pre-certification discovery of putative class member identities. Dkt No. 87 at 9. Plaintiffs do not seek names and

Case 2:23-cv-01372-JNW Document 151-3 Filed 10/02/25 Page 9 of 15

addresses for notice purposes—the concern in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Instead, they seek sampling data to demonstrate that common questions exist, to assess typicality, and to present a damages methodology for class certification. Courts routinely permit sampling for this purpose. *See, e.g.*, *Cruz v. Nike Retail Servs., Inc.*, No. 23-CV-874-L-KSC, 2023 WL 6967410, at *1 (S.D. Cal. Oct. 20, 2023) (finding a sampling of ten percent of a putative 8,000-member wage and hour class a reasonable size); *see also* 1 McLaughlin on Class Actions § 3:7 (21st ed.) (case law supports a sampling of class wide data "to illuminate whether common questions exist and whether the proposed representative's claims are typical of those of other class members[.]")

Because Plaintiffs seek this data for reasons beyond class member identification the Court agrees they are entitled to a statistically significant sample. Without knowing the size of the putative class, the Court cannot determine what sample size would be statistically significant. The Court thus ORDERS the parties to meet and confer within 21 days of this order to determine an appropriate sample size and methodology for producing responsive data to Plaintiffs' RFPs 8–19, 20–22, 23–24, 25–26, 29, 78.

#### 4.2.3 Communications with third parties regarding returns (RFPs 59 and 60).

RFP 59 seeks:

> Documents and Communications Concerning communications between You and third parties other than Your attorneys concerning Your practice of Denying a Refund or Recharging a Customer on the basis that You did not receive a Returned Item when the Returned Item was delivered to Your Fulfillment Center, Your Designated Carrier, and/or

> when You instructed the Customer to keep or discard the Returned Item. Such Documents and Communications include, but are not limited to, discussions specifically referencing the claims in this Action shared with third parties other than Your attorneys.

Relatedly, RFP 60 requests:

> Documents and Communications Concerning this Action shared with third-parties other than Your attorneys.

Plaintiffs clarify they do *not* include in these RFPs privileged communications or communications with putative class members. Dkt. No. 82-4 at 18.

Amazon argues it cannot respond because the term “third parties” is vague and ambiguous. Dkt. No. 87 at 13. This objection is borderline frivolous. Websters dictionary defines a third party as “a person other than the principals.” Webster’s Third New International Dictionary 2378 (2021). In context, this clearly refers to entities that are not Amazon or Plaintiffs.

Accordingly, the Court ORDERS Amazon to respond to RFPs 59 and 60 within 21 days of this order.

#### 4.2.4 Records retention policies and destruction of relevant documents (RFPs 61 and 62).

RFPs 61 and 62 seek Amazon’s documents concerning “record retention and preservation policies and practices” as well as documents “concerning any departure or variance from [such] policies, procedures, and practices relating to the retention or destruction of Documents that would otherwise be called for by these Requests.” Dkt. No. 82-1 at 22.

Amazon asserts several boilerplate objections to these requests; specifically, arguing that they are overbroad, unduly burdensome, and protected by privilege or

the work-product doctrine. Dkt. No. 82-3 at 69. Such generalized objections are insufficient, *Brown v. Warner*, No. C09-1546-RSM, 2015 WL 630926, at *1 (W.D. Wash. Feb. 12, 2015), as Amazon fails to explain specifically what is burdensome about producing its own retention policies or which documents are allegedly privileged.

The Court ORDERS Amazon to respond to RFP 61 and 62 within 21 days of this order.

#### 4.2.5 Documents upon which Amazon intends to rely (RFP 63).

RFP 63 seeks documents Amazon intends "to rely [on] or introduce into evidence at any deposition, hearing, motions, or otherwise use at trial[.]" Dkt. No. 82-1 at 23. Dkt. No. 82-1 at 23. Amazon claims this request is premature, but Plaintiffs argue persuasively that the Court should order Amazon to produce the responsive documents it knows about and uphold its ongoing duty to timely supplement its response. With depositions underway and class certification due December 31, 2025, Amazon surely knows some documents it will rely on—particularly given it has already identified "three data tables" supporting its defenses in response to Interrogatory 8. Dkt. No. 106 at 7.

The Court finds no reason to deny this request and ORDERS Amazon to respond to RFP 63 within 21 days of this order.

### 4.3 Plaintiffs' motion to compel Amazon's responses to interrogatories, Dkt. No. 96.

Plaintiffs move to compel Amazon to answer ten interrogatories.

**4.3.1 Interrogatory 2: identities of third parties with whom Amazon contracted to process returned items, recharges, and refunds.**

Interrogatory 2 seeks the identities of third parties with whom Amazon contracted to process returned items, recharges, and refunds. Dkt. No. 96 at 8. Amazon refuses to include carriers with whom Amazon contracted to deliver returned items from drop-off locations to its fulfillment centers and third parties that supply and maintain hardware and software for processing return and refunds, or consulting on reverse logistics. Dkt. No. 102 at 6. Amazon bases this objection on its interpretation of "process." Despite its objection, Amazon says it is "willing to confer with Plaintiffs about these additional areas." *Id.*

It is unclear why Amazon believes these types of entities are not involved in processing returns, recharges, and refunds. Amazon has not explained why it would be irrelevant or overly burdensome to answer with this information. Because Amazon fails to assert a valid objection, the Court orders it to answer Interrogatory 2 within 21 days of this order.

**4.3.2 Interrogatory 3: identities and job titles of individuals and departments that are responsible for determining that a customer did not return the correct item.**

Interrogatory 3 seeks job titles and departments or groups responsible for determining that a customer did not send back the correct item and how they make such a determination. Dkt. No. 96 at 9. In response, Amazon identifies a generic business unit consisting of hundreds of employees. *Id.* Plaintiffs push back arguing that "identifying the high-level business unit . . . is insufficient, if there are high- or

managerial-level individuals within that department with discoverable information," and that Amazon should, at a minimum, "identify specific employees that made the relevant determination for Plaintiffs' returns described in the Complaint." *Id.* at 9–10.

Amazon's response is evasive. Plaintiffs are not asking for hundreds of names—they seek job titles, departments, and identification of managerial-level personnel with relevant knowledge. At a minimum, Amazon must identify the specific employees who made determinations about Plaintiffs' own returns described in the Complaint. Dkt. No. 96 at 9–10.

Amazon claims it has provided the grading associates and their managers with respect to the orders described in the Complaint and that it is unclear to Amazon what other information Plaintiffs seek because "[p]resumably, Plaintiffs do not expect the name of every grading associate who has worked at any Amazon facility for the past seven years, or every direct manager of every associate." Dkt. No. 102 at 7. This strawman argument avoids the actual request: identification of job titles, reporting structures, and *high-level* decision-makers who oversee returns processing—information Amazon surely knows about its own operations.

The Court ORDERS Amazon to provide within 21 days of this order: (1) all job titles and departments involved in return determinations; (2) the identities of high- or managerial-level individuals overseeing these departments; and (3) specific employees who handled Plaintiffs' returns at issue here.

### 4.3.3 Interrogatory 8: the factual basis of defenses Amazon intends to assert.

Interrogatory 8 seeks "the factual basis of any and all defenses which [Amazon] intend[s] to assert to Plaintiffs' allegations in the Complaint." Dkt. No. 96 at 13. In response, Amazon relies on Federal Rule of Civil Procedure 33(d). *Id.*

Plaintiffs argue that Amazon misuses Rule 33(d) because Amazon fails to identify the documents to which it refers in its answer—instead, in subsequent communications, Amazon identified three data tables containing hundreds of data fields as supporting its defenses. Dkt. No. 106 at 7. Plaintiffs argue this improperly imposes the burden of ascertaining the answer upon them, which is made worse because the "data fields . . . are not intelligible to non-Amazon employees." Dkt. No. 96 at 14.

When invoking the business records option, a party must specify which records contain the answer and provide them "in a manner that permits the same direct and economical access that is available to the [responding] party," and if compilations and summaries exist, the responding party should make them available. Fed. R. Civ. P. 33(d), Adv. Comm. Notes, 1980 Amend.; *Puerto Rico Aqueduct & Sewer Auth. V. Clow Corp.*, 108 F.R.D. 304, 306 (D. PR 1985). Amazon instead dumped "three data tables containing hundreds of data fields" on Plaintiffs without explanation, forcing them to guess which fields support which defenses. Dkt. No. 106 at 7. Worse, these fields "are not intelligible to non-Amazon employees." Dkt. No. 96 at 14.

Case 2:23-cv-01372-JNW Document 106-13 Filed 10/02/25 Page 16 of 16

Thus, the Court ORDERS Amazon to amend its response to Interrogatory 8 within 21 days of this order to: (1) identify specific documents and data fields responsive to each defense; (2) provide a glossary explaining what each referenced data field means; and (3) specify which fields support which defenses.

## 5. CONCLUSION

For the reasons stated above, the Court GRANTS both motions to compel in substantial part. Dkt. Nos. 81, 96. The parties must comply with the deadlines specified in each ruling above. Failure to comply may result in sanctions under Rule 37.

Dated this 30th of September, 2025.



Jamal N. Whitehead
United States District Judge