THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON RETURN POLICY LITIGATION | No. 2:23-CV-1372-JNW<br><br>**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>NOTING DATE: January 12, 2027 |



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Class Counsel Identified and Developed These Claims ..... 2

B. As Mediation Approached, Amazon Began Paying Refunds ..... 2

C. Mediation and Settlement ..... 3

D. The Settlement's Benefits ..... 3

E. The Fee Terms and Notice ..... 4

ARGUMENT ..... 4

I. WASHINGTON LAW GOVERNS AND CALLS FOR A PERCENTAGE-OF-RECOVERY FEE ..... 4

II. THE BENEFITS TO THE CLASS STRONGLY SUPPORT THE REQUESTED FEE ..... 5

A. The Settlement Delivers Approximately $1.27 Billion to the Class ..... 5

1. The Litigation Spurred, And The Settlement Secures, Nearly $600 Million In Refunds ..... 5

2. The Settlement Establishes a $309.5 Million Common Fund ..... 6

3. The Practice Changes Provide More Than $363 Million In Benefits To The Class Members ..... 7

B. The Requested Percentage Is Well Below the Benchmark and Comparable Awards ..... 8

III. THE *VIZCAINO* FACTORS SUPPORT THE REQUESTED FEE ..... 9

A. Results Achieved ..... 9

B. Risk ..... 9

C. Contingent Representation and Burdens ..... 9

D. Benefits Beyond the Cash Fund ..... 9

E. Reaction of the Class ..... 10

IV. A LODESTAR CROSS-CHECK CONFIRMS THE FEE ..... 10

V. CLASS COUNSEL'S EXPENSES ARE REASONABLE ..... 11

VI. THE SERVICE AWARDS ARE REASONABLE AND COST THE CLASS NOTHING ..... 11

CONCLUSION ..... 12




QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

# TABLE OF AUTHORITIES

**Page**

## Cases

*Akins v. Facebook*,
2025 WL 484621 (9th Cir. 2025) .......... 8

*In re Amazon Serv. Fee Litig.*,
2025 WL 2268252 (9th Cir. Aug. 8, 2025) .......... 9

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) .......... 10

*Benson v. DoubleDown Interactive, LLC*,
2023 WL 3761929 (W.D. Wash. 2023) .......... 8, 10, 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 9

*Bowles v. Dep't of Ret. Sys.*,
847 P.2d 440 (Wash. 1993) .......... 4, 5, 8, 10

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .......... 6, 8

*Chery v. Tegria Holdings LLC*,
2024 WL 5009036 (W.D. Wash. Dec. 6, 2024) .......... 11

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
19 F.3d 1306 (9th Cir. 1994) .......... 5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .......... 11

*In re Facebook Biometric Info. Privacy Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) .......... 8, 11, 12

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
2023 WL 8445812 (N.D. Cal. 2023) .......... 8, 10

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) .......... 8, 9

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) .......... 11

*Health Republic Ins. Co. v. United States*,
173 Fed. Cl. 508 (Fed. Cl. 2024) .......... 11



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*Health Republic Ins. Co. v. United States*,
No. 16-259C, Dkt. 192-4 (Fed. Cl. May 2, 2023) ..... 11

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..... 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ..... 6

*Kater v. Churchill Downs Inc.*,
2021 WL 511203 (W.D. Wash. Feb. 11, 2021) ..... 10

*Koby v. ARS Nat'l Servs., Inc.*,
846 F.3d 1071 (9th Cir. 2017) ..... 6

*Lowery v. Rhapsody Int'l, Inc.*,
75 F.4th 985 (9th Cir. 2023) ..... 5

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..... 4, 7, 8, 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ..... 5, 11

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ..... 8

*Stanikzy v. Progressive Direct Ins. Co.*,
2022 WL 1801671 (W.D. Wash. June 2, 2022) ..... 4, 8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..... 6, 7, 8, 12

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016) ..... 10

*Storey v. Amazon.com, Inc.*,
2026 WL 1470611 (9th Cir. May 26, 2026) ..... 9

*Vizcaino v. Microsoft Corp.*,
142 F. Supp. 2d 1299 (W.D. Wash. 2001) ..... 7, 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..... 4, 5, 7, 8, 9, 10, 11

*In re Wawa, Inc. Data Sec. Litig.*,
141 F.4th 456 (3d Cir. 2025) ..... 6



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## INTRODUCTION

Amazon is one of the world's largest companies, and returns are a core part of its business. Holton Decl. (Dkt. 181) ¶19. In 2023, through personal experience, Class Counsel identified a problem in that business: Amazon was charging customers for merchandise they had sent back, either by never completing their refunds or by charging them again after refunding them. Dkt. 45 ¶¶20-22; Dkt. 46 ¶¶7-11. Class Counsel investigated and concluded that those errors were not isolated mistakes—they were systemic failures. Class Counsel then prepared and filed this groundbreaking lawsuit. Dkt. 1.

What followed bore out that judgment. After Class Counsel defeated Amazon's motion to dismiss and moved to compel sensitive discovery that would show why and how often refunds failed, Amazon suddenly began paying hundreds of millions of dollars in refunds. Dkt. 171-1 at 15. Soon after the Court ordered Amazon to comply with the discovery requests, with depositions of Amazon employees approaching, Amazon agreed to settle. Dkts. 156, 157. The Settlement delivers approximately $1.27 billion in value: nearly $600 million in refunds the litigation spurred and the Settlement makes binding; a $309.5 million common fund; and six practice changes Plaintiffs' expert values at more than $363 million. Settlement Agreement ("SA") §§2.2, 4.1-4.3; Holton Decl. ¶74. Subclass A members will automatically receive the full amount Amazon owed them, plus interest, and at expected claims rates Subclass B claimants will, too. Aug. 17, 2026 Hr'g Tr. ("Tr."), Joint Decl. Ex. C, 18:12-17.

Class Counsel seek $100 million in attorneys' fees: less than 8% of that benefit and less than a third of the 25% benchmark both Washington and the Ninth Circuit use. They also request $510,779.57 to reimburse expenses, and $7,500 service awards for each Class Representative, which, as the Settlement provides, will come out of whatever fee the Court awards. SA §§7.2-7.4. A lodestar cross-check is not required, but it confirms the request: 10,611.9 hours yield a lodestar of $12,862,402 and an implied multiplier of 7.77, reflecting how much Class Counsel recovered per hour of work.

## BACKGROUND

### A. Class Counsel Identified and Developed These Claims

Zigler Law Group began investigating Amazon's return practices in May 2023, after its chief executive was repeatedly charged for items she had returned. Dkt. 46 ¶¶7-10. It interviewed 71 affected customers, reviewed online complaints, and in June 2023 brought in Quinn Emanuel; the firms then vetted prospective class representatives and drafted the complaint, which they filed on September 5, 2023. Dkt. 45 ¶¶24, 27-29, 31, 34, 36; Dkt. 46 ¶¶10-11; Dkt. 1. After two other firms filed complaints asserting the same claims, the Court appointed Class Counsel over competing applicants, finding they had "spent substantially more time and resources advancing the interests of the class" and credited the view that they had "done an exceedingly thorough job working up the case." Dkt. 56 at 5.

After Class Counsel filed a consolidated complaint, Dkt. 58, Amazon moved to dismiss four claims, and Plaintiffs opposed. The Court denied the motion in full. Dkts. 62, 112.

Amazon resisted discovery throughout. Class Counsel served more than 250 document requests and four sets of interrogatories, answered more than 300 requests and roughly 100 interrogatories for Plaintiffs, reviewed hundreds of thousands of pages of documents, and litigated a half-dozen contested motions to compel. Dkt. 171-1 at 8-9. On September 30, 2025, the Court granted two of Plaintiffs' discovery motions in substantial part, finding Amazon's interrogatory responses "evasive" and one objection "borderline frivolous," ordering complete responses within 21 days, and directing the parties to agree on a statistically significant sample of class-wide transaction data. Dkt. 156 at 2, 8-10, 13. Depositions of Amazon employees were also approaching. Dkt. 171-1 at 13, 15.

### B. As Mediation Approached, Amazon Began Paying Refunds

The central discovery fight in this case was over Amazon's transaction data, which would show how often customers were denied refunds or recharged after returning merchandise. Amazon refused to produce it, and Plaintiffs moved to compel on January 28, 2025. Dkts. 81, 82-4, 82-6. The parties then discussed mediation and paused litigation so that Amazon could collect the data needed for mediation. Dkt. 171 at 3; Dkt. 171-1 at 14-15. In the lead-up to the mediation, on May 9,


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

2025, Amazon informed Plaintiffs that it intended to begin issuing more than $500 million in refunds for certain unpaid returns covered by Plaintiffs' claims. Dkt. 171-1 at 15.

### C. Mediation and Settlement

The parties mediated before the Honorable Layn R. Phillips (Ret.) from May through October 2025, while Class Counsel continued to press new discovery and brief contested motions. Dkt. 171-3 ¶¶15-16; Dkt. 171-1 at 15. Judge Phillips attests that the negotiations were "hard-fought," and that the Settlement "was the highest number that the Class could have achieved at the time of resolution." Dkt. 171-3 ¶¶19, 21, 23. On October 20, 2025, the day before Amazon's deadline to comply with the Court's discovery order, the parties signed a binding term sheet. Dkts. 156, 157. The Court granted preliminary approval on August 18, 2026. Dkt. 193.

### D. The Settlement's Benefits

The class consists of U.S. Amazon customers who, from September 5, 2017 onward, returned or sought a refund for a product and either did not receive a correct, timely refund or were incorrectly charged again after being refunded. SA §1.30. Subclass A consists of roughly 8.7 million customers whose failed refunds or retrocharges Amazon's own records attribute to payment-processing or other system errors, or to Amazon's lack of sufficient confirmation that the correct item was returned, or for which the records give no reason. Subclass B consists of customers who had a refund denied or reduced, or were charged again, for a reason Amazon's records state (such as a finding that the item or quantity was incorrect), and who can recover by showing that the denial or charge was improper. SA §§1.34-1.35, 2.2, 6.4.1 n.6; Holton Decl. ¶¶63-65; Tr. 17:3-6.

The Settlement provides three forms of relief. *First*, Amazon must make reasonable efforts to complete refunds on approximately $604 million of Subclass A transactions, of which it had issued approximately $570 million by December 1, 2025. SA §§2.2, 4.2.1-4.2.2, 6.4.1 n.6.[1] Amazon identified these refunds after this suit was filed and began paying them in 2025; they fall in the payment-processing and unconfirmed-return categories. SA §4.2.1; Holton Decl. ¶63. . *Second*,

[1] Amazon's counsel reported at the preliminary approval hearing that the updated total is "a little bit under 600" million and that about $19 million remains outstanding. Tr. 24:6-10. Plaintiffs will update these figures at final approval.

Amazon will pay $309.5 million into a non-reversionary fund, 92.7% for Subclass A and 7.3% for Subclass B. SA §§4.1.1, 6.4. The fund pays in full the approximately $81 million owed on Subclass A transactions outside Amazon's refund program, interest to all Subclass A members (including those already refunded), and Subclass B claims. SA §§2.2, 6.4.1 & n.6, 6.4.2. *Third*, Amazon must implement six changes to its return and refund practices, each binding for 12 to 24 months. SA §4.3.1.

### E. The Fee Terms and Notice

The Settlement permits Class Counsel to request up to $100 million in fees and $1 million in costs; any amount the Court does not award goes to the class. SA §§7.2-7.3. Amazon takes no position on fees. Dkt. 190 at 2. The class notice disclosed the $100 million figure and the $7,500 service awards. Dkt. 171-5 at 42.

## ARGUMENT

### I. WASHINGTON LAW GOVERNS AND CALLS FOR A PERCENTAGE-OF-RECOVERY FEE

Plaintiffs' claims arise under Washington law, so Washington law governs the fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In a common fund case, Washington applies the percentage-of-recovery method, because "the size of the recovery constitutes a suitable measure of the attorneys' performance." *Bowles v. Dep't of Ret. Sys.*, 847 P.2d 440, 451 (Wash. 1993). The benchmark is 25% and may be adjusted to fit the circumstances; the usual range is 20% to 30%. *Id.*; *Vizcaino*, 290 F.3d at 1047; *see Stanikzy v. Progressive Direct Ins. Co.*, 2022 WL 1801671, at *3 (W.D. Wash. June 2, 2022) (applying *Bowles*), *aff'd*, 2023 WL 4837875 (9th Cir. July 28, 2023). Under Washington's percentage method, "the attorneys are to be compensated according to the size of the judgment recovered, not the actual hours expended." *Bowles*, 847 P.2d at 452. Federal law is the same and looks to all the circumstances of the case. *Vizcaino*, 290 F.3d at 1048-50; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949, 954-55 (9th Cir. 2015) (*Vizcaino* factors not exhaustive).


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## II. <u>THE BENEFITS TO THE CLASS STRONGLY SUPPORT THE REQUESTED FEE</u>

The most important factor is the benefit to the class. *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988, 992 (9th Cir. 2023). That factor strongly supports Class Counsel's request.

### A. <u>The Settlement Delivers Approximately $1.27 Billion to the Class</u>

#### 1. The Litigation Spurred, And The Settlement Secures, Nearly $600 Million In Refunds

Amazon has paid, and must make reasonable efforts to finish paying, refunds totaling nearly $600 million, directly and separately from the common fund. SA §§2.2, 4.1.2, 4.2.1, Tr. 24:6-13.

Washington law treats benefits that a suit secures for class members as a recovery from which fees may be paid, regardless of whether the recovery is deposited in a common fund. In *Bowles*, the Washington Supreme Court held that the plaintiffs "created or preserved a fund" because "the suit secured additional pension benefits" for other members, which the Department would pay over time, and it measured the fee against the present value of those benefits. 847 P.2d at 450-51. The Ninth Circuit likewise asks whether counsel's work "tended to create, increase, protect or preserve the fund," *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (citation omitted), and applies the common fund doctrine where the recovery is "attributed almost entirely to the efforts" of counsel, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The refunds readily meet each test.

*The litigation spurred the refunds.* Amazon informed Plaintiffs of their intention to pay the refunds twenty months into this case, three months after Plaintiffs moved to compel the data that would reveal the need for them, and on the eve of mediation, by which point Class Counsel had invested more than half of their total lodestar. Dkt. 171-1 at 15; Joint Decl. ¶31. Plaintiffs' expert concluded that return problems Amazon had identified "as early as 2020" were "not addressed and persisted well past the filing of this lawsuit," that "[s]ince the filing of this lawsuit, Amazon initiated numerous projects and 'deep dives' to attempt to fix return errors," and that "this litigation clearly spurred Amazon into action." Holton Decl. ¶¶55-57. Courts credit such benefits when awarding fees. *Vizcaino*, 290 F.3d at 1049 (crediting changes Microsoft made "[d]uring the litigation" as "benefits beyond the cash settlement fund").

*The Settlement made those refunds binding.* Before the Settlement, nothing required Amazon to finish paying the refunds or barred it from reversing them—*i.e.*, the conduct this case challenges. The Settlement obligates Amazon to make reasonable efforts to complete the remaining refunds, bars claw-backs except in narrow circumstances, and directs the Administrator to make reasonable efforts to pay from the Subclass A fund any refund Amazon cannot complete. SA §§4.2.1-4.2.2. This is not the illusory relief in *Briseño v. Henderson*, 998 F.3d 1014, 1028 (9th Cir. 2021), or *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017), where settlements froze conduct the defendant had already abandoned. Here the Settlement adds money: a commitment to complete the remaining refunds, a fund backstop for any Amazon cannot complete, and an interest payment to every class member with a §4.2.1 refund. SA §§4.2.1-4.2.2, 6.4.1 & n.6. These binding commitments remove the concern that pre-settlement remediation could "have been merely temporary"; a voluntary assurance is a "pale shadow[]" of a court-enforceable obligation. *In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456, 475 (3d Cir. 2025); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 n.13 (9th Cir. 2019) (en banc) (counting preexisting program the settlement extended and enhanced).

*The value of the refunds to individual class members is ascertainable.* Non-fund relief is counted "where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *see id.* at 972 (class must be identifiable, benefits traceable, and the fee shifted to those who benefit). The refunds are cash, paid to identified class members on identified transactions, in amounts recorded in Amazon's data. SA §§1.36, 2.2, 4.2.2. Every refund recipient is in Subclass A, which receives 92.7% of the net fund. SA §6.4.1 & n.6; *infra* §II.A.2.

**2. The Settlement Establishes a $309.5 Million Common Fund**

Beyond the refunds, the Settlement creates a common fund available to every class member. Subclass A members are paid automatically, without filing a claim; Subclass B members recover through a prepopulated claim form, and the Subclass B share is divided among those who claim. SA §§6.4.1-6.4.2. Amazon pays $309.5 million into the fund. Court-awarded fees, costs, service awards, and administration expenses are paid from the fund, and everything remaining goes to class


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

members; none of it reverts to Amazon. SA §§1.32.3, 4.1.1. Money left unclaimed is redistributed to class members who were paid, and only what cannot be redistributed goes to cy pres. SA §6.8. Because the fund is non-reversionary, the full $309.5 million counts as benefit to the class. *DVD-Rental*, 779 F.3d at 953; *Staton*, 327 F.3d at 974-75. It pays in full the roughly $81 million owed on Subclass A transactions outside Amazon's refund program, interest to Subclass A members (including refund recipients), and Subclass B claims, which at expected claims rates will also be paid in full. SA §§2.2, 6.4.1 & n.6; Tr. 18:12-17.

**3. The Practice Changes Provide More Than $363 Million In Benefits To The Class Members**

The Settlement requires Amazon to monitor return processing, repair technical problems that blocked refunds or triggered erroneous retrocharges, automatically reprocess stalled refunds, tell customers when refunds are approved or denied, refund returns not graded within 90 days, and notify customers whose returns remain ungraded. SA §4.3.1. Plaintiffs' expert, who has more than thirty years of reverse-supply-chain experience, explains that these substantial changes are collectively worth more than $363 million to the class. Holton Decl. ¶¶2-6, 70-74, 104. Amazon's confirmatory discovery showed "that these changes will fix the issues affecting the Subclass A categories." *Id.* ¶70. His estimate also includes more than $155 million for Subclass B, from applying a 1.1% return-error rate to Subclass B transactions. *Id.* ¶¶71, 80-82. He counted only the periods the measures will be in force and used conservative inputs throughout. *Id.* ¶¶71, 80-82, 94-96, 102.

Significant actions such as these, as evaluated by an expert, support a substantial fee. In *Vizcaino*, the Ninth Circuit affirmed a 28% fee on a $96.9 million cash fund, treating Microsoft's changed hiring and classification practices, which counsel valued at $101.48 million, as "benefits beyond the cash settlement fund." 290 F.3d at 1047-49. Counting that benefit, counsel calculated the fee at about 14% of the total. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 n.1 (W.D. Wash. 2001). Mr. Holton's analysis is more rigorous, resting on Amazon's transaction data and representations about what the changes will fix. Amazon's own counsel has described the reprocessing commitment as "a pretty significant obligation" and the practice changes as "very valuable forms of relief." Tr. 25:5-7, 26:1-2.


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

The Ninth Circuit asks courts to be "particularly careful" in assigning a dollar value to non-monetary relief, and either to quantify and explain that value or to leave it out of the calculation. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019); *Briseño*, 998 F.3d at 1028. Plaintiffs have quantified and explained it. But even if the Court were to exclude the practice changes from the calculation, they remain "a relevant circumstance" supporting the percentage the Court awards. *Staton*, 327 F.3d at 974; *Vizcaino*, 290 F.3d at 1049; *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020); *Stanikzy*, 2022 WL 1801671, at *3 (post-suit practice change supported upward adjustment to 26%). Even without considering the valuable non-monetary relief, the requested fee constitutes a mere 11% of the benefit obtained for the class. That figure is reasonable by any measure.

### B. <u>The Requested Percentage Is Well Below the Benchmark and Comparable Awards</u>

Washington and the Ninth Circuit start at 25%. *Bowles*, 847 P.2d at 451; *DVD-Rental*, 779 F.3d at 949. The request here is a fraction of that. The Washington Supreme Court affirmed a fee equal to 8% of the class's recovery in *Bowles*, holding that the objections "ha[d] wholly failed to show that the fee awarded was excessive." 847 P.2d at 451. Recent awards in settlements of comparable size are far higher:

| Case | Recovery | Fee | Disposition |
|---|---|---|---|
| *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021) | $650 million | 15% | Aff'd, 2022 WL 822923 (9th Cir. 2022) |
| *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 8445812 (N.D. Cal. 2023) | $725 million | 25% | Aff'd sub nom. *Akins v. Facebook*, 2025 WL 484621 (9th Cir. 2025) |
| *Benson v. DoubleDown Interactive, LLC*, 2023 WL 3761929 (W.D. Wash. 2023) | $415 million | 29.3% | — |
| *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) | $480 million | 20% | — |
| This case | ≈ $1.27 billion | ≈ 7.9% | — |


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## III. THE *VIZCAINO* FACTORS SUPPORT THE REQUESTED FEE

### A. Results Achieved

The result is the most important factor. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Subclass A members are expected to receive their full unpaid refunds plus interest without filing a claim, and for them the fee comes out of interest, not principal: the Subclass A fund, measured after fees, exceeds all unpaid Subclass A refunds combined, so no Subclass A member's refund is reduced to pay counsel. SA §§1.32.3, 6.4.1 & n.6. Subclass B claimants share the 7.3% Subclass B fund, which at expected claims rates will pay them the full amount owed, plus interest, even after fees. SA §6.4.2; Tr. 18:12-17.

### B. Risk

"Risk is a relevant circumstance." *Vizcaino*, 290 F.3d at 1048. When Class Counsel filed suit, no one knew whether Amazon's refund failures would ultimately be proven systemic enough to support liability, and only the discovery Amazon resisted could make that showing. *Supra* Background §§B-C. Amazon's return policy describes returns as only "generally" free, and Amazon has defeated similar consumer-contract theories on appeal. Dkt. 187 at 10 (citing *Storey v. Amazon.com, Inc.*, 2026 WL 1470611 (9th Cir. May 26, 2026), and *In re Amazon Serv. Fee Litig.*, 2025 WL 2268252 (9th Cir. Aug. 8, 2025)). The parties never litigated class certification, and Subclass B claims may have turned on individual facts, such as what was in a particular box. Tr. 13:9-14:25. Class Counsel took on that risk against one of the largest companies in the world.

### C. Contingent Representation and Burdens

Class Counsel have litigated for more than three years without payment, devoting 10,611.9 hours and advancing $510,779.57 in expenses with no assurance of recovery. Joint Decl. ¶¶29, 35. These burdens support the fee. *Vizcaino*, 290 F.3d at 1050.

### D. Benefits Beyond the Cash Fund

The benefits outside the fund support the requested percentage even if measured against the fund alone. *Supra* §II.A; *Farrell*, 827 F. App'x at 630.


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**E. <u>Reaction of the Class</u>**

Notice reached 52,085,087 potential class members. As of November 13, 2026, 499,392 Subclass B claims had been filed; 685 individuals had opted out; and 5 had objected. Joint Decl. ¶23. Plaintiffs will update the Court in their reply.

## IV. <u>A LODESTAR CROSS-CHECK CONFIRMS THE FEE</u>

Washington law does not require a cross-check, *Vizcaino*, 142 F. Supp. 2d at 1302 (citing *Bowles*, 847 P.2d at 450-52), and the Ninth Circuit treats one as discretionary, *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). Courts in this District have awarded percentage fees on large funds without one. *See, e.g.*, *Kater v. Churchill Downs Inc.*, 2021 WL 511203, at *2 (W.D. Wash. Feb. 11, 2021) (25% of $155 million); *Benson*, 2023 WL 3761929, at *3.

Through August 18, 2026 (when the Court granted preliminary approval), Class Counsel devoted 10,611.9 hours to this case, for a lodestar of $12,862,402 at current rates ($11,734,054.50 at historical rates). Joint Decl. ¶¶25-29 & Exs. A-B. Current rates appropriately compensate counsel for the delay in payment inherent in contingent representation. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). The lodestar does not include the time Class Counsel will spend between now and final approval and the distribution of settlement payments; counting that time would lower the multiplier further. Joint Decl. ¶24; *see Facebook Consumer Privacy*, 2023 WL 8445812, at *2.

The requested fee reflects a multiplier of 7.77 on the current-rate lodestar. That multiplier is reasonable. *First*, a risk multiplier is appropriate in a common fund case. *Vizcaino*, 290 F.3d at 1051. A court "must apply a risk multiplier" where counsel took the case expecting an enhancement if they prevailed, their hourly rates do not reflect the risk, and the case was risky. *Stetson*, 821 F.3d at 1166 (citation omitted). Each condition is met. Quinn Emanuel's hourly rates are those for non-contingency cases, and ZLG's rates track market data and rates courts have approved for its lawyers. Joint Decl. ¶¶26-27.

*Second*, the multiplier reflects efficiency, not excess. The Court has cautioned that "duplicative work product, unnecessary billing, and an outrageous lodestar are grounds to reduce" a fee. Dkt. 56 at 6. Class Counsel's lodestar is the opposite. Comparable class settlements of $500


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

million to $5 billion have required a median of roughly 94,000 hours and produced roughly $10,000 of recovery per hour of work. Rubenstein Decl. ¶¶20-23, *Health Republic Ins. Co. v. United States*, No. 16-259C, Dkt. 192-4 (Fed. Cl. May 2, 2023). Class Counsel produced approximately $120,000 of benefit to the class for every hour worked, and roughly $29,000 per hour counting the common fund alone. A low multiplier would penalize counsel for securing a better result with fewer hours. *Vizcaino*, 290 F.3d at 1050 n.5; *see Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming 25% award despite "relatively low time-commitment"); *see also Chery v. Tegria Holdings LLC*, 2024 WL 5009036, at *8 (W.D. Wash. Dec. 6, 2024) (approving 4.7 multiplier so as not to "discourage early settlement that benefits class").

*Third*, courts have approved multipliers in this range. While most multipliers in the Ninth Circuit's *Vizcaino* survey fell between 1 and 4, courts approved multipliers as high as 19.6. 290 F.3d at 1051 n.6. The Ninth Circuit has recognized that "[l]odestar multipliers tend to increase as the size of the class's fund increases," affirming a 4.71 multiplier in the $650 million *Facebook* biometric settlement. 2022 WL 822923, at *1. This recovery is nearly twice that size. High multipliers accompany low percentages when counsel produce large recoveries efficiently. *See, e.g.*, *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008) (9.52% of $7.2 billion; 5.2 multiplier on cross-check); *Health Republic Ins. Co. v. United States*, 173 Fed. Cl. 508, 521-26 (Fed. Cl. 2024) (awarding fees equaling a 9.5 multiplier, collecting cases).

## V. CLASS COUNSEL'S EXPENSES ARE REASONABLE

Class Counsel request reimbursement of $510,779.57 in expenses ($491,949.09 for Quinn Emanuel and $18,830.48 for ZLG), limited to costs incurred. SA §7.3; Joint Decl. ¶35. The expenses consist mainly of e-discovery hosting, computerized legal research, mediation fees, expert fees, and travel and filing costs. Such expenses are routinely reimbursed from common funds. *See Graulty*, 886 F.2d at 271; *DVD-Rental*, 779 F.3d at 953 & n.12.

## VI. THE SERVICE AWARDS ARE REASONABLE AND COST THE CLASS NOTHING

The ten Class Representatives each request $7,500. Courts evaluate service awards individually, considering each representative's actions to protect the class, the benefit to the class,


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

and the time and effort spent. *Staton*, 327 F.3d at 977. Each answered Amazon's written discovery, and the eight who were plaintiffs in 2024 also submitted their email accounts and phones to forensic collection. Joint Decl. ¶38. The Ninth Circuit "regularly uphold[s]" awards of $5,000, *Facebook Biometric*, 2022 WL 822923, at *2, and a court in this District approved $7,500 awards in a comparable settlement, *Benson*, 2023 WL 3761929, at *3. The Settlement and notice told the class that the awards would be paid from Class Counsel's fee award. SA §7.4; Dkt. 171-5 at 42. Class Counsel ask the Court to deduct the $75,000 from whatever fee it awards and direct the Escrow Agent to pay the Class Representatives from that amount. That reduces Class Counsel's fee rather than dividing it: Class Counsel take $75,000 less so the class bears none of the cost.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court award $100 million in attorneys' fees and $510,779.57 in expenses, and approve service awards of $7,500 to each Class Representative.


QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Dated: November 17, 2026

Respectfully submitted,

By: s/ Nolan K. Anderson
Alicia Cobb, WSBA #48685
Matthew Hosen, WSBA #54855
Nolan K. Anderson, WSBA #59691
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel.: (206) 905-7075
Fax: (206) 905-7100
aliciacobb@quinnemanuel.com
matthosen@quinnemanuel.com
nolananderson@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel.: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
Justin C. Griffin (*pro hac vice*)
Alyssa G. Olson (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3621
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
justingriffin@quinnemanuel.com
alyolson@quinnemanuel.com

By: s/ Aaron M. Zigler
Aaron M. Zigler (*pro hac vice*)
Blair Zigler (*pro hac vice*)
Lawrence Ashe (*pro hac vice*)
Nidya S. Gutierrez (*pro hac vice*)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street, Suite 333
Chicago, IL 60661
Tel.: (312) 673-8427
aaron@ziglerlawgroup.com
blair@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Class Counsel*

*I certify that this memorandum contains 4180 words, in compliance with the Local Civil Rules.*